**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. _____ |
| | : | |
| SAFEHOUSE, a Pennsylvania nonprofit corporation; | : | |
| | : | |
| JEANETTE BOWLES, as Executive Director of Safehouse; | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

While our country is in the midst of an opioid epidemic, this is not the first time we have faced a drug crisis. From crack cocaine, to methamphetamine, to heroin and fentanyl, our country has faced the challenge and tragedy of drug addiction for many years. Congress and the President have sought to address the challenges of drug addiction, abuse, and diversion with the Controlled Substances Act ("CSA"), enacted in 1970.

The CSA established a comprehensive and carefully balanced regulatory scheme that has been updated and revised over time, but remains in full force and effect. Among other things, the CSA created a tiered structure of controlled substances based on their risk of abuse and medical purpose; controlled the flow of these substances from their manufacture through the distribution chain; established important record-keeping requirements; determined which substances were illegal without an administrative application and waiver; and established a comprehensive scheme for the treatment of those afflicted with substance use disorder through narcotic treatment programs.

The legislation's calculated scheme includes the prohibition of certain conduct involving controlled substances. Most relevant to the suit at hand, the CSA provides that it is wholly unlawful to manage or control any place, regardless of compensation, for the purpose of unlawfully using a controlled substance. Defendant Safehouse seeks to disregard the law and override Congress' carefully balanced regulatory scheme by establishing, managing, and controlling sites in Philadelphia that will allow individuals to engage in the illicit use of controlled substances, namely, heroin and fentanyl.

For purposes of this action, it does not matter that Safehouse claims good intentions in fighting the opioid epidemic. What matters is that Congress has already determined that Safehouse's conduct is prohibited by federal law, without any relevant exception. To prevent Safehouse from violating federal law, the United States asks the Court to declare illegal the Defendants' proposed establishment and operation of a place for the unlawful use of controlled substances.

Plaintiff, the United States of America, by and through its attorneys, alleges as follows:

1.      This is a civil action seeking declaratory judgment under the Declaratory Judgment Act, as amended, 28 U.S.C. § 2201, and under the Controlled Substances Act, as amended, 21 U.S.C. §§ 801 *et seq.*, and its implementing regulations, 21 C.F.R. §§ 1301 *et seq.*

## **JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 21 U.S.C. §§ 856(e), 843(f), and 28 U.S.C. §§ 1331, 1345.

3.      Venue is proper in the Eastern District of Pennsylvania pursuant to 21 U.S.C. § 843(f)(2) and 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff is the United States of America.

5.      Defendant Safehouse is a privately held Pennsylvania nonprofit corporation located at 1211 Chestnut Street, Suite 600, in Philadelphia, Pennsylvania.  Safehouse was formed in or around August of 2018.

6.      Safehouse seeks to establish and operate one or more sites in Philadelphia where, among other things, intravenous drug users will be permitted to use illegal controlled substances (primarily, heroin and fentanyl) in "consumption rooms" under medical supervision (hereinafter, "Consumption Room(s)").

7.      Defendant Jeanette Bowles is the Executive Director of Safehouse.

## FACTUAL ALLEGATIONS

8.      Existing nonprofit community organizations, such as Prevention Point Philadelphia, provide a wide range of medical and non-medical services intended to reduce the harms of the opioid crisis in Philadelphia.  These services include, but are not limited to, access to addiction treatment, wound care, clean needle exchange, social services, testing, free distribution of the opioid overdose reversal medication Naloxone (Narcan), and training on how to administer Naloxone.

9.      Safehouse states on its website that its mission is "sav[ing] lives by providing a range of overdose prevention services" in Philadelphia, including "[m]edically supervised safe consumption and post-consumption observation."  (*See* Safehouse FAQ, attached hereto as Exhibit A).

10.     Safehouse further states on its website that, upon arrival at "Safehouse facilities," drug users – called "participants" – who seek supervised consumption will be directed to a

Consumption Room where they will be provided with syringes and related paraphernalia by Safehouse staff, who will observe them while they prepare and inject illegal narcotics within the Safehouse Consumption Room.  (*Id.*).

11.     "[P]articipants" will then be sent to an "observation room," where they will be "offered on-site initiation of Medication Assisted Treatment (MAT), wound care, and referrals to primary care, social services, and housing opportunities."  (*Id.*).  Safehouse states that it will "provide overdose reversal and other emergency care" and "advise on sterile injection technique," but its staff will not "administer any narcotic or opioid," nor will they make any such drug available "other than those that are FDA-approved for the treatment of opioid addiction[.]" (*Id.*).

12.     Heroin and fentanyl are controlled substances.  21 U.S.C. § 812; 21 C.F.R. §§ 1308.11, 1308.12.  Heroin is a Schedule I substance, and fentanyl is a Schedule II substance. 21 U.S.C. § 812(c) ("Schedule I" at (b)(10); "Schedule II" at (b)(6)).

13.     Knowing or intentional possession of Schedule I or II substances such as heroin or fentanyl, without satisfying certain exceptions that do not apply to Safehouse participants, violates federal law.  21 U.S.C. § 844(a).

14.     The Controlled Substances Act, 21 U.S.C. §§ 801-971, provides, in pertinent part, that:

> it shall be unlawful to . . . manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 856(a), (a)(2).

4

15. Section 856(a)(2) applies to any person who "manage[s] or control[s] any place" that they "knowingly and intentionally . . . make available for use, with or without compensation . . . for the purpose of unlawfully . . . using a controlled substance." Defendants' operation of Consumption Rooms would do exactly that.

