Katherine Franke (admitted *pro hac vice*)
COLUMBIA LAW SCHOOL
435 W. 116th Street
New York, NY 10027
katherine.franke@law.columbia.edu
Telephone: (212) 854-0061

Attorney for *Amici Curiae* Katherine Franke,
Micah Schwartzman, Elizabeth Sepper, and
Nelson Tebbe

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br><br>       v.<br><br>SAFEHOUSE, a Pennsylvania nonprofit<br>corporation; JOSE BENITEZ, as President<br>and Treasurer of Safehouse,<br><br>            Defendants.<br>_____<br><br>SAFEHOUSE, a Pennsylvania nonprofit<br>corporation,<br>            *Counterclaim Plaintiff,*<br>       v.<br><br>UNITED STATES OF AMERICA,<br>            *Counterclaim Defendant,*<br><br>U.S. DEPARTMENT OF JUSTICE;<br>WILLIAM P. BARR, in his official<br>capacity as Attorney General of the United<br>States; WILLIAM M. MCSWAIN, in his<br>official capacity as U.S. Attorney for the<br>Eastern District of Pennsylvania,<br><br>            *Third-Party Defendants.* | Civil Action No.: 2:19-cv-0519<br><br>**MOTION OF PROFESSORS KATHERINE FRANKE, MICAH SCHWARTZMAN, ELIZABETH SEPPER, AND NELSON TEBBE FOR LEAVE TO FILE BRIEF *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY ON PLAINTIFF/COUNTERCLAIM DEFENDANT UNITED STATES OF AMERICA AND THIRD-PARTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

1

Professors Katherine Franke, Micah Schwartzman, Elizabeth Sepper, and Nelson Tebbe respectfully move this Court for leave to file the accompanying brief *amici curiae* in support of neither party on the Plaintiff/Counterclaim Defendant United States of America and Third-Party Defendants' Motion for Judgment on the Pleadings.

Pursuant to this Court's Stipulated Scheduling Order ("the Order") (ECF No. 33), Law Professors of Religious Liberty move for leave to file a brief as *amici curiae* in support of neither party in relation to Plaintiff/Counterclaim Defendant United States of America and Third-Party Defendants' Motion for Judgment on the Pleadings ("the brief"). The brief is attached to this motion as Exhibit A. This motion and the brief are being timely filed as required by the Order.

## INTEREST OF THE AMICI CURIAE[1]

*Amici* are law professors and specialists in the field of constitutional law, religious liberty, and immigration law. Katherine Franke is the Sulzbacher Professor of Law at Columbia Law School, Micah Schwartzman is the Joseph W. Dorn Research Professor of Law at the University of Virginia School of Law, Elizabeth Sepper is a Professor of Law at the University of Texas at Austin School of Law, Nelson Tebbe is a Professor of Law at Cornell Law School. Each Professor teaches, writes, and/or practices in the field of religious liberty, religious exemptions, and constitutional law. *Amici* seek to clarify the legal doctrine of religious liberty law, including the Religious Freedom Restoration Act, and to facilitate the administration of justice for individuals seeking exemptions from neutral laws of general applicability. *Amici* are professors who have all written on the importance of striking a balance between protections for constitutional rights and other compelling public interests.

---

[1] Counsel for a party did not author this brief in whole or in part and such counsel or a party did not make a monetary contribution intended to fund the preparation or submission of this brief.

*Amici* Law Professors seek to provide the Court with the proper framework within which to consider the merits of defendants' assertion of an exemption under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1 (hereinafter "RFRA"), from the enforcement against them of §§ 801-971 of the Controlled Substances Act by the U.S. government.  This case raises important and novel questions regarding the application of RFRA as a defense from criminal liability under federal law; thus, it is imperative that the Court structure its ruling on the government's motion to dismiss the defendants' RFRA defense in a way that will provide clear guidance to the parties herein and to other parties and courts in the future.  As experts in the law of religious liberty in general, we offer this *amicus* brief to help guide the Court's review of the government's motion to dismiss the defendants' RFRA defense in this case based only on the pleadings.

## I.     AN *AMICUS* BRIEF IS DESIRABLE AND THE MATTERS PRESENTED ARE RELEVANT TO THE DISPOSITION OF THE CASE

Amicus curiae status is generally granted when: "(1) the petitioner has a 'special interest' in the particular case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case. *Sciotto v. Marple Newtown Sch. Dist.,* 70 F.Supp.2d 553, 555 (E.D.Pa.1999)," *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005).  Petitioners herein have a special interest in matter before the Court given their expertise in religious liberty law and the novel questions raised in the defendants' religious liberty defense.  *Amici* law professors are not partial to a particular outcome in the case, and for this reason seek to file a brief *amicus curiae* on behalf of neither party in this matter.

A district court has inherent authority to designate amici curiae to assist it in a

proceeding. *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa.

2005).[2] "Courts have found the participation of an amicus especially proper where the amicus

will ensure 'complete and plenary presentation of difficult issues so that the court may reach a

proper decision,' *Alliance of Auto. Mfrs. v. Gwadowsky,* 297 F.Supp.2d 305, 307 (D.Me.2003)

(quoting *Alexander v. Hall,* 64 F.R.D. 152, 155 (D.S.C.1974)), or where an issue of general

public interest is at stake," *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206,

209 (E.D. Pa. 2005). "Courts have found the participation of an amicus especially proper where

the amicus will ensure complete and plenary presentation of difficult issues so that the court may

reach a proper decision." *Id.* at 209 (internal quotation marks and citation omitted).[3]

    In their brief, *amici* bring to this Court's attention longstanding precepts of religious

liberty law that are at stake in the instant motion. *Amici* provide expertise in the purpose,

meaning, and boundaries of the Religious Freedom Restoration Act as they apply as a defense to

the enforcement of federal criminal law in this case. We believe that is sufficient to allow *amici*

to file their brief in this matter.

    The appearance of *amici curiae* is especially helpful to the Court where, as here, the

Court has before it an appeal that raises important and novel questions about the application of

the Religious Freedom Restoration Act, and religious liberties principles more generally, to the

enforcement of federal criminal law.  Given that the Supreme Court has undertaken to clarify the

---

[2] Although neither the Federal Rules of Criminal Procedure nor the Local Rules of this Court include provisions specific to *amicus curiae*, Federal Rule of Appellate Procedure 29(a) states that non-governmental entities may file *amicus curiae* briefs by leave of court upon motion stating "the movant's interest" and the "reasons why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed. R. App. P. 29(a).

