# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Civ. Action No. 19-0519** |

UNITED STATES OF AMERICA,

       Plaintiff,

   v.

SAFEHOUSE, a Pennsylvania nonprofit corporation; JOSE BENITEZ, as President and Treasurer of Safehouse,

       Defendants.

---

SAFEHOUSE, a Pennsylvania nonprofit corporation,

       Counterclaim Plaintiff,

   v.

UNITED STATES OF AMERICA,

       Counterclaim Defendant,

and

U.S. DEPARTMENT OF JUSTICE; WILLIAM P. BARR, in his official capacity as Attorney General of the United States ; and WILLIAM M. McSWAIN, in his official capacity as U.S. Attorney for the Eastern District of Pennsylvania,

       Third-Party Defendants.

**Civ. Action No. 19-0519**

## MOTION OF RELIGIOUS LEADERS IN THE PHILADELPHIA COMMUNITY AND BEYOND FOR LEAVE TO FILE BRIEF AS AMICI CURIAE

1

Amici curiae respectfully move the Court to grant them leave to file the accompanying brief confirming the religious obligations of certain members of the Safehouse Board of Directors. These documents are timely filed pursuant to the Court's May 28, 2019, scheduling order.

Amici, religious leaders of different faiths in the Philadelphia area and beyond, support the position of Safehouse in seeking to provide critical life-saving services to those in need because their religious beliefs—and adherence to them—compel them to do so. For the following reasons, amici respectfully request that the Court grant their motion.

1.      The U.S. Attorney for the Eastern District of Pennsylvania brought this action against Safehouse, an organization dedicated to providing medically-supervised overdose prevention services to those in need. The U.S. Attorney claims that the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, prohibits Safehouse from providing these services to those in need. Safehouse disagrees and argues in part that the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq.* ("RFRA"), bars the U.S. Attorney's claim for relief.

2.      Amici are religious leaders in their respective communities—both in Philadelphia and beyond. *See* Addendum. Amici's participation in this dispute is desirable and relevant because their brief provides unique and important supplemental support for Safehouse's RFRA claim. Amici seek to direct both the parties and the Court to scriptural and other religious mandates that, under statutory and constitutional authority, permit certain Safehouse Board Members to exercise their sincerely held religious belief and ensure that Safehouse provides these overdose prevention services to the community.

3.      No counsel to any party in this litigation authored the brief. No party, person, or counsel thereof contributed money that was intended to fund the preparing or submitting of this brief other than amici curiae.

4.     All other parties have consented to amici's request to file the attached brief in support of Safehouse.

## CONCLUSION

For the following reasons, amici respectfully request that the Court grant this motion and accept the attached brief.

Respectfully Submitted,

/s/ Mira M. Baylson
Dianne B. Elderkin
Mira M. Baylson
Jonathan Aronchick
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street
Suite 4100
Philadelphia, PA 19103-7013
Telephone:  215-965-1200
Facsimile:  215-965-1210
delderkin@akingump.com
mbaylson@akingump.com
jaronchick@akingump.com

Devin S. Sikes
Andrew Schlossberg
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006-1037
Telephone:  202-887-4000
Fax:  202-887-4288
dsikes@akingump.com
aschlossberg@akingump.com

*Attorneys for Amici Curiae Religious Leaders
in the Philadelphia Community and Beyond*

Dated:  July 10, 2019

3

## ADDENDUM – LIST OF AMICI CURIAE

Pastor Adarrel Omar Fisher, M.S.
Making Others Righteous Prison Ministry
8008 Hollis Street
Philadelphia, PA 19150

Reverend Lin Crowe
Philadelphia Area Representative
The Navigators & Kingdom Care
Reentry Network
7844 Gettysburg Road
Philadelphia, PA 19128

Reverend Dr. Calenthia Dowdy
Director of Faith Initiatives
Phila. FIGHT Community Health Centers
1233 Locust Street 3rd floor
Philadelphia, PA 19107

Reverend Dr. Chris Kimmenez, Psy D
Founder and President, Recovery Christian
Center Urban CDC, and Interim Pastor,
Lombard Central Presbyterian Church
4201 Powelton Ave.
Philadelphia, PA 19104

Reverend Kevin W. Jagoe
Minister
BuxMont Unitarian Universalist Fellowship
2040 Street Road
Warrington, PA 18901

