IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>SAFEHOUSE, a Pennsylvania nonprofit corporation;<br><br>JOSE BENITEZ, as President and Treasurer of Safehouse,<br><br>    *Defendants*.<br>_____<br>SAFEHOUSE, a Pennsylvania nonprofit corporation,<br><br>    *Counterclaim Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    *Counterclaim Defendant*,<br><br>and<br><br>U.S. DEPARTMENT OF JUSTICE; WILLIAM P. BARR, in his official capacity as Attorney General of the United States; and WILLIAM M. McSWAIN, in his official capacity as U.S. Attorney for the Eastern District of Pennsylvania,<br><br>    *Third-Party Defendants*. | Civil Action No. 19-0519 |

## **ORDER**

AND NOW, this ____ day of _____, 2020, upon consideration of the Motion for Final Declaratory Judgment filed by Safehouse and Jose Benitez (together, "Safehouse")

1

(ECF No. 137), and the Motion for Summary Judgment and the Opposition to Safehouse's Motion for Final Declaratory Judgment filed by the United States of America, U.S. Department of Justice, United States Attorney General William P. Barr, and United States Attorney for the Eastern District of Pennsylvania William M. McSwain (collectively, "the United States"), it is hereby ORDERED that:

1. The United States' motion is GRANTED;

2. Safehouse's motion is DENIED;

3. Declaratory Judgment is ENTERED in favor of the United States and against Safehouse;

4. It is DECLARED that the establishment and operation of a "Consumption Room," in which Safehouse knowingly and intentionally would provide a place for drug users to use illegal controlled substances, including heroin and fentanyl, violates 21 U.S.C. § 856(a)(2);

5. Safehouse's Counterclaims and Third-Party Complaint are DISMISSED with prejudice; and

6. The clerk is directed to CLOSE this case.

IT IS SO ORDERED.

BY THE COURT:

_____
GERALD A. McHUGH
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil Action No. 19-0519 |
| | : | |
| SAFEHOUSE, a Pennsylvania nonprofit corporation; | : | |
| | : | |
| JOSE BENITEZ, as President and Treasurer of Safehouse, | : | |
| | : | |
| *Defendants*. | : | |
| _____ | : | |
| SAFEHOUSE, a Pennsylvania nonprofit corporation, | : | |
| | : | |
| *Counterclaim Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| *Counterclaim Defendant*, | : | |
| | : | |
| and | : | |
| | : | |
| U.S. DEPARTMENT OF JUSTICE; WILLIAM P. BARR, in his official capacity as Attorney General of the United States; and WILLIAM M. McSWAIN, in his official capacity as U.S. Attorney for the Eastern District of Pennsylvania, | : | |
| | : | |
| *Third-Party Defendants*. | : | |

**THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO SAFEHOUSE'S MOTION FOR DECLARATORY JUDGMENT**

The United States of America, U.S. Department of Justice, United States Attorney General William P. Barr, and United States Attorney for the Eastern District of Pennsylvania

1

William M. McSwain (collectively, "the United States"), hereby move the Court to enter a declaratory judgment under Federal Rule of Civil Procedure 56 and to deny Safehouse's Motion for Declaratory Judgment. The basis for this motion is fully set forth in the accompanying memorandum of law, which is incorporated herein.

WHEREFORE, the United States respectfully requests that the Court enter an order in the form attached hereto.

