IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|           Plaintiff, | : | CIVIL ACTION |
| | : | No. 19-0519 |
| v. | : | |
| | : | |
| SAFEHOUSE, a Pennsylvania nonprofit Corporation; JOSE BENITEZ, as President and Treasurer of Safehouse, | : | |
|           Defendants. | : | |
| | | |
| SAFEHOUSE, a Pennsylvania nonprofit Corporation, | : | |
|           Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|           Counterclaim Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| U.S. DEPARTMENT OF JUSTICE; WILLIAM P. BARR, in his official capacity as Attorney General of the United States; and WILLIAM M. McSWAIN, in his official capacity as U.S. Attorney for the Eastern District of Pennsylvania, | : | |
|           Third-Party Defendants. | : | |

McHUGH, J.                                                                                                       FEBRUARY 25, 2020

**MEMORANDUM**

      This case arises out of Defendant Safehouse's proposal to open a safe injection site in Philadelphia to mitigate the harms resulting from unlawful opioid abuse, and the Government's determination that opening such a site would be unlawful. Previously, I denied a motion for judgement on the pleadings filed by the United States. ECF 134. In doing so, I concluded that,

"[a]ccepting the facts in the pleadings as true, as required under Rule 12 of the Federal Rules of Civil Procedure, 21 U.S.C. § 856(a)(2) would not prohibit Safehouse from establishing and operating an overdose prevention facility that provides medically supervised consumption services." ECF 134, at 1-2.

That ruling was a nonfinal interlocutory order because it represented nothing more than denial of a motion. Safehouse did not cross-move for relief, and thus the prior order did not "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Following consultation with the Court, the parties agreed to a stipulated set of facts, *see* ECF 137, Ex. A, and filed cross-motions intended to produce a final, appealable order. To that end, Safehouse moves for final declaratory judgment under Federal Rules of Civil Procedure 56 and 57, ECF 137, and the Government opposes and cross-moves for summary judgment, ECF 139.

The recent filings recapitulate the arguments previously advanced by the parties. Safehouse argues that the establishment and operation of its overdose prevention services model, which would include supervised consumption rooms, does not violate Section 856(a)(2), which makes it unlawful for any person to "manage or control any place . . . and knowingly and intentionally . . . make available for use, with or without compensation, the place for the purpose of unlawfully . . . using a controlled substance." *See* ECF 137-3. Because Safehouse relies on a statutory argument, it suggests that the Court "need not reach Safehouse's remaining claims under the Religious Freedom Restoration Act . . . and the Commerce Clause of the U.S. Constitution." ECF 137, at 7 n.5. I agree that the Court can render a final judgment on the application of Section 856(a)(2) alone.[1]

---

[1] Safehouse requests the Court dismiss without prejudice its counterclaim under the Religious Freedom Restoration Act as moot, *see* ECF 3, at 42-43 (pleading counterclaim); ECF 137-3, ¶ 3 (proposing dismissal without prejudice),

In response, the Government principally restates its "core contention" that Safehouse's overdose prevention model "violate[s] § 856(a)(2)." ECF 139, at 3.  To the Government, the plain text of Section 856(a)(2) demands this result—"(1) Safehouse would manage and control a place as either an owner or lessee, that (2) it would knowingly and intentionally make available, (3) for the purpose of unlawfully using a controlled substance." ECF 139, at 5.  I addressed those arguments in my prior opinion and, even accepting an evolved standard of review, nothing warrants revisiting them now.  ECF 133, at 49-55.

The Government also seeks to inject some procedural uncertainty into the dispute.  First, the Government argues that Safehouse's motion for declaratory relief should be resolved pursuant to Rule 56 and not Rule 57 because "a motion for declaratory judgment under [Rule] 57 would be procedurally improper." ECF 139, at 5 n.3.  To support its contention that declaratory relief is improper, the Government cites to *Arizona v. City of Tucson*, 761 F.3d 1005 (9th Cir. 2014), for the proposition that "[r]equests for declaratory judgment are not properly before the court if raised . . . by motion." ECF 139, at 5 n.3 (quoting *City of Tucson*, 761 F.3d at 1010).  That misreads *City of Tucson*.  In that case and the other cases relied upon by the Government for support, the movants sought declaratory relief by filing a Rule 57 motion without first seeking declaratory relief in their initial pleadings.  Indeed, in *City of Tucson*, in the very sentence before the sentence quoted by the Government, the Court held that a "request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment." *Id.*  Here, Safehouse sought a declaration pursuant to the Declaratory Judgment Act in its counterclaims and third-party

---

and, in doing so, seeks to "reserve[] the right to press those claims if this Court's declaratory judgment on the underlying statutory question were vacated, reversed, or remanded by an appellate court or if changed circumstances otherwise established a ripe controversy as to those claims." *Id.*  The Government contends that by making this request Safehouse has "abandon[ed] its claim[s]" under RFRA and a related claim under the Commerce Clause. ECF 139, at 11-12, 12 n.8.  I disagree.  Given that Safehouse has won the declaratory judgment it seeks, there is no need to reach its additional claims, and its request that this Court dismiss the RFRA and Commerce Clause claims without prejudice is sensible.  The claims are therefore deemed to be preserved.

complaint.  *See* ECF 3, at 41; ECF 45, at 5.  A final declaratory judgment under Rule 57 is the appropriate vehicle to conclusively resolve the immediate and actual legal controversy on the statutory question.  *See* Fed. R. Civ. P. 57, Notes on Advisory Committee on Rules (1937).  The parties maintain a live and actual legal controversy, have stipulated to all material facts, and have moved for declaratory relief as to the reach of Section 856(a)(2).