16. Therefore, Defendants will violate section 856(a)(2) of Title 21 if they open a Consumption Room.

17. Defendants have publically stated their position that the operation of such a Consumption Room would not violate federal law and that they intend to open one or more Consumption Rooms notwithstanding section 856 of Title 21 of the United States Code. (*See* Exhibit A).

18. By a letter to Safehouse's President and Vice President dated November 9, 2018, the United States Attorney for the Eastern District of Pennsylvania, William M. McSwain, advised Safehouse that its planned operation of one or more Consumption Rooms would clearly violate federal law. (*See* Nov. 9, 2018, letter, attached hereto as Exhibit B). The government requested assurance that Safehouse would comply with federal law, and advised that the government would pursue appropriate legal remedies should Safehouse fail to ensure its compliance. *Id.*

19. By letter dated November 26, 2018, Safehouse's President and Vice President advised the government that Safehouse would not comply, asserting, "[w]e respectfully disagree with the conclusion that Safehouse's proposed consumption room would violate federal law." (*See* Nov. 26, 2018, letter, attached hereto as Exhibit C, at 1).

20.     On or about December 24, 2018, Safehouse announced that it had retained DLA Piper to represent it in potential litigation against the United States regarding Safehouse's legality.

21.     In or around January 2019, Safehouse hired Defendant Jeanette Bowles as its Executive Director.

22.     Upon information and belief, Defendants will imminently open one or more Consumption Rooms in Philadelphia.  Defendants' initial plan was to be operational by January 2019, although they may have recently pushed back the opening to March 2019.[1]

## COUNT I

## Violation of the Controlled Substances Act, 21 U.S.C. § 856(a)(2) – Declaratory Judgment

23.     The United States repeats and re-alleges Paragraphs 1 through 22 as if fully set forth herein.

24.     Pursuant to 21 U.S.C. § 856(a) and (a)(2), "it shall be unlawful to . . . manage or control any place . . . and knowingly and intentionally . . . make available for use, with or without compensation, the place for the purpose of unlawfully . . . using a controlled substance."

25.     Defendants intend to manage and control one or more Consumption Rooms in Philadelphia and they will knowingly and intentionally provide a place for drug users to use controlled substances unlawfully, such as heroin and fentanyl.

26.     Accordingly, Defendants imminently will violate 21 U.S.C. § 856(a)(2).

---

[1] Colleen Slevin, *Denver is latest city pushing for 1st US drug injection site* (Nov. 28, 2018), https://www.apnews.com/86a3aca99f72489082fcfa7ff0ab3a83 ("A private nonprofit is raising money for a supervised injection site in Philadelphia but has pushed back its potential opening date from January to mid-March, the group Safehouse said.").

27.     Pursuant to 21 U.S.C. § 856(e), "[a]ny person who violates subsection (a) of this section shall be subject to declaratory and injunctive remedies as set forth in section 843(f) of this title."

28.     Section 843(f), provides, in turn, that "the Attorney General is authorized to commence a civil action for appropriate declaratory or injunctive relief relating to . . . [section] 856 of this title."  21 U.S.C. § 843(f)(1).

29.     Under 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

30.     Declaratory relief is especially appropriate where illegal conduct is imminent.

31.     The United States is accordingly entitled to appropriate declaratory relief through this civil action pursuant to 21 U.S.C. § 843(f) and 28 U.S.C. § 2201, stating that Defendants' establishment and operation of any Consumption Rooms will violate section 856 of Title 21 of the United States Code.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that judgment be entered in its

favor and against Defendants declaring that Defendants' establishment and operation of any

Consumption Room, or similar sites made available for the unlawful use of controlled

substances, will violate 21 U.S.C. § 856(a)(2).

Dated:  February 5, 2019                       Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

JAMES M. BURNHAM                              WILLIAM M. McSWAIN
Deputy Assistant Attorney General            United States Attorney
Civil Division

GUSTAV W. EYLER
Acting Director
Consumer Protection Branch                    GREGORY B. DAVID
                                              Assistant United States Attorney
                                              Chief, Civil Division
JAMES J. GILLIGAN
Acting Director
Federal Programs Branch

ANDREW E. CLARK                               JOHN T. CRUTCHLOW
Assistant Director                            ERIC D. GILL
Consumer Protection Branch                    BRYAN C. HUGHES
                                              ERIN E. LINDGREN
                                              Assistant United States Attorneys
JACQUELINE COLEMAN SNEAD                       Eastern District of Pennsylvania
Assistant Director                            615 Chestnut Street, Suite 1250
Federal Programs Branch                       Philadelphia, PA  19106-4476
                                              TEL:  (215) 861-8200
DANIEL K. CRANE-HIRSCH
Trial Attorney                                *Counsel for the United States*
Consumer Protection Branch

TAMRA T. MOORE
Senior Counsel
Federal Programs Branch

*Co-Counsel for the United States*

8

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
**United States of America**

### DEFENDANTS
**SAFEHOUSE, a Pennsylvania Corporation;**
**Jeanette Bowles, Exec. Director of Safehouse**

**(b)** County of Residence of First Listed Plaintiff **Philadelphia**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Philadelphia**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
**United States Attorney's Office**
**615 Chestnut Street #1250**
**Philadelphia, PA 19106**
**215-861-8200**

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1   U.S. Government Plaintiff | ☐ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
**21 U.S.C § 843(f) and 28 U.S.C. § 2201**
Brief description of cause:
**Declaratory relief**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE
**February 5, 2019**

SIGNATURE OF ATTORNEY OF RECORD
*(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

GAM 19-519

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: U.S. Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106

Address of Defendant: 1211 Chestnut Street, Suite 600, Philadelphia, Pennsylvania

Place of Accident, Incident or Transaction:

---

**RELATED CASE, IF ANY:** n/a

Case Number: _____ Judge _____ Date Terminated _____

Civil cases are deemed related when *Yes* is answered to any of the following questions

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: February 5, 2019

_____ Attorney-at-Law / Pro Se Plaintiff _____ Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1 Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2 FELA
☐ 3 Jones Act-Personal Injury
☐ 4 Antitrust
☐ 5 Patent
☐ 6 Labor-Management Relations
☐ 7 Civil Rights
☐ 8 Habeas Corpus
☑ 9 Securities Act(s) Cases
☐ 10 Social Security Review Cases
☑ 11 All other Federal Question Cases
   *(Please specify)* 21 USC 856(e), 843(f), 28 USC 1331, 1345 28 USC § 2201

**B.** *Diversity Jurisdiction Cases:*

☐ 1 Insurance Contract and Other Contracts
☐ 2 Airplane Personal Injury
☐ 3 Assault, Defamation
☐ 4 Marine Personal Injury
☐ 5 Motor Vehicle Personal Injury
☐ 6 Other Personal Injury *(Please specify)* _____
☐ 7 Products Liability
☐ 8 Products Liability – Asbestos
☐ 9 All other Diversity Cases
   *(Please specify)* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Gregory B. David, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs.

x ☑ Relief other than monetary damages is sought.

DATE: 02/05/2019

_____ Attorney-at-Law / Pro Se Plaintiff _____ Attorney I.D. # (if applicable)

FEB -5 2019

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

United States of America

     v.

SAFEHOUSE, a Pennsylvania nonprofit corporation;

Jeanette Bowles, as Executive Director of Safehouse

:
:
:
:
:
:

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| February 5, 2019 | Gregory B. David, AUSA | United States of America |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-861-8521 | (215) 861-8618 | gregory.david@usdoj.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# FREQUENTLY ASKED QUESTIONS

"Studies from other countries have shown that [overdose prevention services] reduce the number of overdose deaths, reduce transmission rates of infectious disease, and increase the number of individuals initiating treatment for substance use disorders without increasing drug trafficking or crime in the areas where the facilities are located."[1]

—American Medical Association

> "We cannot just watch as our children, our parents, our brothers, and our sisters die of drug overdose … We have to use every proven tool we can to save their lives until they recover from the grip of addiction."[2]
>
> —Dr. Thomas Farley, Philadelphia Health Commissioner

**FREQUENTLY ASKED QUESTIONS:**

- What are overdose prevention services?
- Why do we need overdose prevention services?
- What are the benefits of overdose prevention services?
- What is Safehouse?
- What can participants expect when they come to Safehouse?
- What will be the rules of conduct for Safehouse participants?
- Who will work at Safehouse?
- Do other jurisdictions offer supervised consumption rooms as part of overdose prevention services?
- Does supervised consumption save lives?
- Do people who use supervised consumption sites seek treatment?
- Do supervised consumption sites encourage drug use?
- Do supervised consumption sites increase neighborhood crime?

- What are the benefits to the community?
- Does the law allow overdose prevention services like those provided by Safehouse?
- Will Safehouse seek a partnership with law enforcement?
- Will data be collected at Safehouse?
- How can I financially support the efforts of Safehouse?

## WHAT ARE OVERDOSE PREVENTION SERVICES?

Overdose prevention services are part of a broader harm-reduction strategy. Harm reduction in substance use treatment is aimed at decreasing the negative consequences of substance use, and it includes elements of safer use, managed use, and medication-supported treatment plans. Harm reduction is designed to address the circumstances of the addiction in addition to the addiction itself, striving to minimize the harmful effects of addiction while recognizing that drug addiction cannot be completely eliminated. Current leading scholarship establishes that a demonstrably effective approach to combating substance use disorder is to encourage treatment while providing harm reduction.[3]

Overdose prevention services are designed to reduce harms associated with drug use by carrying out the following activities:

- Assessment of participant's physical and behavioral health status.
- Provision of sterile consumption equipment.
- Provision of drug testing, such as fentanyl test strips.

- Medically supervised safe consumption and post-consumption observation.
- Overdose reversal.
- Wound care, other basic medical services, and referral for more complex medical care.
- On-site education and counseling about substance use treatment.
- On-site initiation of medication assisted treatment (MAT) and recovery counseling.
- Access to a resource specialist for referrals to supporting services including housing opportunities, public benefits, and legal services.
- Safe disposal of consumption equipment.
- Distribution of naloxone and other opioid overdose antidotes approved by the U.S. Food and Drug Administration.

## WHY DO WE NEED OVERDOSE PREVENTION SERVICES?

Philadelphia is experiencing an overdose crisis of unprecedented proportion. In 2015, the city's rate of 46.8 drug overdose deaths per 100,000 residents dramatically outpaced those of Chicago (11.8) and New York (13.7).[4], [5] In 2017, the 1,217 overdose deaths in Philadelphia [6] represented a 34 percent increase from 907 in 2016.[7] Since 2009, overdose deaths in the city have risen by nearly 200 percent.[8] Philadelphia has not had a public health crisis of this magnitude in more than 100 years.[9] Across all racial and ethnic groups, more people have died from drug overdose than from homicide.[10], [11]

This crisis led the Mayor's Task Force to Combat the Opioid Epidemic in Philadelphia to recommend that the city further explore implementing overdose prevention services and expand treatment access and capacity. Overdose prevention services have a long record of success in reducing harms of injecting heroin and other opioids.[12]

## WHAT ARE THE BENEFITS OF OVERDOSE PREVENTION SERVICES?

Overdose prevention services are part of a multifaceted public health approach to combating the opioid crisis. Extensive research has demonstrated the benefits of overdose prevention services for people who use drugs and the communities where drug use occurs.[13],[14],[15],[16]

**Overdose prevention services:**

- Save lives by reducing the number of fatal drug overdoses through education on safer use practices, overdose prevention, and intervention.
- Reduce the spread of infectious diseases such as HIV and hepatitis C among people who use drugs by providing sterile consumption supplies.
- Connect people who use drugs with other health, treatment, and social services.
- Create a safer community by reducing drug use in public spaces and publicly discarded paraphernalia.

# WHAT IS SAFEHOUSE?

Safehouse is a privately funded Pennsylvania nonprofit corporation whose mission is to save lives by providing a range of overdose prevention services.

The leaders and organizers of Safehouse are motivated by the Judeo-Christian beliefs ingrained in us from our religious schooling, our devout families and our practices of worship. At the core of our faith is the principle that preservation of human life overrides any other considerations.

Safehouse is working with community partners to find a suitable location(s) to deliver those services.

**Safehouse's Board of Directors:**

President and Treasurer

**Jose A. Benitez, MSW**

Executive Director, Prevention Point Philadelphia (http://ppponline.org/)

Vice President and Secretary

**Ronda B. Goldfein, Esq.**

Executive Director, AIDS Law Project of Pennsylvania

(http://www.aidslawpa.org/)

Board member

**Edward G. Rendell, Esq.**

former Governor of Pennsylvania, former Mayor and District Attorney of Philadelphia (http://www.edwardrendell.com/)

**Safehouse will receive guidance from an Advisory Committee of community leaders and health experts, including:**

**Ana V. Diez Roux, M.D., Ph.D., M.P.H.**

Dean, Drexel University Dornsife School of Public Health
(https://drexel.edu/dornsife/)

**Thomas Farley, M.D., M.P.H.**

Commissioner, Department of Public Health, City of Philadelphia
(https://www.phila.gov/departments/department-of-public-health/)

**Perry Halkitis, Ph.D.**

Dean, School of Public Health, Rutgers University–New Brunswick
(https://sph.rutgers.edu/)

**David T. Jones, M.S.**

Commissioner, Department of Behavioral Health and Intellectual
disAbility Services, City of Philadelphia (https://dbhids.org/)

**Larry R. Kaiser, M.D., FACS**

President and CEO Temple University Health System
(https://www.templehealth.org/content/default.htm)

**Sister Mary Scullion, R.S.M.**

President and Executive Director, Project HOME (https://projecthome.org/)

# WHAT CAN PARTICIPANTS EXPECT WHEN THEY COME TO SAFEHOUSE?

All participants must register and provide basic demographic information upon entry to the Safehouse facilities. A physical and mental health assessment will be conducted and a range of overdose prevention services offered.

Participants seeking supervised consumption will be directed to the medically supervised consumption room and provided sterile consumption equipment and fentanyl test strips. Participants will safely dispose of used consumption equipment before leaving the supervised consumption area. Under no circumstances will Safehouse make available any narcotic or opioid, other than those that are FDA-approved for treating opioid addiction.

From the consumption area, participants will be directed to the medically supervised observation room and offered on-site initiation of Medication Assisted Treatment (MAT), wound care, and referrals to primary care, social services, and housing opportunities. Participants may choose to go directly to the observation room to access MAT and other services.

Medically trained professionals will provide overdose reversal and other emergency care. Safehouse personnel will be available to advise on sterile injection technique in order to reduce the risks of skin infections, but will not place needles or administer any narcotic or opioid, nor encourage the use of any drug.

Certified peer specialists, recovery specialists, social workers, and case managers will encourage treatment readiness and facilitate access to medical and social services. As participants leave, additional data will be collected, medical and social services will be offered again, and naloxone will be distributed.

**Registration**

**Assessment of physical and behavioral health**
Offer of services

**Medically supervised consumption room**

Sterile equipment

Fentanyl test strips

Overdose reversal and emergency care

Safe disposal of equipment

**Medically supervised observation room**

Overdose reversal and emergency care

Certified peer specialists

Offer of services

**Medical services**

Wound care

On-site initiation of MAT

Referrals to primary care

**Wraparound social services**

Referrals to social services, legal services, and housing opportunities

**Check out**
Additional data collection, offer of services, and naloxone distribution

# WHAT WILL BE THE RULES OF CONDUCT FOR SAFEHOUSE PARTICIPANTS?

All participants will be expected to comply with rules to ensure the safety of participants, employees, volunteers, and the public. Safehouse will develop detailed policies and procedures, which it will post in a conspicuous place on location and on its website. Safehouse's rules of use include:

- No one under age 18 may use the services. Appropriate referrals will be provided to minors.
- No drug dealing.
- No drug sharing.
- No exchange of currency.
- No sharing of consumption equipment.
- No participant may help another consume drugs.
- No staff person may help a participant consume drugs.
- Staff will not handle controlled substances.
- All participants must properly dispose of consumption equipment before leaving the premises.

# WHO WILL WORK AT SAFEHOUSE?

Safehouse staff will include medically trained professionals, social workers, case managers, and certified peer specialists and/or recovery specialists. All staff will be trained in CPR and naloxone administration.

## DO OTHER JURISDICTIONS OFFER SUPERVISED CONSUMPTION ROOMS AS PART OF OVERDOSE PREVENTION SERVICES?

The first government-authorized supervised consumption room opened more than 30 years ago in Switzerland. Today, more than 120 supervised consumption sites are operating in Europe, Australia, and Canada. The availability of supervised consumption services is increasing as research confirms the effectiveness and the advantages to the broader community.

## DOES SUPERVISED CONSUMPTION SAVE LIVES?

Yes. No overdose deaths have been reported at any of the more than 120 supervised consumption sites worldwide.[17],[18] In Canada, the fatal overdose rate in the Downtown Eastside neighborhood of Vancouver, British Columbia, decreased by 35 percent after the city opened North America's first supervised consumption site.[19] Germany also experienced declines in overdose- and drug-related deaths in the years following the opening of a supervised consumption site.[20]

## DO PEOPLE WHO USE SUPERVISED CONSUMPTION SITES SEEK TREATMENT?

Yes. Following the opening of Insite, a supervised consumption site in Vancouver, the use of detoxification services in the area increased by 30 percent.[21] More than half (57 percent) of people in a cohort of more than 900 long-term injection drug users sought addiction treatment within 24 months of enrollment.[22]

# DO SUPERVISED CONSUMPTION SITES ENCOURAGE DRUG USE?

No. Research shows that when managed in cooperation with local authorities and police, supervised consumption sites do not increase public disorder problems by attracting additional users and dealers to a neighborhood.[23],[24] No credible evidence suggests that supervised consumption sites encourage increased drug use or initiate new users.

# DO SUPERVISED CONSUMPTION SITES INCREASE NEIGHBORHOOD CRIME?

No. Considerable research on neighborhoods around safe consumption sites has shown no increase in crime.[25] In fact, a decrease in drug-related crime has been reported.[26],[27] Safehouse believes in a partnership with law enforcement and supports appropriate law enforcement measures to address public safety issues resulting from the opioid epidemic. Safehouse will actively discourage loitering.

# WHAT ARE THE BENEFITS TO THE COMMUNITY?

Overdose prevention services will reduce fatal opioid overdoses. As Safehouse will provide immediate reversal in the event of overdoses, the strain on emergency medical services and health systems will be decreased. By reducing ambulance rides, emergency room trips, and hospital visits, overdose prevention services are expected to save Philadelphia at least $2 million a year in health care costs. [28]

In addition, by providing a supervised place to consume drugs, fewer people will be using drugs on the streets. Less drug paraphernalia will be publicly discarded.

## DOES THE LAW ALLOW OVERDOSE PREVENTION SERVICES LIKE THOSE PROVIDED BY SAFEHOUSE?

We believe it does. Safehouse's overdose prevention services are designed to save lives, which is consistent with the intent of federal drug laws.

We believe that 21 U.S. Code § 856 ("Section 856") was never intended to apply, and does not apply, to a nonprofit providing a good faith, public health approach to overdose prevention services, including a supervised consumption room. The purpose of a supervised consumption room is to carry out legitimate medical and public health initiatives that offer scientifically proven interventions effective for encouraging treatment and rehabilitation of individuals addicted to opioids.

Section 856 prohibits maintaining any place "for the purpose of . . . using any controlled substance." The purpose of a supervised consumption room is to save lives by preventing fatal overdoses and encouraging participants to enter into treatment. It is intended solely as a place to address the public health crisis of opioid addiction by providing harm reduction and emergency response in the event of an overdose or other medical emergency, in

addition to providing counseling about safer injection practices and referrals to other social and health services including referrals to addiction treatment, medical care, housing, and other related comprehensive social services.

The express statutory restrictions set forth under Section 856 are not clearly applicable to a supervised consumption room that will be utilized as part of Safehouse's holistic approach to saving lives and providing overdose prevention services.

Philadelphia has a history of creative public health initiatives and prosecutorial discretion. In 1992, then-Mayor Rendell and the Board of Health authorized by executive order Prevention Point Philadelphia's syringe exchange program to protect public health by preventing the transmission of HIV. Syringe exchange in Philadelphia has been

found to be an effective harm reduction method. Indeed, syringe exchange has reduced new HIV cases in injection drug users in Philadelphia by more than 95 percent, from 819 cases in 1992 when Prevention Point opened to just 27 cases in 2016.[29]

Effective syringe exchange programs also increase the number of injection drug users referred to and retained in substance use treatment. In addition, they increase referral and entry opportunities for social services such as housing, case management, and medical care.[30] Studies also have found that syringe exchange programs do not increase injection drug use.[31]

## WILL SAFEHOUSE SEEK A PARTNERSHIP WITH

# LAW ENFORCEMENT?

Yes. Safehouse hopes to have a mutually beneficial, productive partnership with law enforcement, as we have a shared goal of making the community safer.

In Vancouver, police leaders strongly support overdose prevention services. [33] Bill Spearn, a longtime inspector with the Vancouver Police Department, formerly a staunch opponent of the sites, now admits that he was wrong. In May 2018, he said: "If you want to keep these people alive long enough to get them into treatment, you have to give them a space to use."

In reflecting on the benefit of Vancouver's overdose prevention services, Spearn said "it made sense to me that the reason that the number of overdoses that I was attending, or my members were attending, had dropped significantly, was because of Insite."[34]

# WILL DATA BE COLLECTED AT SAFEHOUSE?

Yes. Data will be collected on a range of information points, including: client demographics, needs assessments, utilization, and referrals for treatment. An evaluation of the impact of the services on overdose fatalities and use of drug treatment will be conducted. Data collection and analysis will be conducted in a manner that respects and preserves client privacy and confidentiality.

# HOW CAN I FINANCIALLY SUPPORT THE EFFORTS OF SAFEHOUSE?

If you'd like to support Safehouse, please send donations to:

Safehouse

PO Box 36788

Philadelphia, PA 19107

Or click here to donate via PayPal (https://www.paypal.com/cgi-bin/webscr?
cmd=_s-xclick&hosted_button_id=2D9UWP35AHDMW).

At this time, contributions to Safehouse are not tax-deductible for federal income tax purposes.

### REFERENCES:

- American Medical Association (2017, June 12) AMA Wants New Approaches to Combat Synthetic and Injectable Drugs [Press release]. Retrieved Sept. 12, 2018, from https://www.ama-assn.org/ama-wants-new-approaches-combat-synthetic-and-injectable-drugs (https://www.ama-assn.org/ama-wants-new-approaches-combat-synthetic-and-injectable-drugs)
  back to footnote 1 source
- City of Philadelphia, Department of Public Health, Department of Behavioral Health and Intellectual disAbility Services, Office of the Mayor (2018, Jan. 23). City Announces Progress on Opioid Task Force

Recommendations [Press release]. Retrieved Sept. 9, 2018, from
https://www.phila.gov/2018-01-23-city-announces-progress-on-opioid-
task-force-recommendations/ (https://www.phila.gov/2018-01-23-city-
announces-progress-on-opioid-task-force-recommendations/).
back to footnote 2 source

- Logan, D.E. & Marlatt, G.A., Harm Reduction Therapy: A Practice-
Friendly Review of Research, NCBI (Feb. 2010), available at
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3928290/
(https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3928290/) ("As
described, harm reduction interventions are demonstrably effective for
alcohol and substance abuse in many settings and with many
populations. They are also effective in recruiting a larger proportion of
afflicted clients and in reaching several populations (e.g., worksite,
homeless) that conventional treatment programs rarely reach.").
back to footnote 3 source

- Division of Health Data and Policy, Illinois Department of Public Health,
State of Illinois Comprehensive Opioid Data Report, Dec. 4 2017, from
http://dph.illinois.gov/sites/default/files/publications/publicationsdoil-
opioid-data-report.pdf
(http://dph.illinois.gov/sites/default/files/publications/publicationsdoil-
opioid-data-report.pdf); Paone, D. Tuazon, E., Nolan, M., & Mantha, S.,
"Unintentional Drug Poisoning (Overdose) Deaths Involving Heroin
and/or Fentanyl in New York City, 2000–2015," New York City
Department of Health and Mental Hygiene: Epi Data Brief August 2016
(74), from

https://www1.nyc.gov/assets/doh/downloads/pdf/epi/databrief74.pdf
(https://www1.nyc.gov/assets/doh/downloads/pdf/epi/databrief74.pdf).
back to footnote 4 source

- The Mayor's Task Force to Combat the Opioid Epidemic in
Philadelphia, Final Report and Recommendations. 2017: Philadelphia,
PA. from https://dbhids.org/wp-
content/uploads/2017/04/OTF_Report.pdf. (https://dbhids.org/wp-
content/uploads/2017/04/OTF_Report.pdf.)
back to footnote 5 source

- City of Philadelphia, Department of Public Health (2018, April). *Fatal
Drug Overdoses in Philadelphia, 2017*. from
https://www.phila.gov/health/pdfs/chart%20v3e1.pdf
(https://www.phila.gov/health/pdfs/chart%20v3e1.pdf)
back to footnote 6 source

- Ibid.
back to footnote 7 source

- Office of the Medical Examiner, Philadelphia Department of Public
Health. (2018). Unintentional Drug Related Deaths by Year 2003-2017.
Retrieved on Oct 1, 2018 from
https://public.tableau.com/profile/pdph#!/vizhome/UnintentionalDrugRelate
(https://public.tableau.com/profile/pdph#!/vizhome/UnintentionalDrugRelate
back to footnote 8 source

- Combating the opioid epidemic | Department of Behavioral Health and
Intellectual disAbility Services (n.d.). Retrieved Sept. 14, 2018, from
https://www.phila.gov/programs/combating-the-opioid-epidemic/

(https://www.phila.gov/programs/combating-the-opioid-epidemic/)

back to footnote 9 source

- Ibid.

back to footnote 10 source

- Mayor's Task Force to Combat the Opioid Epidemic (2017), supra note 5.

back to footnote 11 source

- Ibid.

back to footnote 12 source

- Wood, E. (2004). Changes in public order after the opening of a medically supervised safer injecting facility for illicit injection drug users. Canadian Medical Association Journal, 171(7), 731-734. doi:10.1503/cmaj.1040774

back to footnote 13 source

- Wood, E., Tyndall, M. W., Lai, C., Montaner, J. S., & Kerr, T. (2006). Impact of a medically supervised safer injecting facility on drug dealing and other drug-related crime [Abstract]. Substance Abuse Treatment, Prevention, and Policy,1(13), 1-4. doi:10.1186/1747-597X-1- 13; Supervised Injection Services. (2018, August 20). Retrieved Sept. 13, 2018, from https://www.toronto.ca/community-people/health-wellness-care/health-programs-advice/supervised-injection-services/ (https://www.toronto.ca/community-people/health-wellness-care/health-programs-advice/supervised-injection-services/)

back to footnote 14 source

- Kerr, T., PhD, Tyndall, M. W., MD, Zhang, R., MSc, Lai, C., MMath, Montaner, J. S., MD, & Wood, E., PhD. (2007). Circumstances of First Injection Among Illicit Drug Users Accessing a Medically Supervised Safer Injecting Facility. American Journal of Public Health,97(7), 128-130. doi:10.2105/AJPH.2006.086256.

  back to footnote 15 source

- Wood, E., Tyndall, M. W., Zhang, R., Montaner, J. S., & Kerr, T. (2007). Rate of detoxification service use and its impact among a cohort of supervised injecting facility users. Addiction,102(6), 916-919. doi:10.1111/j.1360-0443.2007.01818.x

  back to footnote 16 source

- *Alternatives To Public Injection*, Harm Reduction Coalition (2016) from https://harmreduction.org/wp-content/uploads/2016/05/Alternatives-to-Pu... (https://harmreduction.org/wp-content/uploads/2016/05/Alternatives-to-Public-Injection-report.pdf)

  back to footnote 17 source

- Kerr, T., Tyndall, M. W., Lai, C., Montaner, J. S., & Wood, E. (2006). Drug-related overdoses within a medically supervised safer injection facility. International Journal of Drug Policy,17(5), 436-441. doi:10.1016/j.drugpo.2006.05.008

  back to footnote 18 source

- Marshall, B. D., Milloy, M., Wood, E., Montaner, J. S., & Kerr, T. (2011). Reduction in overdose mortality after the opening of North Americas first medically supervised safer injecting facility: A retrospective population-based study. *The Lancet*, 377(9775), 1429-1437.

doi:10.1016/s0140-6736(10)62353-7

back to footnote 19 source

- Degkwitz, P., Haasen, C., Verthein, U., and Zurhold, H. (2003). Drug Consumption Rooms in Hamburg, Germany: Evaluation of the Effects on Harm Reduction and the Reduction of Public Nuisance. *Journal of Drug Issues*, 33, 663-688.

back to footnote 20 source

- Wood, et al. (2007), *supra* note 16.

back to footnote 21 source

- DeBeck K., Kerr T., Bird L., et al. "Injection Drug Use Cessation and Use of North America's First Medically Supervised Safer Injecting Facility." Drug Alcohol Depend. 2011 Jan. 15; 113(2-3): 172–176. doi: 10.1016/j.drugalcdep.2010.07.023.

back to footnote 22 source

- Vancouver's INSITE Service and Other Supervised Injection Sites: What Has Been Learned from Research? - Final Report of the Expert Advisory Committee on Supervised Injection Site Research (2008, April 3). Health Canada. Retrieved Sept. 13, 2018, from https://www.canada.ca/en/health-canada/corporate/about-health-canada/reports-publications/vancouver-insite-service-other-supervised-injection-sites-what-been-learned-research.html#pub (https://www.canada.ca/en/health-canada/corporate/about-health-canada/reports-publications/vancouver-insite-service-other-supervised-injection-sites-what-been-learned-research.html#pub).

back to footnote 23 source

- Kerr, T., et al. (2007), *supra* note 15.

  back to footnote 24 source

- Wood, E., et al. (2006), *supra* note 14.

  back to footnote 25 source

- Wood, E. (2004), *supra* note 13.

  back to footnote 26 source

- Supervised Injection Services. (2018, Aug. 20), *supra* note 14.

  back to footnote 27 source

- Larson, S., Padron, N., Mason, J. & Bogaczyk (2017) *Supervised Consumption Facilities – Review of the Evidence*. Retreived from https://healthdocbox.com/Substance_Abuse/72880022-Supervised-consumption-facilities-review-of-the-evidence-sharon-larson-phd-norma-padron-phd-jennifer-mason-tyler-bogaczyk.html (https://healthdocbox.com/Substance_Abuse/72880022-Supervised-consumption-facilities-review-of-the-evidence-sharon-larson-phd-norma-padron-phd-jennifer-mason-tyler-bogaczyk.html)

  back to footnote 28 source

- Philadelphia Department of Public Health,AIDS Activities Coordinating Office Surveillance Report, 2016. Philadelphia, PA: City of Philadelphia; September 2017.

  back to footnote 29 source

- Des Jarlain, D., & Braine, N., *Assessing syringe exchange programs* (2004). Addiction, 99(9), 1081-1082. doi:10.1111/j.1360-0443.2004.00800.x

  back to footnote 30 source

- Frakt, A., Ph.D. (2016, Sept. 2). *Effectiveness and cost-effectiveness of syringe exchange programs* [Web log post]. AcademyHealth.org, Retrieved Sept. 24, 2018, from https://www.academyhealth.org/node/2211 (https://www.academyhealth.org/node/2211) back to footnote 31 source

- Whelan, A., *A Vancouver cop tells Philadelphia why he changed his mind on safe injection sites*, Philly.com (https://Philly.com), Apr. 3 2018, http://www2.philly.com/philly/health/addiction/safe-injection-sites-opioids-philadelphia-vancouver-temple-university-20180403.html (http://www2.philly.com/philly/health/addiction/safe-injection-sites-opioids-philadelphia-vancouver-temple-university-20180403.html) back to footnote 32 source

- Mannarino, D., *Inside supervised injection sites: How they work in the fight against opioid crisis*, WPIX11 NY, May 8 2018, https://pix11.com/2018/05/08/inside-supervised-injection-sites-how-they-work-in-the-fight-against-opioid-crisis/ (https://pix11.com/2018/05/08/inside-supervised-injection-sites-how-they-work-in-the-fight-against-opioid-crisis/) back to footnote 33 source

- Gordon, Elana, Lessons from Vancouver: *U.S. cities consider supervised injection facilities*, WHYY, July 5, 2018, https://whyy.org/segments/lessons-from-vancouver-u-s-cities-consider-supervised-injection-facilities/ (https://whyy.org/segments/lessons-from-

vancouver-u-s-cities-consider-supervised-injection-facilities/)

back to footnote 34 source

## ABOUT

**Articles of Incorporation (/about/articles-incorporation)**

**Frequently Asked Questions (/about/faqs)**

**Log in (/user/login)**



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

---

*William M. McSwain*
*United States Attorney*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

November 9, 2018

Via Certified Mail (Return Receipt Requested)
and First Class Mail

Jose A. Benitez, M.S.W.
President
Ronda B. Goldfein, Esquire
Vice President
Safehouse
c/o Prevention Point Philadelphia
2913-15 Kensington Avenue
Philadelphia, PA 19134

      Re:    Safehouse/Proposed Injection Site

Dear Mr. Benitez and Ms. Goldfein:

      Earlier this month, Safehouse announced its formation as a nonprofit and intention to open at least one facility in Philadelphia where, among other things, "participants" could inject controlled substances such as heroin and fentanyl in a "consumption room" under medical supervision. It also plans to offer onsite medical care and referral services such as wound care, onsite initiation of medication-assisted treatment for substance abuse, and referrals to primary care. In addition, it will offer a series of "wrap-around social services" such as referrals to social services, legal services, and housing opportunities.

      While the U.S. Attorney's Office supports many of the services that Safehouse proposes to offer, including the medical and social referral services, Safehouse's proposed "consumption room" for injection of illicit drugs would violate federal law. Specifically, Title 21, United States Code, Section 856 provides in relevant part that "it shall be unlawful to":

      (a)(1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;

      (a)(2) manage or control any place whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without

Safehouse
c/o Prevention Point Philadelphia
November 9, 2018
Page Two

> compensation, the place for the purpose of unlawfully manufacturing, storing,
> distributing, or using a controlled substance.

Section 856(a)(2), in particular, encompasses a broad range of relationships and conduct. It
reaches a person or entity who has management or control over a place made available for the
unlawful use of controlled substances, whether "permanently" or "temporarily." It covers not
only landlords, but also lessees, agents, employees, occupants, and even mortgagees (*i.e.*,
lending institutions). It applies whether the place is made available "with or without
compensation," explicitly encompassing a situation such as this one where Safehouse does not
plan to profit from the use of the property. Moreover, the statute makes no exception for
entities, such as Safehouse, who claim a benevolent purpose or purpose other than the use of
controlled substances. *See, e.g., United States v. Tamez*, 941 F.2d 770, 774 (9th Cir. 1991).

Please ensure that your organization, board members, and employees comply with
federal law. The Department of Justice will pursue appropriate legal remedies should you fail
to ensure your organization's compliance.

The Department of Justice is committed to ending the opioid epidemic through
prevention, enforcement, and treatment efforts. We recognize that Safehouse and its
proponents share our goal of combatting the scourge of opioid abuse. I appreciated the recent
opportunity to tour Prevention Point with Mr. Benitez and I thank Ms. Goldfein for
proactively contacting my office to keep us apprised of Safehouse's intentions. Many of the
services Safehouse intends to provide appear worthwhile and commendable. While we do not
and cannot approve of Safehouse's "consumption room," we invite a continuing dialogue with
you to hear more about your proposal and to discuss how we can work together to fight this
epidemic within existing federal law.

Very truly yours,

WILLIAM M. McSWAIN
United States Attorney

# Safehouse

A public health approach to overdose prevention in Philadelphia

November 26, 2018

*2019 NOV 30  P 3: 07*

William M. McSwain
U.S. Department of Justice
U.S. Attorney
Eastern District of Pennsylvania
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

Dear U.S. Attorney McSwain:

Thank you for letter of November 9 and the invitation to continue the dialogue about our efforts to provide overdose prevention services. We are grateful for a Department of Justice that embraces the need to combat the scourge of opioid abuse.

To ensure candor in our ongoing dialogue, we would like to share our thoughts about this initiative.

We respectfully disagree with the conclusion that Safehouse's proposed consumption room would violate federal law. The legislative intent of Title 21, United States Code, Section 856 is to prohibit individuals from knowingly allowing their property to be used for the purpose of distributing or using drugs for profit. We believe that a proper and constitutional application of Section 856 does not prohibit our primary purpose of preventing fatal overdoses.

Overdose prevention is part of a multifaceted public health approach to combating the opioid crisis. Extensive research has demonstrated the benefits of overdose prevention services for people who use drugs and the communities where drug use occurs. For more on the services to be offered, please see safehousephilly.org.

Moreover, the leaders and organizers of Safehouse are motivated by the Judeo-Christian beliefs ingrained in us from our religious schooling, our devout families and our practices of worship. At the core of our faith is the principle that preservation of human life overrides any other considerations. As witnesses to great losses of life in our community, we are compelled by our religious beliefs to take action to save lives.

Finally, we hope that the U.S. Attorney's office will exercise prosecutorial discretion in assessing our proposed overdose prevention services. This is not a request that your office approve or ignore Safehouse's proposed consumption room, but rather that the

same discretion in prosecution, that is shown in a range of activities that may be considered unlawful, be exercised here.

We welcome the opportunity to meet and discuss our shared goals of fighting this epidemic.

Respectfully,

Jose A. Benitez, M.S.W.

Ronda B. Goldfein, Esq.