[3] This Court has previously allowed *amici* to participate in other matters of significant public importance.  See e.g. *Avellino v. Herron,* 991 F.Supp. 730, 732 (E.D.Pa.1998); *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005); *Burlington v. News Corp.*, No. CIV.A. 09-1908, 2015 WL 2070063, at *3 (E.D. Pa. May 4, 2015).

reach and limits of RFRA in a range of important civil cases in the last several terms, the extension of those rulings to the enforcement of federal criminal law is of critical significance.

The law professors' brief meets these criteria and, as members of the legal academy, the Law Professors are uniquely situated to assist the Court here in addressing the application of RFRA to the government's effort to enjoin their actions herein.

The Law Professors' brief offers a careful analysis of the analysis of both defendants' and the government's burdens of proof under RFRA.

**Conclusion**

For these reasons, the *Amici* respectfully request that the Court grant this Motion and accept its amicus brief.

RESPECTFULLY SUBMITTED this 10th day of July, 2019.

*/s/ Katherine Franke*

Katherine Franke*
COLUMBIA UNIVERSITY
  SCHOOL OF LAW
435 W. 116th Street
New York, NY 10027
(212) 854-0061
kfranke@law.columbia.edu

*Attorney for Amici Professors of Religious Liberty Law*

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of July, 2019, I caused Professors of Religious Liberty as *Amici Curiae*'s brief in support of neither party on the motion for judgment on the pleadings filed by Plaintiff-Counterclaim Defendant United States and Third-Party Defendants U.S. Department of Justice, U.S. Attorney General William P. Barr, and U.S. Attorney for the Eastern District of Pennsylvania William M. McSwain to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF to all counsel of record registered with the ECF system.

*/s/ Katherine Franke*
Katherine Franke

# EXHIBIT A

Katherine Franke (admitted *pro hac vice*)
COLUMBIA LAW SCHOOL
435 W. 116th Street
New York, NY 10027
katherine.franke@law.columbia.edu
Telephone:  (212) 854-0061

Attorney for *Amici Curiae* Professors of Religious
Liberty Law Katherine Franke, Micah
Schwartzman, Elizabeth Sepper, Nelson Tebbe

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SAFEHOUSE, a Pennsylvania nonprofit corporation; JOSE BENITEZ, as President and Treasurer of Safehouse,<br><br>　　　　　　　　Defendants.<br>────────────────────────<br>SAFEHOUSE, a Pennsylvania nonprofit corporation,<br>　　　　　　　　*Counterclaim Plaintiff,*<br>　　v.<br><br>UNITED STATES OF AMERICA,<br>　　　　　　　　*Counterclaim Defendant,*<br><br>U.S. DEPARTMENT OF JUSTICE; WILLIAM P. BARR, in his official capacity as Attorney General of the United States; WILLIAM M. MCSWAIN, in his official capacity as U.S. Attorney for the Eastern District of Pennsylvania,<br><br>　　　　　　　　*Third-Party Defendants*. | Civil Action No.: 2:19-cv-0519<br><br>**BRIEF OF AND BY PROFESSORS OF RELIGIOUS LIBERTY LAW AS *AMICI CURIAE* IN SUPPORT OF NEITHER PARTY ON PLAINTIFF/COUNTERCLAIM DEFENDANT UNITED STATES OF AMERICA AND THIRD-PARTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

**INTEREST OF THE AMICI CURIAE** ........................................................... 1

**INTRODUCTION** ........................................................................................ 1

**I.    The RFRA Prima Facie Case** ................................................................ 4

    **A.    Are the Defendants Acting Based on Beliefs That Are *Religious* in Nature? .. 4**

    **B.    Are The Defendants' Religious Beliefs Sincerely Held?** ................................... 11

    **C.    Are the Defendants Sincerely Held Religious Beliefs *Substantially Burdened* by the Instant Prosecution?** ................................................................ 12

**II.   The Government's Burden in Opposing the RFRA Motion** ........................................... 15

    **A.    Does The Prosecution In The Instant Case *Further A Compelling State Interest*?** ........................................................................ 15

    **B.    Is The Burden Imposed On Defendants' Religious Beliefs The Least Restrictive Means Of Advancing A Compelling Government Interest?** ........ 17

**III. Conclusion** ........................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbott v. City of Fort Lauderdale*,
   783 So. 2d 1213 (Fla. Dist. Ct. App. 2001) ............................................................. 7

*Big Hart Ministries Assoc., Inc. v. City of Dallas*,
   2013 WL 12304552 (N.D. Tex. 2013) .................................................................... 7

*Braunfeld v. Brown*,
   366 U.S. 599 (1961) ................................................................................................ 5

*Burwell v. Hobby Lobby*,
   573 U.S. ___, 134 S.Ct. 2751 (2014) .............................................. 5, 8, 11, 12, 13

*Callahan v. Woods*,
   658 F.2d 672 (9th Cir. 1981) .................................................................................. 8

*Cavanaugh v. Bartelt*,
   178 F. Supp. 3d 819 (D. Neb. 2016) ...................................................................... 5

*Chosen 300 Ministries, Inc. v. City of Phila.*,
   2012 WL 3235317 (E.D. Penn. Aug. 9, 2012) ...................................................... 7

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ................................................................................................ 2

*City of Woodinville v. Northshore United Church of Christ*,
   166 Wash.2d 633 (Wash. 2009) ............................................................................. 7

*Cutter v. Wilkinson*,
   544 U.S. 709 (2005) ................................................................................................ 2

*Employment Division v. Smith*,
   494 U.S. 872 (1990) ............................................................................................ 1, 3

*Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*,
   818 F.3d 1122 (11th Cir. 2016) ................................................................. 12, 13, 17

*Fifth Ave. Presbyterian Church v. City of New York*,
   2004 WL 2471406 (S.D.N.Y. 2001) ...................................................................... 7

*Geneva Coll. v. Sec'y U.S. Dep't of Health & Human Servs.*,
   778 F.3d 422 (3d Cir. 2015) ................................................................................. 12

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,

546 U.S. 418 (2006) ................................................................................................ 2, 15, 17

*Guam v. Guerrero,*
  290 F.3d 1210 (9th Cir. 2002) ....................................................................................... 3, 4

*Holt v. Hobbs,*
  135 S.Ct. .............................................................................................................. 14

*Isbell v. Ryan,*
  2011 WL 6050337 (D. Ariz. December 6, 2011) ............................................................... 11

*Kaemmerling v. Lappin,*
  553 F.3d 669 (D.C. Cir. 2008) ..................................................................................... 12

*Mack v. Warden Loretto FCI,*
  839 F.3d 286 (3d Cir. 2016) ........................................................................................ 13

*Mahoney v. Doe,*
  642 F.3d 1112 (D.C. Cir. 2011) .................................................................................... 12

*Patrick v. LeFevre,*
  745 F.2d 153 (2d Cir. 1984) ....................................................................................... 5, 11

*Priests For Life v. U.S. Dep't of Health & Human Servs.,*
  772 F.3d 229 (D.C. Cir. 2014) ..................................................................................... 12

*Reaching Hearts Int'l, Inc. v. Prince George's Cnty.,*
  584 F. Supp. 2d 766 (D. Md. 2008) ............................................................................... 15

*Rigdon v. Perry,*
  962 F.Supp. 150 (D.D.C. 1997) ..................................................................................... 8

*Sherbert v. Verner,*
  374 U.S. 398 (1963) ..................................................................................................... 1

*Snoqualmie Indian Tribe v. F.E.R.C.,*
  545 F.3d 1207 (9th Cir. 2008) ...................................................................................... 13

*St. John's Evangelical Lutheran Church v. City of Hoboken,*
  195 N.J. Super. 414 (N.J. Super. Ct. Law Div. 1983) ........................................................... 7

*Stuart Circle Parish v. Board of Zoning Appeals of the City of Richmond,*
  946 F. Supp. 1225 (E. D. Va. 1996) ................................................................................. 6

*United States v. Bauer,*
  84 F.3d 1549 (9th Cir. 1996) ......................................................................................... 3

*United States v. Christie*,
   825 F.3d 1048 (9th Cir. 2016) .................................................................... 3, 17

*United States v. Christie*,
   2013 WL 2181105 (D. Haw. 2013) .................................................................. 4

*United States v. Lepp*,
   2008 WL 3843283 (N.D. Cal. 2008) ................................................................ 4

*United States v. Meyers*,
   95 F.3d 1475 (10th Cir. 1996) ......................................................................... 5

*United States v. Quaintance*,
   608 F.3d 717 (10th Cir. 2010) ....................................................................... 11

*United States v. Seeger*,
   380 U.S. 163 (1965) .................................................................................. 8, 10

*United States v. Tawahongva*,
   456 F. Supp. 2d 1120 (D. Ariz. 2006) ............................................................. 4

*United States v. Zimmerman*,
   514 F.3d 851 (9th Cir. 2007) ......................................................................... 11

*Welsh v. U.S.*,
   398 U.S. 333 (1970) ........................................................................................ 8

*Western Presbyterian Church v. Board of Zoning Adjustment of District of Columbia*,
   862 F.Supp. 538 (D.D.C. 1994) ...................................................................... 6

*Wilkinson v. Lafranz*,
   574 So.2d 403 (La. Ct. App. 1991) ................................................................. 7

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) .................................................................................... 1, 8

**Statutes**

42 U. S. C. §§ 2000bb–1(a), (b) ......................................................................... 3

42 U.S.C. § 2000bb(b)(1) ................................................................................... 1

42 U.S.C. § 2000bb-2(3) ............................................................................................................. 4

42 U.S.C. § 2000bb–1 ................................................................................................................ 1

42 U.S.C. § 2000bb–1(a) ........................................................................................................... 2

42 U.S.C.A. § 2000cc-5(7)(A) ................................................................................................. 15

§ 2000bb–1(c) ........................................................................................................................... 3

**Other Authorities**

Gedicks, Frederick Mark. *"Substantial" Burdens: How Courts May (and Why They Must) Judge Burdens on Religion Under RFRA*, 85 Geo. Wash. L. Rev. 94 (2017) ..................................... 12

González, Marc-Tizoc. *Criminalizing Charity: Can First Amendment Free Exercise of Religion, RFRA, and RLUIPA Protect People Who Share Food in Public?*, 7 U.C. Irvine L. Rev. 291 (2017) ........................................................................................................................................... 6

Loewentheil, Kara, and Platt, Elizabeth Reiner, *In Defense of the Sincerity Test*, in RELIGIOUS EXEMPTIONS 247 (Kevin Vallier & Michael Weber eds., 2018) …………………………….. 11

National Coalition for the Homeless. *A Dream Denied: The Criminalization of Homelessness in U.S. Cities* (2006) https://www.nationalhomeless.org/publications/crimreport/report.pdf………………………... 6

Sessions, Jefferson B., III. *Memorandum For All Executive Departments And Agencies*, "Federal Law Protections for Religious Liberty," October 6, 2017, p. 1, available at https://www.justice.gov/opa/press-release/file/1001891/download…..........................4, 10, 13

Sessions, Jefferson B., III. "Statement of Interest of the United States of America," *Roman Catholic Archdiocese of Kansas City in Kansas v. City of Mission Woods, Kansas*, Case No. 2:17-cv-02186-DDC (D. Kansas, April 24, 2018), *available at* https://www.justice.gov/crt/case-document/statement-interest-roman-catholic-archdiocese-kansas-city-kansas-v-city-mission…………………………………………………………..15

Stout, Kelli. *Tent Cities and RLUIPA: How a New Religious-Land-Use Issue Aggravates RLUIPA*, 41 Seton Hall L. Rev. 465 (2011) ............................................................................ 6

United States Department of Justice. *Justice Manual. Respect for Religious Liberty*, 1-15.300.14 (2018), available at: https://www.justice.gov/jm/1-15000-respect-religious-liberty-0....................................................................................………….…..16

## INTEREST OF THE AMICI CURIAE[1]

*Amici* Law Professors, all experts in constitutional law and specifically the law of religious liberty, seek to provide the Court with the proper framework within which to consider the merits of defendants' assertion of an exemption under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1 (hereinafter "RFRA"), from the enforcement against them of §§ 801-971 of the Controlled Substances Act by the U.S. government.  This case raises important and novel questions regarding the application of RFRA as a defense from criminal liability under federal law; thus, it is imperative that the Court structure its ruling on the government's motion to dismiss the defendants' RFRA defense in a way that will provide clear guidance to the parties herein and to other parties and courts in the future.  As experts in the law of religious liberty in general, we offer this *amicus* brief to help guide the Court's review of the government's motion to dismiss the defendants' RFRA defense in this case based only on the pleadings.

## INTRODUCTION

Congress enacted RFRA in 1993 in response to the Supreme Court's holding in *Employment Division v. Smith*, 494 U.S. 872 (1990), that the Free Exercise Clause of the First Amendment "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Id*. at 879 (internal quotation marks omitted).   With RFRA, Congress sought "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)," that had been altered by the Court in *Smith*. 42 U.S.C. § 2000bb(b)(1).  By reinstating as a statutory matter the pre-*Smith* free exercise standard, Congress recognized that laws of general applicability may, in some cases, impose a substantial burden on the religious exercise of some persons.  Congress required that in

---

[1] Counsel for a party did not author this brief in whole or in part and such counsel or a party did not make a monetary contribution intended to fund the preparation or submission of this brief.

circumstances where religious exercise is substantially burdened by state action, the government must justify such burden as furthering a compelling interest through narrowly tailored means. The Supreme Court affirmed this interpretation of the reach of RFRA in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) ("the Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion, 'even if the burden results from a rule of general applicability.'") (quoting 42 U.S.C. § 2000bb–1(a)).  RFRA aims to provide substantial protection to the free exercise of religion while recognizing that this right is not absolute, insofar as it must yield where necessary to allow the government to implement a compelling public interest, or where the rights of third parties, for instance other citizens, are burdened by the overly solicitous accommodation of a person's religious belief.  Further, the First Amendment's Establishment Clause imposes a limit on the extent to which the government may accommodate the religious beliefs of citizens, as the government must ensure that an "accommodation [is] measured so that it does not override other significant interests" and does not "differentiate among bona fide faiths." *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).

Through a process of strict judicial review, RFRA creates the possibility of discrete religious exemptions to parties whose religious activities are constrained by neutral laws of general applicability. To receive an exemption under RFRA, a claimant need not demonstrate that the challenged law or policy singles out any particular group for special harm—such a law would be unconstitutional under the Free Exercise and Establishment Clauses of the First Amendment, making a RFRA exemption unnecessary. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993).  Nor need a defendant show that he or she believes the challenged law cannot exist *at all*. RFRA is not a means of challenging the application of a law or policy generally, but of challenging a particular enforcement of federal law to the extent

that it conflicts with a particular person's specific religious practices.

Under RFRA, the federal government may not "substantially burden" a person's religious exercise, even where the burden results from a religiously neutral, generally applicable law that might be constitutionally valid under *Smith*, unless the imposition of such a burden is the least restrictive means of accomplishing a compelling governmental interest.  The person claiming a RFRA defense must show (i) that he or she holds a belief that is religious in nature; (ii) that that belief is sincerely held; and (iii) that his or her exercise of religious belief is substantially burdened by a federal law or policy.  Once the person claiming a RFRA defense has made out this showing, the burden shifts to the government to show that (i) enforcement of the law in this case advances a compelling governmental interest; and (ii) that interest is being accomplished through the means least restrictive to the claimant's religious exercise.  42 U. S. C. §§ 2000bb–1(a), (b).

The Supreme Court recognized that RFRA may be asserted as a defense to the enforcement of the Controlled Substances Act in *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), finding that "[a] person whose religious practices are burdened in violation of RFRA 'may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.' § 2000bb–1(c)."  *Id.* at 424.  Many federal courts have recognized the jurisdiction of federal courts to entertain RFRA-based motions to dismiss in relation to the enforcement of criminal law, including their adjudication before trial after an evidentiary hearing.  *United States v. Christie*, 825 F.3d 1048, 1055 (9th Cir. 2016) ("if the government strikes first—for example, by indicting a person for engaging in activities that form a part of his religious exercise but are prohibited by law—the person may raise RFRA as a shield in the hopes of beating back the government's charge."); *see also United States v. Bauer*, 84 F.3d

1549 (9th Cir. 1996); *Guam v. Guerrero,* 290 F.3d 1210, 1222 (9th Cir. 2002); *United States v. Tawahongva*, 456 F. Supp. 2d 1120, 1129 (D. Ariz. 2006); *United States v. Lepp*, 2008 WL 3843283 (N.D. Cal. 2008); *United States v. Christie*, 2013 WL 2181105 *3 (D. Haw. 2013). Former Attorney General Sessions made clear, "RFRA applies to all actions by federal administrative agencies, including rulemaking, adjudication or other enforcement actions, and grant or contract distribution and administration." Attorney General Jeff Sessions, *Memorandum For All Executive Departments And Agencies*, "Federal Law Protections for Religious Liberty," October 6, 2017, p. 1, available at https://www.justice.gov/opa/press-release/file/1001891/download (hereinafter "Federal Law Protections for Religious Liberty"). The Attorney General specifically condoned the use of RFRA as a defense in federal criminal prosecutions in a new section of the *United States Attorneys' Manual (USAM) Respect for Religious Liberty,* available at https://www.justice.gov/jm/1-15000-respect-religious-liberty-0 ("RFRA applies to all actions by federal administrative agencies, including … enforcement actions.").

In assessing the merits of a RFRA claim, whether raised affirmatively to enjoin enforcement of a federal law or policy, or as a defense to an enforcement proceeding initiated by the government or the threat thereof, as is the case herein, the Court must substantively analyze each of the elements of the RFRA case.

What follows is intended to provide an outline for the Court of how that legal analysis should proceed in analyzing the defendants' RFRA defense to enforcement of the Controlled Substances Act in this case.

I.      **The RFRA Prima Facie Case**

   A.      **Are the Defendants Acting Based on Beliefs That Are *Religious* in Nature?**

With respect to the showing required by the party claiming a RFRA exemption, the

claimant must first show with "the evidence of persuasion," 42 U.S.C. § 2000bb-2(3), that they hold a belief that is *religious* in nature. This showing requires courts to consider the mixed question of whether, objectively, the claimant's beliefs are "religious" and whether, subjectively, the claimant themself understood the beliefs to be religious. RFRA covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Burwell v. Hobby Lobby*, 573 U.S. ___, 134 S.Ct. 2751, 2762 (2014). RFRA provides protection to a wide diversity of religious practices, including those that differ significantly from the Abrahamic traditions. Thus, a RFRA claimant need not show that they believe in a singular deity, that their faith includes a house of worship, or that they are a member of a recognizable congregation. "This [] inquiry reflects our society's abiding acceptance and tolerance of the unorthodox belief. Indeed, the blessings of our democracy are ensconced in the first amendment's unflinching pledge to allow our citizenry to explore diverse religious beliefs in accordance with the dictates of their conscience." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984). "[W]e are a cosmopolitan nation made up of people of almost every conceivable religious preference." *Braunfeld v. Brown,* 366 U.S. 599, 606 (1961).

In considering whether a system of values or beliefs counts as religious for the purposes of RFRA and similar federal statutes, courts have looked to several key indicia of "religiosity" that implicate "'deep and imponderable matters' … includ[ing] existential matters, such as humankind's sense of being; teleological matters, such as humankind's purpose in life; and cosmological matters, such as humankind's place in the universe." *Cavanaugh v. Bartelt*, 178 F. Supp. 3d 819, 829 (D. Neb. 2016), *aff'd* (8th Cir. Sept. 7, 2016). Religious beliefs "often prescribe a particular manner of acting, or way of life, that is 'moral' or 'ethical' … [and] may create duties—duties often imposed by some higher power, force, or spirit—that require the

believer to abnegate elemental self-interest." *United States v. Meyers*, 95 F.3d 1475, 1483 (10th Cir. 1996). Religiously motivated actions, such as that asserted by the Defendants herein, can be the kind of faith-based duty that RFRA was designed to protect.

Ministering to the needy as a faith-based practice has a long tradition in virtually every religious tradition. Numerous courts have recognized that providing services, including food and shelter, to the needy constitutes religious exercise protected by federal laws respecting religious liberty.[2] In 1994, a federal district court found a Presbyterian church's feeding program to be protected religious conduct, calling it "a form of worship akin to prayer" and noting that "the concept of acts of charity as an essential part of religious worship is a central tenet of all major religions." *Western Presbyterian Church v. Board of Zoning Adjustment of District of Columbia*, 862 F.Supp. 538, 547, 544 (D.D.C. 1994). The court went on to hold that a zoning board decision that prevented the church from creating a feeding program substantially burdened its right to free exercise of religion in violation of RFRA.

Similarly, an interdenominational parish in Virginia successfully argued that RFRA entitled them to a restraining order from the enforcement of a local ordinance that would have placed strict limitations on their feeding and housing programs for the homeless. The district court found that the parish had "given strong evidence that the Meal Ministry is motivated by their religious belief and that their participation in the Meal Ministry constitutes the free exercise of religion." *Stuart Circle Parish v. Board of Zoning Appeals of the City of Richmond*, 946 F. Supp. 1225, 1237 (E. D. Va. 1996). In addition to RFRA, courts have held charitable activities to be a form of religious exercise under the Free Exercise Clause of the U.S. Constitution, state

---

[2] Kelli Stout, *Tent Cities and RLUIPA: How a New Religious-Land-Use Issue Aggravates RLUIPA*, 41 SETON HALL L. REV. 465 (2011); Marc-Tizoc González, *Criminalizing Charity: Can First Amendment Free Exercise of Religion, RFRA, and RLUIPA Protect People Who Share Food in Public?*, 7 U.C. IRVINE L. REV. 291 (2017); NATIONAL COALITION FOR THE HOMELESS, *A Dream Denied: The Criminalization of Homelessness in U.S. Cities* (2006), https://www.nationalhomeless.org/publications/crimreport/report.pdf.

constitutions, and state laws modeled after RFRA.[3] In one case, the Southern District of New York commented that the fact that a "Church's practice of allowing homeless persons to sleep out-of-doors on its property is an 'exercise of sincerely held religious beliefs'… cannot be seriously disputed." *Fifth Ave. Presbyterian Church v. City of New York*, 2004 WL 2471406 at *2 (S.D.N.Y. 2001), aff'd 177 Fed.Appx. 198 (2nd Cir. 2006) (internal citations omitted).

Since a number of courts have held that feeding the hungry and giving sanctuary to the homeless is a form of religious exercise, this Court would have ample support for the finding that providing space for safe injection of drugs to be a form of religious exercise under RFRA. Defendants aver to a deep personal and spiritual commitment to serving a similarly marginalized and vulnerable population: people who use drugs. This population is often ineligible for other forms of aid, making their work even more necessary. The defendants' harm reduction activities could therefore constitute form of religious exercise entitled to protection under RFRA.

The government argues that the defendants' beliefs are more socio-political or philosophical than religious in nature. (ECF No. 47 at pp. 29-33).  Yet this framing of the kind of beliefs that are protected by RFRA is misplaced.  Nothing in the legislative history of RFRA or in the Supreme Court's interpretation of religious liberty protections either on the statutory or

---

[3] *See, e.g., St. John's Evangelical Lutheran Church v. City of Hoboken*, 195 N.J. Super. 414, 418, 420 (N.J. Super. Ct. Law Div. 1983) ("[i]n view of the centuries old church tradition of sanctuary for those in need of shelter and aid, St. John's and its parishioners in sheltering the homeless are engaging in the free exercise of religion."); *Wilkinson v. Lafranz*, 574 So.2d 403, 404 (La. Ct. App. 1991) (dismissing as untimely an appeal from a trial court ruling which held, among other things, that "the serving of food to the poor is so integrally and intimately related to the operating of a bona fide church as to protect it constitutionally under the Freedom of Religion."); *Abbott v. City of Fort Lauderdale*, 783 So. 2d 1213 (Fla. Dist. Ct. App. 2001) (trial judge held that that the Florida RFRA required the city to provide a Fort Lauderdale homelessness advocate with an alternative site for his feeding program); *City of Woodinville v. Northshore United Church of Christ*, 166 Wash.2d 633, 644-45 (Wash. 2009) (holding that under the state constitution, a City's total moratorium on land use permit applications placed a substantial burden on a Church that had requested to host a tent city, and was not narrow tailored for achieving a compelling goal); *Big Hart Ministries Assoc., Inc. v. City of Dallas*, 2013 WL 12304552 at *12 (N.D. Tex. 2013) ("Rip Parker was founded and continues to operate based on the principle that the Bible and Christianity compel mankind to seek out homeless individuals and provide them with food and prayer wherever they are located at a given time"); *Chosen 300 Ministries, Inc. v. City of Phila.*, 2012 WL 3235317, at *16 (E.D. Penn. Aug. 9, 2012) ("Plaintiffs' practice of sharing food with the homeless and hungry is religious activity as defined by the PRFPA.").

constitutional level requires that the party asserting a religious liberty right prove that their actions were motivated exclusively by their religious beliefs. For instance, in *Wisconsin v. Yoder*, the Supreme Court held that a belief that is based on "purely secular considerations" merits no protection under the free exercise clause. 406 U.S. 205, 215 (1972).   Similarly, in cases addressing the claims of conscientious objectors under the Selective Service Act, the Supreme Court recognized that "their objections cannot be based on a 'merely personal' moral code," *United States v. Seeger*, 308 U.S. 163, 186 (1965), and rejected the government's argument that the objector's motivations had a "substantial political dimension."  *Welsh v. U.S.*, 398 U.S. 333, 342 (1970).  The Ninth Circuit clarified this point in *Callahan v. Woods*, 658 F.2d 672, 684 (9th Cir. 1981), when it observed that "a coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one … The devout Seventh-Day Adventist may enjoy his Saturday leisure; the Orthodox Jew or Mohammedan may dislike the taste of pork. Such personal considerations are irrelevant to an analysis of the claimants' free exercise rights." *Id.*

When addressing the question of whether a belief or ideology is religious in nature, courts have found that an action or position does not lose its religious character merely because it coincides with a particular political belief.  For example, in *Rigdon v. Perry*, 962 F.Supp. 150, 164 (D.D.C. 1997) the court recognized a priest's "desire to urge his Catholic parishioners to contact Congress on legislation that would limit what he and many other Catholics believe to be an immoral practice—partial birth abortion—is no less religious in character than telling parishioners that it is their Catholic duty to protect every potential human life by not having abortions and by encouraging others to follow suit."

In *Burwell v. Hobby Lobby Stores, Inc.*, the Supreme Court essentially applied this

interpretation of the meaning of "religious" as it appears in RFRA by finding that the claimants' opposition to contraceptive coverage was religious in nature even though it also mirrored political beliefs about contraception and the Affordable Care Act.  573 U.S. ___, 134 S.Ct. 2751. At no time did the Court find, or even suggest, that the beliefs of the RFRA claimants lost their religious character because it was possible to hold a similar view on contraception, or on government regulation of health care, for non-religious reasons.  Thus, the question for the Court in determining whether the RFRA claimant's beliefs are religious in nature is not whether one might hold the same value for secular reasons, but whether a value was held or an action was taken by *this* claimant for reasons that are religious *to them* in their own scheme of things. Similarly, the religiosity of the beliefs of the defendants herein should not be questioned merely because they happen to overlap with secular political beliefs about the health needs of people who use injection drugs.  Rather, the Court must determine the question of whether, objectively, the claimant's beliefs are "religious," and whether, subjectively, the claimant himself understood the beliefs to be religious.

What is more, the fact that the defendants may have had more than one motivation for taking the action for which they seek a RFRA-based exemption, does not disqualify the exercise of belief from being religious in nature.  Consider, for instance, a restaurant that at the end of every day donates left-over food to a soup kitchen.  The owners may have both secular and faith based reasons that motivate this practice: a religious commitment to feed the poor and a secular concern about spoilage of food that would otherwise expire and/or go uneaten.

The Court should not embrace the government's position that defendants must show that their actions were motivated by their faith and by nothing else in order to qualify for a faith-based exemption under RFRA.  To impose this new element on the RFRA claimant's case would

significantly narrow the scope of RFRA's protections for religious liberty.

The government supplements their argument regarding the substantial burden prong of the RFRA case by positing: "[i]f supposed 'harm reduction' were enough to trigger RFRA protection, there would be no end to the possible RFRA challenges that well-meaning but ill-advised claimants could conjure based on their moral beliefs." (EFC No. 47 at p. 34).  But of course this is not what they defendants are arguing.  Their position is that their core religious beliefs motivate them to take action to reduce the risks of intravenous drug use.  This action is an expression of the overarching religious principle that "preservation of human life overrides any other considerations."  (EFC No. 31-2 at p. 2).

The government cites no authority for the proposition that there is a requirement that one's motivations must be "purely religious" in order to gain protection under RFRA or the Free Exercise clause of the First Amendment.  The government's position, narrowly reading the scope of RFRA's protections for religious liberty runs contrary to the Attorney General's clear instructions to all U.S. government agencies: "to the greatest extent practicable and permitted by law, religious observance and practice should be reasonably accommodated in all government activity . . . individuals and organizations do not give up their religious-liberty protections by … interacting with federal, state, or local governments."  Attorney General Jeff Sessions, "Federal Law Protections for Religious Liberty," p. 1-2.

There remains a subjective factual component to the question of whether a particular RFRA claimant's belief system should be treated as religious: were they considered by the claimant to be religious in nature?  The central factual question is "whether they are, *in his own scheme of things*, religious."  *United States v. Seeger,* 380 U.S. 163, 185 (1965) (emphasis added), with the aim of "differentiating between those beliefs that are held as a matter of

conscience and those that are animated by motives of deception and fraud." *Isbell v. Ryan*, 2011 WL 6050337 (D. Ariz. December 6, 2011) (citing *Patrick v. LeFevre*, 745 F.2d 153, 157). With respect to this element of the RFRA case (are the defendants acting based on beliefs that are *religious* in nature?), the Court's responsibility at the motion to dismiss stage is to determine whether, based only on the pleadings, the defendants cannot show that their actions were motivated by religious faith, as a matter of law. Given that this question is a matter of both law and fact, the Court cannot grant the government's motion at this stage in the proceedings.

### B.    Are The Defendants' Religious Beliefs Sincerely Held?

Second, the RFRA claimant must show that his or her religious beliefs are *sincerely held*. *Hobby Lobby,* 134 S.Ct. at 2774 n. 28 ("To qualify for RFRA's protection, an asserted belief must be 'sincere'...."). This element is a question of fact, proven by the credibility of the party asserting a religion-based defense. *United States v. Zimmerman*, 514 F.3d 851, 854 (9th Cir. 2007) (stating that sincerity is "a question of fact"); *Patrick v. LeFevre*, 745 F.2d 153, 157 (2nd Cir. 1984) (the sincerity analysis "demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross- examination"); *United States v. Quaintance*, 608 F.3d 717, 721 (10th Cir. 2010) ("[S]incerity of religious beliefs 'is a factual matter.'"); *see generally* Kara Loewentheil and Elizabeth Reiner Platt, *In Defense of the Sincerity Test*, in RELIGIOUS EXEMPTIONS 247 (Kevin Vallier & Michael Weber eds., 2018).

Rather than merely reducing this element to a matter of pleading and accepting the RFRA claimants' assertion of sincerity or the government's concession thereto,[4] the Court should undertake a meaningful assessment of the factual basis for the claim to sincerity, including examination of the claimants' demeanor, thus rendering this question inappropriate for resolution based only on the pleadings.

---

[4] The government has not contested the sincerity of defendants' beliefs. (ECF No. 47 at p. 31).

**C.    Are the Defendants' Sincerely Held Religious Beliefs *Substantially Burdened* by the Instant Prosecution?**

Next, the party seeking a RFRA-based exemption must show that the *exercise* of a sincerely held religious belief was *substantially burdened* by government action.  This element is a question for the Court to decide as a matter of law. "While the Supreme Court reinforced in *Hobby Lobby* that we should defer to the reasonableness of the appellees' religious beliefs, this does not bar our objective evaluation of the nature of the claimed burden and the substantiality of that burden on the appellees' religious exercise." *Geneva Coll. v. Sec'y U.S. Dep't of Health & Human Servs.*, 778 F.3d 422, 436 (3d Cir. 2015). S*ee also Mahoney v. Doe,* 642 F.3d 1112, 1121 (D.C. Cir. 2011) (stating that judicial inquiry into the substantiality of the burden "prevent[s] RFRA claims from being reduced into questions of fact, proven by the credibility of the claimant"); *Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) ("[a]ccepting as true the factual allegations that Kaemmerling's beliefs are sincere and of a religious nature—but not the legal conclusion, cast as a factual allegation, that his religious exercise is substantially burdened"); *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1144–45 (11th Cir. 2016); *Priests For Life v. U.S. Dep't of Health & Human Servs.*, 772 F.3d 229, 247 (D.C. Cir. 2014), *vacated on other grounds and remanded sub nom. Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (noting that eight circuits have held that the question of substantial burden also presents "a question of law for courts to decide.").  As Professor Frederick Mark Gedicks has argued persuasively, "[t]he rule of law demands that the determination whether religious costs are substantial should be made by impartial courts." Frederick Mark Gedicks, *"Substantial" Burdens: How Courts May (and Why They Must) Judge Burdens on Religion Under RFRA*, 85 GEO. WASH. L. REV. 94, 150–51 (2017).

The question of whether, as a matter of law, the RFRA defendants have shown a

substantial burden on their religious beliefs "involves both subjective and objective dimensions. *Hobby Lobby* made clear that there is a subjective aspect to this inquiry: courts must accept a religious adherent's assertion that his religious beliefs require him to take or abstain from taking a specified action … The objective inquiry requires courts to consider whether the government actually 'puts' the religious adherent to the 'choice' of incurring a 'serious' penalty or 'engag[ing] in conduct that seriously violates [his or her] religious beliefs.'" *Eternal Word Television*, 818 F.3d at 1144 (citations omitted).

The Third Circuit has recognized two ways to understand the notion of substantial burden in the RFRA context: "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available . . . versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the Government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 304 (3d Cir. 2016). The second formulation applies most appropriately in this case, where the threat of imprisonment and significant financial penalties will coerce the defendants to act in a way that is contrary to their religious beliefs. This standard has been judicially interpreted as creating "a Catch–22 situation: exercise of their religion under fear of civil or criminal sanction." *See e.g. Snoqualmie Indian Tribe v. F.E.R.C.*, 545 F.3d 1207, 1214 (9th Cir. 2008). In guidance to federal prosecutors such as the government's counsel herein, former Attorney General Sessions instructed that "threats of criminal prosecution" will satisfy the substantial burden test under RFRA. "Federal Law Protections for Religious Liberty" at 5a.

The government takes the position in this case that a RFRA claimant's religious beliefs are not substantially burdened if the government can conjure acceptable religious alternatives to

violating the law: "Safehouse cannot show that application of § 856(a) is a substantial burden upon its religious exercise because its founders and board members have multiple legal alternatives for effectuating their religious beliefs."  (ECF No. 47 at 23).

This reading of the reach of federal statutory protections for religious liberty was presented to the Supreme Court by the government in *Holt v. Hobbs*, and the Supreme Court rejected it: the "'substantial burden' inquiry asks whether the government has substantially burdened religious exercise …, not whether the [religious liberty] claimant is able to engage in other forms of religious exercise."  *Holt v. Hobbs*, 135 S.Ct. at 862.

 Another way to understand this parsimonious reading of RFRA is that it reads into RFRA a requirement that the party seeking an exemption show that their faith-based conduct is narrowly tailored to further their faith-based beliefs, thus minimizing the likelihood that their religious practices will violate the law.  Nothing in the language of RFRA, its legislative history, or the Supreme Court's interpretation thereof supports such a novel approach to proving a substantial burden on religious exercise.  Such a narrow reading of RFRA incorrectly elevates compliance with the law as the baseline against which the RFRA claimant's faith-based exemption is to be assessed.  Yet this has never been the starting point or baseline of the inquiry into whether the RFRA claimant has articulated a substantial burden on their religious liberty. Rather, RFRA requires that the Court consider whether sincerely held religious beliefs have been substantially burdened by the state's action, and if so an exemption from the law is required *unless* the government can show that enforcement of the law in this particular case is justified by a compelling governmental interest that is accomplished through narrowly tailored means.

The government also takes the position that "[i]n enforcing the CSA, the government is not coercing Safehouse, its founders, or board members to act." (ECF No. 47 at 25).  In support

of this proposition, the government relies on cases that offer an interpretation of RFRA that was subsequently rejected by Congress in amendments to RFRA made in 2000. The Religious Land Use and Institutionalized Persons Act ("RLUIPA") explicitly and clearly amended the language of RFRA to reject the interpretation now offered by the government.  RFRA clearly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C.A. § 2000cc-5(7)(A).

## II.     The Government's Burden in Opposing the RFRA Motion

If the Defendants carry their burden of demonstrating that the prosecution herein imposes a substantial burden on their ability to exercise their sincerely held religious beliefs, they are entitled to a RFRA exemption unless the government can show that the burden is the least restrictive means of advancing a compelling government interest.

### A.  Does The Prosecution In The Instant Case *Further A Compelling State Interest*?

A compelling interest must be clearly articulated and specific; "broadly formulated interests justifying the general applicability of government mandates" are not considered compelling.  *O Centro*, 546 U.S. at 430–31.  "RFRA, and the strict scrutiny test it adopted, contemplate an inquiry more focused than the Government's categorical approach." *Id.* at 420. Indeed, the Department of Justice has adopted this reading of the substantial burden test in other cases where it has supported the assertion of a RFRA exemption, "mere generalized concerns . . . are insufficient to prove a compelling governmental interest . . . the government 'must show a compelling interest . . . in the particular case at hand, not a compelling interest in general.'" Jefferson B. Sessions III, "Statement of Interest of the United States of America," *Roman Catholic Archdiocese of Kansas City in Kansas v. City of Mission Woods, Kansas*, Case No. 2:17-cv-02186-DDC (D. Kansas, April 24, 2018), *available at* https://www.justice.gov/crt/case-document/statement-interest-roman-catholic-archdiocese-kansas-city-kansas-v-city-mission

(citing *O Centro*, 546 U.S. at 432); *see also Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766, 788 (D. Md. 2008) ("A 'compelling interest' is not a general interest but must be particular to a specific case."), *aff'd*, 368 F. App'x 370 (4th Cir. 2010) (per curiam).  In order to carry its burden of showing a compelling interest for the purpose of defeating a claim of exemption under RFRA, the government must demonstrate that the asserted interest is furthered through enforcement of the law against the class of persons represented by the defendants herein. That is, the government must show that a compelling interest is furthered by enforcement of the Controlled Substances Act against religiously motivated actors acting on "sincerely held religious beliefs that call it to provide shelter and lifesaving care to individuals suffering from opioid and substance use disorder."  (ECF No. 48 at 6).

In its motion to dismiss the Government offers no argument in support of its burden of showing that a compelling state interest would be furthered by a finding that the defendants' actions violate the Controlled Substances Act.  The mere assertion of the Act as a comprehensive scheme, or the overall goals of federal drug enforcement are insufficient to prove a compelling interest under RFRA.

Every part of the Government's case under RFRA must address the necessity of denying an exemption to the class of Defendants in *this* case, not all imagined parties in the future. It could be said that RFRA protects specific assertions of a right to religious liberty on a retail, not wholesale, basis, and each request for an exemption must be examine on its own terms in light of the compelling interest that is further by enforcement of the law against that class of persons. "Only those interests of the highest order can outweigh legitimate claims to the free exercise of religion, and such interests must be evaluated not in broad generalities but as applied to the particular adherent." *Justice Manual. Respect for Religious Liberty,* 1-15.300.14.  Thus, the

Government's argument that "[i]f supposed "harm reduction" were enough to trigger RFRA protection, there would be no end to the possible RFRA challenges that well-meaning but ill-advised claimants could conjure based on their moral beliefs," is inapposite. (ECF No. 47 at 34). Slippery slope arguments such as this have been consistently rejected by the courts as insufficient to make out a compelling state interest under RFRA. *O Centro*, 546 U.S. at 435-37.

Thus, to prevail in carrying its burden of showing that the substantial burden placed on Defendants' sincerely held religious beliefs is justified by a compelling state interest, the Court must find that the government has proven a compelling interest in prosecuting *the class of* defendants in *this* case.

### B. Is The Burden Imposed On Defendants' Religious Beliefs The Least Restrictive Means Of Advancing A Compelling Government Interest?

To demonstrate that the application of the challenged law or policy is narrowly tailored, the Government must show that it could not achieve its compelling interest to the same degree while exempting the [party asserting the RFRA claim] from complying in full with the [law]." *Christie*, 825 F.3d at 1061. This "focused inquiry" requires the government to justify why providing an exemption would be unworkable. *O Centro*, 546 U.S. at 431.

Like with the compelling state interest element of the government's RFRA case, in its motion to dismiss the government offers no argument that the declaratory relief demanded in this case is the least restrictive means of accomplishing a compelling state interest. The key question to be answered by the Court in this stage of the RFRA analysis is whether robust, if not aggressive, criminal prosecution of the Defendants is necessary to achieving the government's interests in this case? Might some other sanction accomplish those aims just as well, while imposing less of a burden on the defendants' exercise of religion? "The government must show 'that it lacks other means of achieving its desired goal without imposing a substantial burden on

17

the exercise of religion by the [plaintiffs].'" *Eternal Word Television*, 818 F.3d at 1158 (citation omitted).  This is the question the Court must resolve in determining whether the Government has met its burden of showing that its actions are narrowly tailored to accomplishing a compelling state interest in this case.

## III. Conclusion

The Government ends its brief on the motion to dismiss with the admonition "Defendants may not violate this law. Instead, they should seek recourse, if any, through the ordinary political and legislative process – not in the courts." (ECF No. 47 at 35).  This position reflects a fundamental misunderstanding of the protections for religious liberty that are embodied in RFRA and the Free Exercise clause, and amounts to an evisceration of RFRA entirely.  RFRA was passed by Congress in order to allow, *inter alia*, religious exemptions from compliance with a federal law if the government was unable to show that enforcement of the law in a particular case furthered a compelling state interest through narrowly tailored means.  Directing the defendants to purse a change in the law rather than an exemption under RFRA fundamentally misconstrues the plain meaning and purpose of RFRA.

For the above reasons, we urge the Court to dismiss the government's motion to dismiss.

Respectfully submitted,

*/s/ Katherine Franke*

Dated: July 10, 2019

Katherine Franke*
COLUMBIA UNIVERSITY
  SCHOOL OF LAW
435 W. 116th Street
New York, NY 10027
(212) 854-0061

katherine.franke@law.columbia.edu

*Attorney for Amici Professors of Religious Liberty Law*
\* admitted *pro hac vice*

CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of July, 2019, I caused Professors of Religious Liberty as *Amici Curiae*'s brief in support of neither party on Plaintiff/Counterclaim Defendant United States of America and Third-Party Defendants' Motion For Judgment On The Pleadings to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF to all counsel of record registered with the ECF system.

BY: */s/ Katherine Franke*
    COLUMBIA UNIVERSITY
     SCHOOL OF LAW
    435 W. 116th Street
    New York, NY 10027
    (212) 854-0061
    katherine.franke@law.columbia.edu

    *Attorney for Amici Professors of Religious Liberty Law*

* admitted *pro hac vice*