Bishop Ernest McNear
True Gospel Tabernacle
1606 Mifflin Street
Philadelphia, PA 19145

Rabbi Eli Freedman
Congregation Rodeph Shalom
615 North Broad Street
Philadelphia, PA 19123

Rabbi Shawn Zevit
Mishkan Shalom
4101 Freeland Ave.
Philadelphia, PA 19128

Reverend Laura Colee
Head Pastor
Broad Street Ministry
315 S. Broad Street
Philadelphia, PA 19107

i

Reverend Winnie Varghese
Senior Clergy for Justice & Reconciliation
Trinity Church Wall Street
120 Broadway
New York, NY 10271

Marvin K. White
Minister of Celebration
Glide Memorial United Methodist Church
330 Ellis St.
San Francisco, CA 94102

Reverend Ana Levy-Lyons
Senior Minister
First Unitarian Congregational Society in
Brooklyn
119 Pierrepont St.
Brooklyn, NY 11201

Reverend Karen Madrone
Unitarian Universalist Interim Minister
Cottonwood Heights, UT 84121

Rabbi John L. Rosove
Senior Rabbi & Immediate Past National
Chair for the Association of Reform Zionists
of America
Temple Israel of Hollywood
7300 Hollywood Blvd.
Los Angeles, CA 90046

Reverend Shari Halliday-Quan
Senior Minister
First Unitarian Church of Rochester
220 S. Winton Road
Rochester, NY 14610

Reverend Alexander E. Sharp
Executive Director
Clergy for a New Drug Policy
5658 S. Blackstone Ave.
Chicago, IL 60637

Reverend Naomi Washington-Leapheart
The Fellowship of Affirming Ministries
8400 Enterprise Way
Oakland, CA 94621

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SAFEHOUSE, a Pennsylvania nonprofit corporation; JOSE BENITEZ, as President and Treasurer of Safehouse,<br><br>　　　　　　Defendants. | **Civ. Action No. 19-0519** |
| SAFEHOUSE, a Pennsylvania nonprofit corporation,<br><br>　　　　　　Counterclaim Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Counterclaim Defendant,<br><br>and<br><br>U.S. DEPARTMENT OF JUSTICE; WILLIAM P. BARR, in his official capacity as Attorney General of the United States ; and WILLIAM M. McSWAIN, in his official capacity as U.S. Attorney for the Eastern District of Pennsylvania,<br><br>　　　　　　Third-Party Defendants. |  |

2019 JUL 10 P 8: 14
USDC-EDPA
REC'D CLERK

## AMICI CURIAE BRIEF OF RELIGIOUS LEADERS IN THE PHILADELPHIA COMMUNITY AND BEYOND IN SUPPORT OF DEFENDANT/COUNTERCLAIM PLAINTIFF SAFEHOUSE

## I.      INTRODUCTION

"We the People of the United States . . . do ordain and establish this Constitution" to "promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity." U.S. CONST. pmbl. These first words to our Constitution form the bedrock of our social contract and instill the sanctity of life and liberty as two pillars necessary to ensure that our democracy functions as intended. The Constitution's Bill of Rights also includes a promise that Congress shall "make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. And in the Religious Freedom Restoration Act of 1993 ("RFRA"), Congress enhanced what the Constitution already guarantees—a right to religious freedom. *See generally* 42 U.S.C. §§ 2000bb *et seq*. This dispute involves the undeniably and constitutionally sacrosanct right to exercise faith freely and fully.

Safehouse, a privately held nonprofit corporation, seeks to provide supervised medical consumption and overdose prevention services to those who have fallen prey to the opioid epidemic that currently ravages Philadelphia. A disproportionate number of the affected are homeless and/or otherwise lack access to health services.

The U.S. Attorney for the Eastern District of Pennsylvania sued to prevent Safehouse from opening facilities that provide these life-saving services because, according to him, the Controlled Substances Act ("CSA") prohibits such harm-prevention mechanisms. *See* Complaint at 2, *United States v. Safehouse et al.,* Civ. No. 2:19-cv-00519-GAM (E.D. Pa. Feb. 5, 2019), ECF No. 1. Yet, members of the Safehouse Board of Directors hold sincere religious beliefs that their faith compels them to protect the lives of individuals who have fallen victim to the opioid crisis, such that RFRA bars the U.S. Attorney's claims for relief. *See* Answer at 3, *United States v. Safehouse et al.*, Civ. No. 19-519-GAM (E.D. Pa. Apr. 3, 2019), ECF No. 3.

Amici curiae are religious leaders in the Philadelphia community and beyond whose sincerely held religious beliefs align with Safehouse's mission to protect the lives of those at risk by offering medically supervised overdose prevention. Similar to Safehouse Board Members, amici have an interest in seeing their congregants and those alike faithfully and fully practicing the religious teachings that they receive. The addendum to this brief includes a complete list of amici that have joined this brief.

The U.S. Attorney's enforcement of the CSA against Safehouse would strip those affected by the opioid crisis of their dignity, ostracize them from their community, and dehumanize them in a way that conflicts with the sincere religious beliefs held by Safehouse Board Members and amici. Those beliefs require adherents to respond to the needs of their community and live the gospel they preach so that they may bear witness to their faith in whatever situation they find themselves. Amici therefore provide this brief in support of Safehouse to confirm that the Safehouse Board Members' sincere religious beliefs form an integral part of the faith that their communities expect them to follow and that the U.S. Attorney's action, if successful, would substantially burden those sincere beliefs.

## II.    LEGAL FRAMEWORK

RFRA establishes that the Government cannot take action that infringes upon the rights of individuals to exercise their "sincerely held religious beliefs." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 723 (2014). "Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015).

RFRA provides that the Government generally "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C.

§ 2000bb-1(a).   However, Congress created an exception to this general rule, stating that the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1(b).

In assessing whether government action meets the exception provided in RFRA, a reviewing court must assess that action against a three-part test. *See Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 355 (3d Cir. 2017).   First, the court must inquire whether the government has imposed a substantial burden on an individual's exercise of religion. *Id.* at 356.   The burden imposed by government action rises to a "substantial" level if that action "coerce[s] the individuals to violate their religious beliefs or den[ies] them the rights, benefits, and privileges enjoyed by other citizens." *Id.* at 357 (quotations omitted); *accord Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).   In assessing whether a substantial burden exists, the court "should defer to the reasonableness of the [claimant's] religious beliefs," though the court may undertake an "objective evaluation of the nature of the claimed burden and the substantiality of that burden on the [claimant's] religious exercise." *Geneva Coll. v. Sec'y U.S. Dep't of Health & Human Servs.*, 778 F.3d 422, 436 (3d Cir. 2015) (quotation omitted), *vacated on other grounds by Zubik v. Burwell*, 136 S. Ct. 1557 (2016).

If the government action substantially burdens the individual's exercise of religion, the court must next determine whether the government has a compelling governmental interest in imposing that burden. *See Real Alternatives*, 867 F.3d at 355.   "[O]nly those [government] interests of the highest order . . . can overbalance legitimate claims to the free exercise of religion." *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972).   Congress's mere placement of a drug under

Schedule I of the CSA "simply does not provide a categorical answer that relieves the Government of the obligation to shoulder its burden under RFRA." *Gonzales v. O Centro v. Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 432 (2006); *see id.* at 432–33 (explaining that the text of the CSA itself "contemplates that exempting certain people from its requirements would be consistent with the public health and safety").

Finally, if the Government overcomes the heavy burden of demonstrating that it has a compelling interest, it must show that it has adopted the least restrictive means to further that interest. *See Real Alternatives*, 867 F.3d at 355. "The least-restrictive means standard is exceptionally demanding." *Hobby Lobby*, 537 U.S. at 728 (citation omitted). Under this standard, the Government must "show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 135 S. Ct. at 864 (citation omitted).

\* \* \* \*

Importantly, in reviewing suspect government action under the framework discussed above, courts must apply strict scrutiny, which "is the most demanding test known to constitutional law," because "[c]laims that a law substantially burdens someone's exercise of religion will often be difficult to contest." *City of Boerne v. Flores*, 521 U.S. 507, 533–34 (1997). The burden to prove that the government has not done so—or even that it is justified in doing so—rests with the government. *Id.*; *see also Holt*, 135 S. Ct. at 863. The strict scrutiny, burden-shifting review under RFRA places a relatively low bar on claimants asserting statutory violations so long as they can allege a substantial burden to the exercise of their sincerely held religious beliefs. *See Hobby Lobby*, 573 U.S. at 724–25.

### III.   SAFEHOUSE BOARD MEMBERS LEGITIMATELY CLAIM A SUBSTANTIAL BURDEN ON THEIR CLOSELY HELD RELIGIOUS BELIEFS

RFRA prohibits the Government from substantially burdening a person's exercise of religion. 42 U.S.C. § 2000bb-1(a).  This protection extends to all sincerely held religious beliefs, regardless of whether those beliefs are central to (or mandated by) a particular religious tradition. *See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly,* 309 F.3d 144, 171 (3d Cir. 2002) (rejecting a contention that courts should determine whether the religious practices at issue are "mandatory" or "optional").  And RFRA prohibits the Government from second-guessing the adherent's assessment that the action in question substantially burdens her sincerely held religious belief.  *See, e.g., Hernandez v. Comm'r,* 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.").

The U.S. Attorney's attempt to apply the CSA against Safehouse would substantially impair the ability of its Christian and Jewish Board Members to practice at least two tenets that they sincerely hold.  We address them in turn.

#### A.   All Humans are Created in God's Image

Foundational to the historic origins of the Judeo-Christian heritage is the conviction that all humans are made in God's image ("*Imago Dei*" or "*B'tzelem Elohim*" in Hebrew).[1]  *See United States v. Colon-de-Jesus,* Civ. No. 10-251, 2012 WL 2710877, at *6 (D.P.R. July 6, 2012) ("It is a

---

[1] Christians and Jews are not alone in this regard.  Some expressions of Islam (Sufism) believe that "man is nothing but an extension of God, in whom divine names and qualities are reflected."  Mehdi Aminrazavi, *God, Creation, and the Image of the Human Person in Islam, in* THE CONCEPT OF GOD, THE ORIGIN OF THE WORLD, AND THE IMAGE OF THE HUMAN IN WORLD RELIGIONS 95, 109 (Peter Koslowski ed., 2001).  Our Hindu brothers and sisters likewise practice this tenet.  *See* Francis X. Clooney, *Imago Dei, Paramam Samyam: Hindu Light on a Traditional Christian Theme,* 12 INT'L J. OF HINDU STUD. 227, 237 (2008) (describing a process of assimilation to God and attaining "the highest sameness").

basic tenet of Judeo-Christian religions that human beings were created by God in its image and likeness."). The book of beginnings ("Genesis" in Greek; "Bereshit" in Hebrew) tells us:

> Then God said, "Let Us make man in Our image, according to Our likeness; let them have dominion over the fish of the sea, over the birds of the air, and over the cattle, over all the earth and over every creeping thing that creeps on the earth." So God created man in His own image; in the image of God He created him; male and female He created them.

*Genesis* 1:26-27. *See also id.* at 5:1-3 and 9:6 (repeating this "image of god" language).

Although there are subtle nuances in the expression of the belief, both Christianity and Judaism affirm that human beings are created in the image of God. This core principle has both theological and practical implications for people of these faiths. It invests human beings with a unique and unrivaled status in creation. If all humans are made in God's image and are being purposed by God, *all* therefore have value and significance and are worthy of others' time, understanding, and advocacy. They are each the neighbor God's law compels us to love as ourselves.[2]

According to Jesus, the greatest commandment is to "'Love the Lord your God with all your heart and with all your soul and with all your mind.' This is the first and greatest commandment. And the second is like it: 'Love your neighbor as yourself.' All the Law and the Prophets hang on these two commandments." *Matthew* 22:37-40. Christianity draws upon Judaism in holding to the essential dignity of every human based on the *Imago Dei.*[3] This insight, according to Rabbi David Wolpe, is "Judaism's greatest gift to the world." David Wolpe, *Strangers*

---

[2] So too with our Muslim brothers and sisters. *Al-Baqarah* 2:136-13 ("Say: We believe in Allah that which is revealed unto us and that which was revealed unto Abraham, and Ishmael, and Isaac, and Jacob, and the tribes and that which Moses and Jesus received, and that which the prophets received from their Lord. We make no distinction from any of them, and unto Him we have surrendered.").

[3] *See, e.g., Franciscan Alliance, Inc. v. Burwell,* 227 F. Supp. 3d 660, 674 (N.D. Tex. 2016) (explaining that a Roman Catholic faith-based hospital system founded by a Roman Catholic order "believes that part of the image of God is an organic part of every man and woman, and that woman and men reflect God's image in unique, and uniquely dignified, ways").

*in the Land of the Free*, THE ATLANTIC (Jan. 31, 2017). The belief that human beings are made in the image of God is therefore the basis for loving your neighbor as yourself.

These two foundational convictions are not merely modern conventions, but have animated Jewish and Christian communities for millennia. In the Greco-Roman world of the first century, it was culturally acceptable to leave infants—particularly females who were culturally devalued—to die of exposure. The same was true for malformed infant males. First century Christians defied cultural norms and rescued the discarded infants because of their convictions that all were made in the image of God and that God created even the discarded child for a purpose, therefore possessing dignity and value. *See* RODNEY STARK, THE RISE OF CHRISTIANITY: HOW THE OBSCURE, MARGINAL JESUS MOVEMENT BECAME THE DOMINANT RELIGIOUS FORCE IN THE WESTERN WORLD IN A FEW CENTURIES 124–25, 161 (San Francisco: Harper, 1997). Thus, the moral logic of the doctrine of *Imago Dei* is that if humans truly love God, then they must love other humans whom God has created. *Cf. John* 13:35.

In attempting to prevent Safehouse from providing care to those in need, the U.S. Attorney would block Christians and Jews engaged with Safehouse from exercising their religious conviction to preserve the integrity of God's image. In attempting to prevent adherents from providing care to those affected by the opioid crisis, the U.S. Attorney has dehumanized those in need and thus tainted God's image. The U.S. Attorney also has put the affected outside of the reach of the community and prevented them from a full opportunity to reconcile with their community, thereby distancing neighbors from each other and God's love. The end result demeans the affected and strips them of their dignity, leaving God's image in tatters.

Speaking as serious theologians, amici are compelled as a matter of conscience and conviction to confirm that Christians and Jews alike must view *all* persons, including those in the

anguish of opioid addiction, not as an inconvenience, but as one made in God's image.  If a safe injection site will keep such an image-bearer alive long enough to receive treatment and fulfill her God-given purpose, then Christians and Jews (including those on the Safehouse Board) are duty-bound to strive to seek their flourishing.  We therefore agree with adherents on the Safehouse Board that their faith calls on them to love God's image-bearers through a culture of care and support that will affirm and pursue what it is to love our neighbors as ourselves—the calling to do justice and love mercy in humility.  *See Micah* 6:8 ("He has shown you, O mortal, what is good. And what does the LORD require of you? To act justly and to love mercy and to walk humbly with your God.").

### B.    Each Human Possesses Inherent Dignity and Immeasurable Worth

Equally fundamental to the Christian and Jewish faiths is the principle that each person possesses inherent dignity and immeasurable worth.[4]  Adherents of the Abrahamic faiths believe that the image of God means that the Creator has bestowed special honor, dignity, and purpose to all human beings.  The Babylonian Talmud, an important source of Jewish law, asserts that "[g]reat is human dignity, since it overrides a negative precept of the Torah."  BABYLONIAN TALMUD, BERACHOT 19b-20a; *see Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758

---

[4] Muslims likewise subscribe to this sincere belief. *Al-Hujurat* 49:13 ("O mankind!  We created you from a male and a female, and made you nations and tribes that you may identify with one another.  Indeed the noblest of you in the sight of Allah is the most God-wary among you.  Indeed Allah is all-knowing, all-aware."); *Al-Isra'* 17:70 ("Certainly We have honoured the Children of Adam, and carried them over land and sea, and provided them with all good things, and given them an advantage over many of those We have created with a complete preference.").  The same is true for Hindus and Buddhists. *See* M.V. Nadkami, *Is Caste System Intrinsic to Hinduism? Demolishing a Myth*, 38 ECONOMIC AND POLITICAL WEEKLY 4783, 4787 (Nov. 2003) (describing the Hindu principle that "No one is superior, none inferior. All are brothers marching forward to prosperity."); Abe Masao, *Dogen on Buddha Nature*, in THE EASTERN BUDDHIST 30 (Eastern Buddhist Society 1971) (quoting the Nirvana Sutra passage stating that "[a]ll sentient beings without exception have the Buddha nature").  So too with Unitarian Universalist congregations, which affirm and promote seven principles, the first two of which are "the inherent worth and dignity of every person" and "justice, equity, and compassion in human relations." *See* UNITARIAN UNIVERSALIST ASSOCIATION, *Bylaws and Rules* (July 1, 2018, as corrected May 8, 2019), *available at* https://www.uua.org/sites/live-new.uua.org/files/uua_bylaws_2018_revised.pdf.

(1985) (discussing "our basic concept of the essential dignity and worth of every human being – a concept at the root of any decent system of ordered liberty" (citations omitted)).

This principle continued as Christianity flourished. Christian adherents are instructed by John the Baptist that "[a]nyone who has two shirts should share with the one who has none, and anyone who has food should do the same," even to those who must seek repentance. *Luke* 3:7–11. All have worth and deserve dignity. In recognizing that dignity and humanity in all, Jesus announced that everyone, including the poor, the sick, and the sinners, are worthy of salvation and protection. *Id.* 4:18. In fact, the Gospels are replete with examples of Jesus healing the sick because of their immeasurable worth; it is a fundamental value shared by adherents of the Christian faith that they are instructed to promulgate and exercise. *See id.* 6:20-22 ("Blessed" are the "poor," the "hung[ry]," and those "when people hate you, when they exclude you and insult you and reject your name as evil.").

Biblical parables of Jesus' healing and teachings do not merely serve as examples to faithful adherents, such as those of the Safehouse Board, but rather serve as principles that believers must follow. For example, Jesus heals a deaf man—"aside in private, away from the crowd"—in order to respect the dignity and privacy of those in need. *Mark* 7:33. The theme of honoring the dignity of those in need through respecting their privacy is well-threaded throughout the Bible. *See, e.g., id.* 5:37 (healing a woman and "allowed no one to follow him" while doing so); *1 Kings* 17:19-24 (seclusion of healing of a child). These Judeo-Christian values—the mandate to heal the sick and to do so while respecting the dignity of them[5]—underlay the foundational religious strictures that the members of the Safehouse Board seek to follow. They further demonstrate the religious

---

[5] The obligation to heal the sick is well-established. *See Matthew* 25:34-40 ("Then the king will say to those on his right, 'Come, you who are blessed by my Father. Inherit the kingdom prepare for you from the foundation of the world. For I was . . . ill and you cared for me . . . . Amen, I say to you, whatever you did for one of the least brothers of mine, you did for me.").

principle that all humans, even opioid addicts, possess an intrinsic, sacred worth that adherents must honor with respect.

These values also stem from the principle of charity, another foundational Judeo-Christian pillar. The Old Testament instructs that "[i]f there is among you anyone in need, a member of your community in any of your towns . . . , do not be hard-hearted or tight-fisted toward your needy neighbor," but rather "[y]ou should open your hand, willingly lending enough to meet the need, whatever it may be." *Deuteronomy* 15:7–8; *see also id.* 15:11 ("I therefore command you, 'Open your hand to the poor and needy neighbor in your land.'"). Christians are likewise instructed "to do good, to be rich in good works, generous, and ready to share, thus storing up for themselves the treasure of a good foundation for the future, so that they may take hold of the life that really is life." *1 Timothy* 6:18-19.

The U.S. Attorney's action conflicts with these principles as embodied in Safehouse's mission—to provide for those in need who cannot provide for themselves. Safehouse aims to accomplish this mission by providing necessary medical supervision through overdose prevention to those in dire need of that medical intervention. The Christian and Jewish Safehouse Board Members wish only to fulfill their sincere religious obligations to protect the sanctity and dignity of life. Yet, the U.S. Attorney's action threatens to prevent Safehouse from fully bestowing this dignity. As a consequence, we agree that Safehouse's ability to provide this religiously-required care to those in need is significantly curtailed.

As with the principle that all people are created in God's image, amici are compelled as a matter of conscience, conviction, and religious teaching to confirm that Christians and Jews alike must view all people, including those in the anguish of opioid addiction, not as an inconvenience, but as imbued with dignity and value. We also confirm that their religious teachings require them

to honor and protect that value and dignity.  Our federal law—both constitutional and statutory—guarantees their rights to practice those sincerely held religious beliefs.  The U.S. Attorney's decision to infringe upon Safehouse Board Members' exercise of their religious convictions is an affront to our federal law and an unacceptable transgression of sincerely held and practiced religious beliefs.

## IV.   CONCLUSION

RFRA protects the right of adherents to follow their sincerely held beliefs.  So does our Constitution.  We provide this brief to the Court to demonstrate, in concrete terms, that the U.S. Attorney's action is incompatible with sincere religious beliefs held by Christians, Jews, Muslims, Hindus, Buddhists, and Unitarian Universalists.  At the very least, the U.S. Attorney's action, if successful, will substantially impair the ability of Christian and Jewish Safehouse Board Members to practice their sincere religious beliefs.

Respectfully Submitted,

/s/ Mira M. Baylson
Dianne B. Elderkin
Mira M. Baylson
Jonathan Aronchick
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street
Suite 4100
Philadelphia, PA 19103-7013
Telephone:  215-965-1200
Facsimile:  215-965-1210
delderkin@akingump.com
mbaylson@akingump.com
jaronchick@akingump.com

Devin S. Sikes
Andrew Schlossberg
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006-1037
Telephone:  202-887-4000
Fax:  202-887-4288
dsikes@akingump.com
aschlossberg@akingump.com

*Attorneys for Amici Curiae Religious Leaders
in the Philadelphia Community and Beyond*

Dated:  July 10, 2019

## ADDENDUM – LIST OF AMICI CURIAE

Pastor Adarrel Omar Fisher, M.S.
Making Others Righteous Prison Ministry
8008 Hollis Street
Philadelphia, PA 19150

Reverend Lin Crowe
Philadelphia Area Representative
The Navigators & Kingdom Care
Reentry Network
7844 Gettysburg Road
Philadelphia, PA 19128

Reverend Dr. Calenthia Dowdy
Director of Faith Initiatives
Phila. FIGHT Community Health Centers
1233 Locust Street 3rd floor
Philadelphia, PA 19107

Reverend Dr. Chris Kimmenez, Psy D
Founder and President, Recovery Christian
Center Urban CDC, and Interim Pastor,
Lombard Central Presbyterian Church
4201 Powelton Ave.
Philadelphia, PA 19104

Reverend Kevin W. Jagoe
Minister
BuxMont Unitarian Universalist Fellowship
2040 Street Road
Warrington, PA 18901

Bishop Ernest McNear
True Gospel Tabernacle
1606 Mifflin Street
Philadelphia, PA 19145

Rabbi Eli Freedman
Congregation Rodeph Shalom
615 North Broad Street
Philadelphia, PA 19123

Rabbi Shawn Zevit
Mishkan Shalom
4101 Freeland Ave.
Philadelphia, PA 19128

Reverend Laura Colee
Head Pastor
Broad Street Ministry
315 S. Broad Street
Philadelphia, PA 19107

Reverend Winnie Varghese
Senior Clergy for Justice & Reconciliation
Trinity Church Wall Street
120 Broadway
New York, NY 10271

Marvin K. White
Minister of Celebration
Glide Memorial United Methodist Church
330 Ellis St.
San Francisco, CA 94102

Reverend Ana Levy-Lyons
Senior Minister
First Unitarian Congregational Society in
Brooklyn
119 Pierrepont St.
Brooklyn, NY 11201

Reverend Karen Madrone
Unitarian Universalist Interim Minister
Cottonwood Heights, UT 84121

Rabbi John L. Rosove
Senior Rabbi & Immediate Past National
Chair for the Association of Reform Zionists
of America
Temple Israel of Hollywood
7300 Hollywood Blvd.
Los Angeles, CA 90046

Reverend Shari Halliday-Quan
Senior Minister
First Unitarian Church of Rochester
220 S. Winton Road
Rochester, NY 14610

Reverend Alexander E. Sharp
Executive Director
Clergy for a New Drug Policy
5658 S. Blackstone Ave.
Chicago, IL 60637

Reverend Naomi Washington-Leapheart
The Fellowship of Affirming Ministries
8400 Enterprise Way
Oakland, CA 94621