Respectfully submitted,

| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>Civil Division | WILLIAM M. McSWAIN<br>United States Attorney |
| GUSTAV W. EYLER<br>Branch Director<br>Consumer Protection Branch | */s/Gregory B. David*<br>GREGORY B. DAVID<br>JOHN T. CRUTCHLOW<br>BRYAN C. HUGHES |
| ALEXANDER K. HAAS<br>Director<br>Federal Programs Branch | ERIN E. LINDGREN<br>Assistant United States Attorneys<br>Eastern District of Pennsylvania<br>615 Chestnut Street, Suite 1250 |
| ANDREW E. CLARK<br>Assistant Director<br>Consumer Protection Branch | Philadelphia, PA  19106-4476<br><br>*Attorneys for the United States* |
| JACQUELINE COLEMAN SNEAD<br>Assistant Director<br>Federal Programs Branch | |
| DANIEL K. CRANE-HIRSCH<br>Trial Attorney<br>Consumer Protection Branch<br>*Co-Counsel for the United States* | |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil Action No. 19-0519 |
| | : | |
| SAFEHOUSE, a Pennsylvania nonprofit corporation; | : | |
| | : | |
| JOSE BENITEZ, as President and Treasurer of Safehouse, | : | |
| | : | |
| *Defendants*. | : | |
| _____ | : | |
| SAFEHOUSE, a Pennsylvania nonprofit corporation, | : | |
| | : | |
| *Counterclaim Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| *Counterclaim Defendant*, | : | |
| | : | |
| and | : | |
| | : | |
| U.S. DEPARTMENT OF JUSTICE; WILLIAM P. BARR, in his official capacity as Attorney General of the United States; and WILLIAM M. McSWAIN, in his official capacity as U.S. Attorney for the Eastern District of Pennsylvania, | : | |
| | : | |
| *Third-Party Defendants*. | : | |

1

**THE UNITED STATES' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO SAFEHOUSE'S MOTION FOR DECLARATORY JUDGMENT**

Safehouse seeks to open the United States' first "safe" injection site in the City of Philadelphia. This radical public health experiment will invite thousands of people onto its property who indisputably have the purpose of injecting illegal drugs. Furthermore, it violates the plain language of 21 U.S.C. § 856(a)(2), which makes it a crime to manage or control any place and "knowingly and intentionally" make the place available for unlawfully using a controlled substance. Because Safehouse's conduct is barred by statute, the United States moves under Federal Rule of Civil Procedure 56 for a judgment declaring as a matter of law that the establishment and operation of a "Consumption Room," in which Safehouse knowingly and intentionally provides a place to use illegal controlled substances such as heroin and illegally obtained fentanyl, violates 21 U.S.C. § 856(a)(2).

On October 2, 2019, the Court denied the United States' Motion for Judgment on the Pleadings. *See* ECF No. 133 and 134. Even though the Court addressed the core legal issue in the case (*i.e.*, whether § 856 permits the operation of a Consumption Room), the Order was not appealable as of right. *See* Fed. R. App. P. 4. In order to arrive at a final appealable order in an efficient and expeditious manner, the parties cooperated to reach a stipulated set of facts upon which the Court could enter final declaratory judgment. That stipulation is attached as Exhibit A.

The United States has set forth its position regarding the law that governs this case. *See* ECF No. 47 (Motion for Judgment on the Pleadings) and No. 115 (Reply in Support of the Motion). The plain language of the statute and the analyses of five circuit courts support the conclusion that Safehouse's proposed conduct is illegal. *See id.* The United States incorporates those legal memoranda herein and, for the reasons set forth in those memoranda and below, the

Court should grant the United States' Motion and deny Safehouse's Motion for Declaratory Judgment.

I.   PROCEDURAL AND FACTUAL BACKGROUND

The United States commenced this action on February 5, 2019, by filing a Complaint for Declaratory Judgment against Safehouse. ECF No. 1. An Amended Complaint was filed on May 28, 2019, naming Safehouse and its President and Treasurer, Jose Benitez, as defendants. ECF No. 35. According to its website, Safehouse "seeks to open the first" supervised injection site in the country. Ex. A, Stipulation of Facts No. 1. Safehouse will maintain a "Consumption Room," where participants can use illegal drugs including heroin and illegal fentanyl[1] under the supervision of Safehouse's staff. *Id*. Nos. 2-3. Safehouse intends to offer *the same* social services that are already provided by Prevention Point Philadelphia. *Id.* No. 5-6. The only difference between what Prevention Point currently offers and what Safehouse would offer is that Safehouse will allow drug users to use its supervised consumption and observation rooms, in which users may engage in supervised illegal drug consumption. *Id.* No. 6.[2]

The Government's core contention is that Safehouse's Consumption Rooms violate § 856(a)(2). That section, in relevant part, makes it a felony for persons to "manage or control any place" that they "knowingly and intentionally . . . make available for use, with or without compensation . . . for the purpose of unlawfully . . . using a controlled substance." Asserting that

---

[1] Under § 844(a), it is illegal to possess fentanyl without a valid prescription or order issued by a licensed practitioner.

[2] Indeed, the entities are directly connected in that defendant Jose Benitez is Safehouse's president and treasurer and Prevention Point Philadelphia's executive director. Ex. A, Stipulated Facts No. 4. It even appears that the City of Philadelphia has urged Safehouse to open within the walls of Prevention Point Philadelphia. *See* "Supervised injection at Prevention Point?" available at https://whyy.org/articles/supervised-injection-at-prevention-point-ahead-of-major-ruling-safehouse-lacks-location-and-funding/?utm_medium=email &utm_source=engagingnetworks &utm_campaign=newsletter&utm_content=WHYY+News+Daily+01/17/19.

3

Safehouse's "operation of Consumption Rooms would do exactly that," ECF No. 35 ¶ 15, the United States seeks a declaratory judgment that Safehouse's "establishment and operation of any Consumption Room . . . will violate 21 U.S.C. § 856(a)(2)." *Id.* at 8. Safehouse answered and filed counterclaims, seeking a declaration under 28 U.S.C. § 2201 that its proposed model does not violate 21 U.S.C. § 856. ECF No. 3 at 44; ECF No. 45. On June 11, 2019, the government filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 47. After full briefing, the Court heard oral argument on September 5, 2019. ECF No. 129.

On October 2, 2019, the Court issued a memorandum opinion and order denying the United States' Motion for Judgment on the Pleadings. ECF Nos. 133 and 134. The Court's ruling addressed the issue of whether § 856(a)(2) prohibited Safehouse's proposed Consumption Room. The Court did not consider the application of § 856(a)(1) to Safehouse and did not reach the issue of Safehouse's affirmative defenses asserted pursuant to the Commerce Clause and the Religious Freedom Restoration Act.

## II. ARGUMENT

### A. Summary Judgment Standard

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material issue of fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, the parties have stipulated to the facts material to the issue of whether Safehouse's proposed

Consumption Rooms violate § 856 for the purpose of the present cross-motions.³ *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to . . . stipulations (including those made for purposes of the motion only)[.]"). Given the parties' stipulation, there is no genuine issue as to any material fact in this case bearing on the question of statutory interpretation. In the January 6, 2020 Stipulated Scheduling Order, the parties reserved the right to conduct further discovery in this case and to further develop the evidentiary record in the event that the matter is remanded to the Court following any appeal. ECF No. 138. As set forth below, the United States is entitled to judgment as a matter of law.

### B. The Court Should Enter Judgment in Favor of the United States.

The Court should enter a final judgment in favor of the United States for the reasons set forth in this motion and in the government's previous pleadings. ECF No. 47 (Motion for Judgment on the Pleadings) and No. 115 (Reply in Support of the Motion). As the government has explained, Safehouse's plan violates § 856(a)(2) because: (1) Safehouse would manage and control a place as either an owner or lessee, that (2) it would knowingly and intentionally make available, (3) for the purpose of unlawfully using a controlled substance. *See* ECF No. 47 at 5.

---

³ Safehouse's Motion should be construed as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. That is because a motion for declaratory judgment under Federal Rule of Civil Procedure 57 would be procedurally improper. *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) ("Requests for declaratory judgment are not properly before the court if raised . . . by motion."); *I.E.C. ex rel. J.R. v. Minneapolis Pub. Schs., SSD No. 1*, 970 F. Supp. 2d 917, 925 (D. Minn. 2013) ("[A] motion for declaratory judgment . . . is not a proper procedural vehicle. While Federal Rule of Civil Procedure 57 provides for a declaratory judgment action, which is considered a civil suit subject to the Federal Rules of Civil Procedure, Rule 57 does not—nor does any other provision of the Federal Rules of Civil Procedure of which the Court is aware—provide for a motion for declaratory judgment."); *Centrifugal Acquisition Corp., Inc. v. Moon*, 2010 WL 152074, *1 (E.D. Wisc. 2010) ("[T]here is no such thing as a motion for declaratory relief."); *Johnson v. Ryan*, 2018 WL 6573228, at *5 (D. Ariz. Dec. 13. 2018) (same) (quoting *Moon*).

The first two prongs have never been disputed. *See e.g.*, ECF No. 133 (Court's Memorandum Opinion) at 14; Ex. A, Statement of Undisputed Facts Nos. 1, 3, 6, 11, 12-14, 24.

As to the third prong, the Court held that § 856's "purpose" requirement was not satisfied. *See* ECF No. 133 at 56. The Government disagrees. As set forth previously, Safehouse indisputably will maintain its Consumption Rooms "for the purpose of" illegal drug use. *See* ECF No. 47 at 8-13; ECF No. 115 at 3-9. Safehouse will offer – and "participants" can request – access to Safehouse's Consumption Rooms. Those participants will have the purpose of unlawfully using a controlled substance – they would have no other reason to request access to the Consumption Room. *See* Ex. A, Stipulation of Facts Nos. 1, 3, 6, 10-11, 13-14, 16, 23.

In reaching its conclusion to the contrary, the Court first held that Safehouse is the actor that must have the requisite "purpose" to violate the statute. *See* ECF No. 133 at 19. The Court held that the purpose of those who would use illegal drugs in the Consumption Room is irrelevant under § 856(a)(2). ECF No. 133 at 15, 19. In so holding, the Court wrongly departed from all five circuit courts that have examined the question of whose purpose matters under § 856(a)(2). *See* ECF. No. 47 5-13; ECF No.115 at 3-6. The Court disagreed with the reasoning in *United States v. Chen*, 913 F.2d 183 (5th Cir. 1990), and dismissed the weight of the other circuit courts who supposedly "adopt[ed] [*Chen's*] conclusion without critical analysis." ECF No. 133 at 24. The government respectfully contends that this conclusion was erroneous.

Consistent with those five circuit courts' holdings, the purpose of those who would use illegal drugs in the Consumption Room satisfies the "purpose" requirement under § 856(a)(2). *See* ECF. No. 47 5-13; ECF 115 at 3-6. The five circuit courts to have considered this issue correctly interpreted the statute. *See Chen*, 913 F.2d 183; *United States v. Tamez*, 941 F.2d 770 (9th Cir. 1991); *United States v. Wilson*, 503 F.3d 195 (2d Cir. 2007); *United States v. Ramsey*,

6

406 F.3d 426 (7th Cir. 2005); *United States v. Harrison*, 133 F.3d 1084 (8th Cir. 1998); *United States v. Tebeau*, 713 F.3d 955 (8th Cir. 2013). Indeed, contrary to the Court's comment that "the cases before [the circuit courts] did not require rigorous analysis of *Chen*," the validity of a criminal conviction turned on the interpretation of whose "purpose" mattered in each case. *See supra.* Furthermore, if accepted, the Court's interpretation of § 856(a)(2) would render it superfluous. Under the Court's reading of § 856(a), any conduct that subsection (a)(2) would prohibit would also fall under the auspices of subsection (a)(1). While (a)(2) makes reference to "mak[ing] available for use," the language of (a)(1) would equally prohibit any such scenario where a person makes a place available for illegal drug activity. The Court's interpretation functionally collapses the two subsections, a result properly rejected by *Chen* and every other circuit court to have considered the issue.

Next, operating under the assumption that Safehouse's "purpose" is what matters under § 856(a)(2), the Court held that Safehouse does not have a significant purpose to make its place available for "facilitating" drug use. ECF No. 133 at 49. Rather, it held that Safehouse's only significant purposes are "reducing the harm of drug use, administering medical care, encouraging drug treatment, and connecting participants with social services." *Id.*[4] But even if Safehouse's purpose were the relevant "purpose" under § 856(a)(2), Safehouse knows and intends that illegal drug use will occur on its premises. ECF No. 115 at 6-9.

Although Safehouse contends its sole motive in maintaining the Consumption Room is medical treatment, inviting illegal drug use on its premises is a significant purpose of Safehouse.

---

[4] In evaluating Safehouse's purpose, the Court also "construe[d] the pleadings as describing a program that ultimately seeks to reduce unlawful drug use." ECF No. 133 at 49. However, Safehouse itself never said in its pleadings that it would reduce unlawful drug use, nor do the Stipulated Facts so state. *See* Ex. A. In evaluating Safehouse's Motion under the summary judgment standard, the Court cannot make this factual inference in Safehouse's favor.

7

Safehouse has repeatedly told the public that the reason it was created is to provide the first Consumption Room in the country. *Id.*; *see also* Ex. A, Statement of Undisputed Facts No. 1 (holding itself out on its website as seeking to "open the first 'safe injection site'"). The only distinguishing feature between Safehouse and its partner organization, Prevention Point Philadelphia, is Safehouse's Consumption Room, providing for onsite use of illegal drugs and observation. *See id.* No. 6. Additionally, Safehouse's asserted "medical treatment" purpose is undermined by its policies. Safehouse will permit participants to use illegal drugs in its Consumption Rooms indefinitely and as frequently as the participants like, without ever requiring that the participants commit to addiction treatment. *Id.* No. 10, 23 (will permit illegal drug use without limitation or requirement of treatment).[5]

Because Safehouse holds itself out to the world as an organization that will explicitly provide a place for the use of heroin, illegal fentanyl, and other illegal drugs, one of Safehouse's purposes is indisputably to maintain a place for the use of illegal drugs. Even if its ultimate aim is overdose prevention, a necessary precondition to this goal, and therefore a significant purpose of Safehouse, is that individuals use drugs within its facility. *See* ECF No. 115 at 6-9. Additionally, the government respectfully contends that this Court erred by inserting the word "facilitate" into § 856(a)(2) and ruling that "purpose" under the statute must be interpreted as "a purpose to facilitate drug use."

---

[5] Other courts interpreting "purpose" in § 856(a)(1) have not uniformly embraced the "significant purpose" standard that the Court employs. A defendant may have more than one purpose in maintaining the property and illegal drug activity need not be the sole or even significant purpose to violate § 856(a)(1). *United States v. Gibson*, 55 F.3d 173, 181 (5th Cir. 1995) ("Liability under the statute does not require the drug related use to be the sole or even the primary purpose of maintaining the property."); *United States v. Church*, 970 F.2d 401, 406 (7th Cir. 1992) (rejecting the proposition that the government cannot sustain a conviction under § 856 if drug distribution is "but one of several uses of a residence").

Safehouse also contends that illegal drug use in its Consumption Rooms will *aid* potential treatments it would offer inasmuch as participants are more likely to engage in counseling and accept offers of medical care after they have consumed drugs. *See* Ex. A, No. 22. Thus, drug use by Safehouse invitees is a necessary prerequisite to the treatment Safehouse proposes. While Safehouse believes that illegal drug use on its premises "aids potential treatment," *id*. at No. 22, the use of heroin in a medical setting is illegal. Congress has determined that heroin has "no currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b)(1)(B); *see* ECF No. 47 at 6. Accordingly, Congress prohibits Safehouse's purported benign motive of using consumption to serve an addiction treatment model, *id.*, and Safehouse indisputably has the significant purpose that drug use will occur within the Consumption Rooms it maintains. *See* ECF No. 47 at 6 (stating that section 856's prohibition of Consumption Rooms aligns with the CSA's overall structure, including making possession illegal and determining that heroin has no accepted medical use in treatment). Simply put, if heroin use is illegal, it cannot be permissible to make a place available for heroin use.[6]

In making these holdings, the Court determined that § 856(a) is ambiguous at least as to the meaning of the phrase "for the purpose," and accordingly considered the statute's legislative history. But this phrase is not ambiguous. The plain language of the statute is clear. And, as the government previously explained, the five circuit courts to have examined this statute have also

---

[6] More broadly, the Government's view that Section 856 prohibits Consumption Rooms aligns with the CSA's overall structure. *See* ECF No. 47 at 6. Section 856's prohibition of Consumption Rooms is consistent with the CSA's prohibition of illegal possession of heroin and illegal fentanyl in the first place. *See* 21 U.S.C. § 844. Also, Congress placed heroin on Schedule I of the CSA after determining that heroin has "no currently accepted medical use in treatment in the United States," 21 U.S.C. § 812(b)(1)(B), and that "[t]here is a lack of accepted safety for use of the drug . . . under medical supervision," *id*. § 812(b)(1)(C). Accordingly, physicians cannot prescribe Schedule I drugs (with exceptions that do not apply here). *Id*. § 829 (allowing prescriptions for only Schedule II-V drugs).

9

found it is unambiguous. *See* ECF. No. 47 5-13; ECF No. 115 at 3-6. Accordingly, the Court's consideration of legislative history is inappropriate because only "[w]hen the language of a statute is ambiguous, [should courts] look to its legislative history to deduce its purpose." *United States v. Hodge*, 321 F.3d 429, 437 (3d Cir. 2003).

Even if it were appropriate to consider the legislative history of § 856 here, which it is not, the Court's ruling runs contrary to legislative history demonstrating that Congress made an intentional determination to make illegal "places where users congregate to purchase and use" illegal drugs. ECF No. 115 at 15 (citing 132 Cong. Rec. 26447 (1986) (statement of Sen. Chiles)). The statute is intended to prohibit places where drug users congregate to use drugs because, among other reasons, these places negatively affect neighborhoods where drug activity takes place. *Id*. As Congress found in related legislation, "90 percent of heroin users rely upon criminal activity as a means of income" and "[m]uch of the drug trafficking . . . results in increased violence and criminal activity because of the competitive struggle for control of the domestic drug market." National Narcotics Act of 1984, Pub. L. No. 98-473, 98 Stat. 2168.[7] Additionally, the government's interpretation of the statute is consistent with Congress' legislative intent to closely regulate controlled substances and with its determination that heroin use (and use of fentanyl procured without a prescription) is illegal and is not safe under any circumstances. 21 U.S.C. §§ 812(b)(1)(B), (C) and 844.

---

[7] Additionally, Congress was concerned that permitting illegal drug use in public would give the veneer of public acceptance for such acts. *See* 132 Cong. Rec. S13741-01, 1986 WL 793417 (statement of Sen. Moynihan) ("The fact that drug sales and use are taking place more frequently in public, and on our streets, is the most appalling single thing of the present crisis. A public act of an illegal nature is in effect a condoned act. And the children, and most early users of drugs are no more than children, see this going on in public and assume there is public approbation for these illegal acts. And, indeed, toleration is a form or approbation.").

When the statute was amended in 2003, then-Senator Biden provided an explanation of his proposal, the Reducing America's Vulnerability to Ecstasy ("RAVE") Act, that illuminates the reach of § 856(a)(2). Biden explained that the statute does not apply to places, like stadiums, arenas, and other venues, where people brought drugs and used them "without the knowledge or permission of" the owner or event promoter. 148 Cong. Rec. S10218-02, 2002 WL 31259565. Biden explained that "incidental" drug use at a location did not fall within § 856's prohibition, which targets those who *know* that drug use is occurring and also maintain a place *for the purpose of illegal drug use*. *Id.* This legislative evidence is instructive, inasmuch as Safehouse clearly does not fall within the safe harbor Biden described. Rather than hosting a place where "incidental" drug use *may* occur without Safehouse's knowledge or permission, Safehouse will intentionally provide a place where users will be invited and permitted to use drugs.

In addition, Congress debated for years whether to authorize funding for organizations that also provided sterile syringe services, 155 Cong. Rec. H8727-01 (2009) (noting that, as of that time, Congress had "repeatedly, over and over, banned needle exchange programs, when given the opportunity"), and has recently enacted various measures to combat the opioid crisis, *see* Comprehensive Addiction and Recovery Act, Pub. L. No. 114-198, 130 Stat. 695 (2016); SUPPORT for Patients and Communities Act, Pub. L. No. 115-271, 132 Stat. 3894 (2018). Despite all of this careful attention to problems of opioid drug abuse, Congress has not enacted legislation authorizing facilities like Safehouse.

Safehouse's Motion for Declaratory Judgment abandons its claim under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*, asking the Court to dismiss it without prejudice as moot. *See* ECF. No. 137, Proposed Order. The United States does not

11

oppose this dismissal.[8] Likewise, Safehouse appears to have abandoned the request in its Counterclaims and Third-Party Complaint for a permanent injunction set forth in paragraph 140 of its Third Party Complaint. Neither its motion, supporting memorandum, nor proposed order seeks this relief. Safehouse likely does not seek the relief because such a request would fail as a matter of law. *Stolt-Nielsen v. United States*, 442 F. 3d 177 (3d Cir. 2006) (holding that a court cannot enjoin a criminal prosecution unless the prosecution will chill a constitutional right and the litigation and defense of the criminal prosecution will not "assure ample vindication of constitutional rights").

---

[8] Safehouse's RFRA affirmative defense asserted in its Answer presumably remains. *See* ECF No. 45, Answer to Amended Complaint, Affirmative Defense No. 3 at p. 12. To grant the Government's Motion, the Court should reject Safehouse's affirmative defenses including RFRA and its argument under the Commerce Clause as a matter of law for the reasons set forth in the Government's prior briefing. *See* ECF No. 47 at 18-35; ECF No. 115 at 16-25.

### III. CONCLUSION

For these reasons and the reasons set forth in the United States' Motion for Judgment on the Pleadings and Reply in support thereof, ECF Nos. 47 and 115, the United States respectfully requests that the Court enter judgment in favor of the United States.

|  |  |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>Civil Division | Respectfully submitted,<br><br>WILLIAM M. McSWAIN<br>United States Attorney |
| GUSTAV W. EYLER<br>Branch Director<br>Consumer Protection Branch | */s/Gregory B. David*<br>GREGORY B. DAVID<br>JOHN T. CRUTCHLOW |
| ALEXANDER K. HAAS<br>Director<br>Federal Programs Branch | BRYAN C. HUGHES<br>ERIN E. LINDGREN<br>Assistant United States Attorneys<br>Eastern District of Pennsylvania |
| ANDREW E. CLARK<br>Assistant Director<br>Consumer Protection Branch | 615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106-4476<br><br>*Attorneys for the United States* |
| JACQUELINE COLEMAN SNEAD<br>Assistant Director<br>Federal Programs Branch |  |
| DANIEL K. CRANE-HIRSCH<br>Trial Attorney<br>Consumer Protection Branch |  |
| *Co-Counsel for the United States* |  |

13

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I caused a true and correct copy of The United States' Motion for Summary Judgment and Opposition to Safehouse's Motion for Declaratory Judgment, which was filed electronically and is available for viewing and download from the court's CM/ECF system, to be served upon all counsel of record.

>  */s/Gregory B. David*
>  GREGORY B. DAVID
>  Assistant United States Attorney
>  Chief, Civil Division

Dated: January 17, 2020