Such maneuvering by the Government at this late stage is not constructive.  At no point until its latest filing did the Government suggest that consideration of a motion for declaratory judgment would be procedurally improper.  From the inception of this case Safehouse requested a full trial on the merits to resolve whether its proposed operation comports with federal law, and with it the opportunity to develop a detailed factual record.  And for just as long the Government has strenuously resisted such an approach.  The Government has never argued there was a need for additional evidence, a fact of which they were reminded at oral argument.  *See* ECF 133, at 6 n.4.  The present motions were filed in consultation with the Court for the express purpose of creating a final appealable order, something sought by both sides.  *See* ECF 137, at 3.  And the parties' stipulation to specific facts—an approach first suggested by the Court to the parties in late August—was intended to complete the record to finally adjudicate a difficult and complex matter of first impression.

The Government further contends that inferences drawn in resolving a motion to dismiss under Rule 12 are not properly drawn in resolving the pending motions.  Specifically, the Government protests that Safehouse "never said in its pleadings that it would reduce unlawful drug use, nor do the Stipulated Facts so state," and that, because Safehouse has moved affirmatively for final relief, "the Court cannot make this factual inference in Safehouse's favor."  ECF 139, at 11 n.4.  In advancing this argument, the Government continues to confuse purpose

4

with outcome.  The reach of Section 856(a)(2) did not then and does not now depend to any degree on whether Safehouse's model actually "would reduce unlawful drug use."  Section 856(a)(2)'s applicability turns on the *objective* of the relevant actor, not on the *effectiveness* of a proposed intervention model.  In fact, my opinion of October 2, 2019, explicitly declined to address "whether safe injection sites are an appropriate means of dealing with the opioid crisis."  ECF 133, at 2.

In any case, no inference is necessary at this stage because the parties have stipulated to various facts as recommended by the Court.  These include that "Safehouse seeks to open the first safe injection site in the U.S. in the City of Philadelphia and is . . . [a] nonprofit corporation whose mission is to save lives by providing a range of overdose prevention services," and that "the overdose prevention services it intends to offer are aimed at preventing the spread of disease, administering medical care, and encouraging drug users to enter treatment."  ECF 137, Ex. A, ¶ 1.  Admittedly, that stipulation is prefaced by "according to Safehouse" or "according to [Safehouse's] website," but later stipulations remove any ambiguity.  The parties agree that "Safehouse intends to offer each participant its services, which include use of supervised drug consumption and observation rooms, medical services, including wound care, onsite initiation of Medication-Assisted Treatment, recovery counseling, HIV and HCV counseling, testing and treatment, referral to primary care, and referrals to social services, legal services and housing opportunities."  *Id.* ¶ 9.  The parties also agree that Safehouse "intends to encourage every participant to enter drug treatment, which will include an offer to commence treatment immediately."  *Id.*  Given those stipulations, the analysis in my memorandum opinion of October 2, 2019, applies with equal validity to the record before me, and there is nothing procedurally improper in granting the declaratory relief sought by Safehouse.

The Government's sudden focus on factual nuances overlooks the complexity of determining the proper application of the law.  Safehouse does not hide that illegal substances will be used on its premises.  To the Government, that alone is enough to resolve the statutory question.  But that position depends upon an overly simplistic formulation of "purpose," one that it struggled to defend at oral argument.  For instance, the Government acknowledged that Safehouse could skirt the proscriptions of Section 856(a)(2) if it operated essentially the same overdose prevention model out of a mobile van instead of a fixed piece of real property so long as no user "c[a]me into the mobile unit." ECF 131, at 42:4-43:5.  And when confronted with a hypothetical about parents who instructed their child to use unlawful drugs in their home so that they could resuscitate the child if necessary, the Government—contrary to its previously avowed core reading of the statute—responded that Section 856(a)(2) would *not* apply to that conduct.  It conceded the parents would not have an unlawful "purpose" in participating in such life-saving activity.  ECF 133, at 41; *see also* ECF 131, at 38:17-42:3.

The Court's objective in encouraging the parties to supplement the record by stipulation and agree upon a mechanism for entering final judgment was to eliminate any factual ambiguity and thereby facilitate appellate review of difficult and subtle issues, including the meaning of "purpose."  Such clarity and precision have particular importance here, where it is a criminal statute that the Government seeks to invoke in exercising its authority.

\* \* \* \* \*

Given the history of this case, and the parties' supplementation of the record, there is nothing procedurally improper in granting the declaratory relief sought by Safehouse.  The analysis in my memorandum opinion of October 2, 2019, applies with equal validity to the expanded record.  I will therefore grant Safehouse's Motion for Final Declaratory Judgment and

6

deny the Government's Motion for Summary Judgment. An appropriate Order follows.

      /s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge