**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) Civil Action No.:  19-0519 |
| SAFEHOUSE, a Pennsylvania nonprofit corporation; | ) |
| | ) |
| JOSE BENITEZ, as Executive Director of Safehouse, | ) |
| | ) |
| *Defendants.* | ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**EXPEDITED MOTION TO INTERVENE AS PARTY-PLAINTIFFS**

A group of twenty organizations (the "Community Groups" or the "Groups")[1] respectfully submits this memorandum of law in support of its expedited motion to intervene as party-plaintiffs.

The United States brought this lawsuit to stop Defendants from committing a federal crime, *see* 21 U.S.C. § 856(a), and exacerbating drug-related damage in Philadelphia.  The Government aggressively pursued this case for over two years, winning relief from the Third Circuit.  *See United States v. Safehouse*, 985 F.3d 225 (3d Cir. 2021).

The Community Groups seek immediate intervention to protect the interests the Government may imminently abandon.  For decades, the Community Groups' members have

---

[1] The Community Groups are the Delancey Square Town Watch, East Passyunk Avenue Business Improvement District, Fraternal Order of Police, Lodge #5, Friends of Harrowgate Park, Friends of Penrose, Girard Estate Area Residents, Harrowgate Civic Association, Holme Circle Civic Association, Juniata Park Civic Association, Kensington Independent Civic Association, North of Washington Avenue Coalition, Packer Park Civic Association, Point Breeze Community Development Coalition, Port Richmond On Patrol And Civic, Queen Village Neighbors Association, Somerton Civic Association, South Broad Street Neighborhood Association, South Philadelphia Business Association, South Port Richmond Civic Association, and the Whitman Council.

suffered the consequences of their neighborhoods' infestation with crime and drugs.  Federal Rule of Civil Procedure 24 allows for intervention as of right when a party timely claims an interest threatened by the action and the interest is unprotected by existing parties.  Here, after years of litigation, the Government has signaled an abrupt reversal of its position, threatening the health, safety, and property rights of the Community Groups' members.  Even if intervention as of right were unavailable, permissive joinder is appropriate because the Groups' potential claims share common questions of law and fact with this action.  In either event, the prospect of a settlement between Safehouse and the Government necessitates this motion.  Without intervention, the law and Philadelphia's neighborhoods may be left with no defense.

Expedited consideration is necessary to ensure that the Community Groups can participate in further settlement discussions between Safehouse and the Government.  Without the Groups' intervention, the Government's position flip could compromise the Groups' rights and necessitate further litigation.  Moreover, a settlement could clear the path for Safehouse to construct injection sites immediately, violating the Community Groups' rights, not to mention federal criminal law.

## BACKGROUND

The United States brought this action in 2019, alleging that Safehouse intended to open and operate so-called "consumption rooms" whose purpose is to allow drugs addicts a "safe" place to use drugs.  *See* Am. Cmplt., Doc. 35.  The Government correctly argued that operating such a facility would violate a federal criminal law, which prohibits the intentional management or control of a facility "for the purpose of . . . using a controlling substance."  21 U.S.C. § 856(a)(2).  Safehouse counterclaimed for a contrary declaratory judgment and for a declaration that application of Section 856 to its drug-injection sites would violate the Commerce Clause or the Religious Freedom Restoration Act.  *See* Answer & Counterclaim, Doc. 45.  After this Court

2

denied the Government's motion for judgment on the pleadings, *United States v. Safehouse*, 408 F. Supp. 3d 583 (E.D. Pa. 2019), the Third Circuit reversed, holding that Section 856 applies even when the operator of a drug house does not have a primary purpose of using a controlled substance, 985 F.3d at 232–39, and that Congress's interstate-commerce power extended to Safehouse's illegal activity, *id.* at 239–43.

Because Safehouse reserved its RFRA counterclaim on appeal, the case was remanded. *See* Doc. 158. Safehouse amended its counterclaim, *see* Doc. 160, and, after a series of delays, the parties entered into mediation, *see* Doc. 177. A settlement conference was held on January 30, 2023, *see* Doc. 183, and a second conference is scheduled for April 13, 2023, *see* Doc. 188.

On March 21, 2023, counsel for the Groups met with the U.S. Attorney and her senior staff, at her request. Jessica Griffin, *Philly Neighborhood Activists Met with Justice Dept. over Supervised Drug Sites*, The Philadelphia Inquirer (Mar. 21, 2023), bit.ly/3nRrcFH. The Community Groups are now concerned that the Government will imminently abandon the ruling it obtained from the Third Circuit and will permit Safehouse to operate in violation of federal law.

The Community Groups, who have appeared as *amici* in this Court and the Third Circuit, were happy to support the Government's position when it was enforcing the law and protecting Philadelphia's most vulnerable neighborhoods. But now that the Government appears poised to switch sides in this case, the Groups must intervene to ensure their health, safety, and property interests remain protected. The Community Groups therefore bring this expedited motion to defend their members' interests and to ensure that this Nation's criminal laws do not go undefended.

**ARGUMENT**

**I.    The Community Groups Timely Assert Substantial Interests Implicated In This Case.**

Federal Rule of Civil Procedure 24(a)(2) "provides that a 'court must permit anyone to intervene' who, (1) '[o]n timely motion,' (2) 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,' (3) 'unless existing parties adequately represent that interest.'" *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2200–01 (2022) (quoting Fed. R. Civ. P. 24(a)(2)).  "[A]s a matter of judicial economy," the Third Circuit "favors intervention over subsequent collateral attacks." *Kleissler v. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998) (citation omitted).  Here, the Community Groups meet each element of Rule 24(a)(2).

**A.    *The Community Groups' Motion Is Timely.***

Courts look to the totality of the circumstances surrounding a Rule 24 motion to decide whether it is timely.  *See NAACP v. New York*, 413 U.S. 345, 365–66 (1973); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994).  Relevant here, when third parties seek intervention because the litigating party may capitulate to its opponent, the "most important circumstance" is whether the third parties "sought to intervene 'as soon as it became clear' that [their interests] 'would no longer be protected.'" *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022) (citation omitted).

Here, the Community Groups moved to intervene at the earliest possible moment.  For years, the federal government adequately represented their interests.  It protected the Community Groups and their members from the dangers of injection sites by bringing—and winning—a declaratory-judgment action.  *See generally Safehouse*, 985 F.3d 225.  And, until a few days ago,

4

the Community Groups reasonably expected that the federal government would keep litigating to ensure that Section 856 was enforced against the parties to whom the Third Circuit specifically held that the federal criminal law applied.  But the Government now imminently plans to abandon the Philadelphians it once pledged to protect.  Instead it has engaged in extensive settlement discussions, even though the United States has already won a resounding, categorical victory in the Third Circuit.  The Government now appears poised to allow Safehouse to violate federal law. *See* Griffin, *supra.*  It has not yet consummated its abandonment, but the Community Groups seek intervention before it is too late.

### B.    *The Community Groups' Interests Are Sufficient and Threatened.*

Rule 24(a)(2) provides for intervention as of right to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."  Here, the Community Groups have interests in their communities' health and safety, interests that are protected directly by Section 856.  Moreover, Pennsylvania law provides the Groups a specific statutory right against the nuisances that will inevitably follow Safehouse's drug-injection sites.  These interests are particularly pressing because the existing parties are involved in settlement discussions that may result in an effective victory for Safehouse.

### 1.    The Community Groups have cognizable interests in this matter.

"[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote."  *Kleissler*, 157 F.3d at 972.   To satisfy this test, the Community Groups need only a "specific" and "legal" interest, as opposed to a "general and indefinite" one.  *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1116 (3d Cir. 1992) (quotation marks omitted).  The interest must be "specific to [the intervenor]," "capable of definition," and

of a sort that would "be directly affected in a substantially concrete fashion by the relief sought." *Pennsylvania. v. United States*, 888 F.3d 52, 57–58 (3d Cir. 2018) (quoting *Kleissler*, 157 F.3d at 972). The inquiry is "highly fact-bound," *id.* at 62, and must be approached with the "flexibility" that "Rule 24 demands," *Kleissler*, 157 F.3d at 972.[2]

Here, the consumption sites imperil public health and property rights. As discussed at length in the Community Groups' amicus briefs before this Court and the Third Circuit, Safehouse's consumption sites will directly threaten "the safety of [residents'] children," Amicus Br. (hereinafter "D. Ct. Amicus Br."), Doc. 78-1, at 7, and will further devastate communities already ravaged by drug activity that has burgeoned thanks to lax policing policies, *id.* at 8–11; *see also* Amicus Br. (hereinafter "Third Cir. Amicus Br."), *United States v. Safehouse*, No. 20-1422, Doc. 38. Experience in other cities proves the point. Consumption sites have blighted whole neighborhoods, driving up crime, cratering property values, and interrupting residents' quiet enjoyment. *See* D. Ct. Amicus Br. at 11–17. Courts have long recognized that such public-health concerns form an adequate basis for intervention. *See, e.g.*, *City of Newark v. City of New York*, 2020 WL 10505722, at *2 (D.N.J. May 1, 2020) (recognizing an intervenor's "direct, public health and safety interest in ensuring that" a challenged program provides "legal and habitable housing" (citing *Kleissler*, 157 F.3d at 972)); *Land v. Del. River Basin Comm'n*, 2017 WL 63948, at *3 (M.D. Pa. Jan. 5, 2017) (holding that Community Groups' interest in "various health and environmental interests" justified intervention); *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303 (E.D. Cal. 2011) (allowing intervention by organization to protect members' health).

---

[2] Because the Community Groups seek no further relief than the Government does, they need not establish independent Article III standing. *Pennsylvania*, 888 F.3d at 57 n.2; *accord Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020).

Section 856 was enacted specifically to protect communities like the Groups' against these afflictions. The statute's text, context, and legislative history make clear that Congress passed and amended the law to combat threats to neighborhoods and families plagued by drug houses. *See* D. Ct. Amicus Br. at 18–20. Congress recognized that drug houses of any kind breed crime and ruin communities, which is why the law broadly applies to facilities that provide a forum for drug use "with or without compensation." 21 U.S.C. § 856(a)(2); *see* Third Cir. Amicus Br. at 11–12. The provision's fundamental purpose—and the reason it criminalizes more than possession and distribution—is to protect neighborhoods from the "increased violence and criminal activity" that concentrated drug activity inevitably attracts. National Narcotics Act of 1984, Pub. L. No. 98-473, 98 Stat. 2168.

If that were not enough, the Community Groups have a specific, statutory property right against the externalities Safehouse threatens. Pennsylvania law gives residents and "community-based organization[s]" a cause of action "to abate, enjoin and prevent [a] drug related-nuisance." 42 Pa. Cons. Stat. § 8383. A "drug-related nuisance" is defined to include any "use of any property, in whole or in part, which facilitates or is intended to facilitate any violation of [the Pennsylvania Controlled Substances Act], or similar act of the United States." *Id.* § 8382. Here, of course, the Third Circuit has squarely held that injection sites would violate federal law. *See Safehouse*, 985 F.3d at 243. The Community Groups' state-law rights against property nuisances are thus directly implicated.

The Community Groups' situation closely parallels *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*, 41 F.4th 767 (6th Cir. 2022). In *Wineries*, a group of businesses sued to enjoin certain zoning ordinances. *Id.* at 769–70. The Sixth Circuit allowed a community group to intervene on the basis of "fear that . . . property values [would] diminish," that "the quiet

enjoyment of their property [could] diminish," and that their property rights would suffer from "additional traffic" and rising "transportation costs." *Id.* at 772–73. The court explained that "[i]nterests in property are the most elementary type of right that Rule 24(a) is designed to protect." *Id.* at 772 (quoting *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 869 (8th Cir. 1977)). And it noted that the residents had state-law rights against property nuisances that independently sufficed as an interest justifying intervention. *Id.* at 773. Surely, the Community Groups may likewise intervene here to protect their members' property and community rights from the crime that the consumption sites will attract. *Accord Eco-Site LLC v. County of Pueblo, Colo.*, 352 F. Supp. 3d 1079 (D. Colo. 2018) (allowing adjacent property owner to intervene in suit to stop construction of a wireless communications facility).

2. <u>This case threatens the Community Groups' interests.</u>

Without intervention, the Community Groups' ability to protect these interests would be "impair[ed] or impede[d]." Fed. R. Civ. P. 24(a)(2). To satisfy this element, an intervenor "must show only that impairment of its substantial legal interest is *possible*." *Am. Farm Bureau Fed'n v. E.P.A.*, 278 F.R.D. 98, 108 (M.D. Pa. 2011) (citation omitted; emphasis in original). This "minimal" burden leaves the court "free to look at the realistic and practical consequences of a potential ruling, not just the effects of the resolution of narrowly-tailored legal issues." *Id.* (citing *Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir.1995), and *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)). An intervenor "need not . . . prove that [it] would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief." *Brody*, 957 F.2d at 1123. Instead, the Community Groups' "rights" need only "be *affected* by a proposed remedy." *Id.* at 1122–23 (emphasis added).

Here, a decision by the Government to enter into a settlement agreement or consent decree would no doubt affect the Community Groups' interests. *See, e.g.*, *EEOC v. AT&T*, 506 F.2d 735, 741–42 (3d Cir. 1974) (upholding intervention as of right for party "to defend his existing rights against impairment by [consent] decree" entered into between government and private party). "[I]f this action succeeds," Safehouse "will have one less obstacle to building" injection sites "and theoretically might start construction the day judgment is entered." *Nextel Commc'ns of the Mid-Atlantic, Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 150 (D. Mass. 2004). Safehouse fully intends to violate Section 856 as soon as it is given a chance to do so. *See* Am. Compl., Doc 35 at 5–6, ¶¶ 19–21. If it prevails in this case, Safehouse may immediately begin operating an injection site, affecting the Community Groups' interests.

C.      **The Government No Longer Adequately Represents the Community Groups' Interests.**

Rule 24(a)(2) requires the court to determine next whether the existing party adequately represents the intervenors' claimed interests. This element "present[s] proposed intervenors with only a minimal challenge." *Berger*, 142 S. Ct. at 2203. Intervenors can satisfy the element on any of three grounds: (1) that the intervenor's and existing party's interests "diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests;" (2) "that there is collusion between the representative party and the opposing party;" or (3) "that the representative party is not diligently prosecuting the suit." *Brody*, 957 F.2d at 1123 (citation omitted). Here, the Community Groups satisfy all three grounds.

The Government's interests now diverge from the Community Groups' interests. That the federal government is considering a settlement—after a resounding victory in the Third Circuit—is proof positive that the Government is no longer interested in defending the law and protecting Philadelphians' safety and property. *See* Thomas F. Harrison, *Biden quietly making a radical shift*

9

*in opioid policy*, Courthouse News Serv. (Sep. 19, 2022), bit.ly/3Y4J9NB ("Several [safe injection] sites are now operating in New York City and the federal government has made no effort to stop them."). This same evidence demonstrates collusion between the Government and Safehouse. The Government has indicated it will settle the matter in a way that benefits Safehouse and which may permit the construction of illegal injection sites throughout the Groups' communities.

In sum, the Government appears to be abandoning its previously successful position. The Community Groups' "straightforward" interests have "become lost in the thicket of sometimes inconsistent governmental policies." *Chester Water Auth. v. Susquehanna River Basin Comm'n*, 2014 WL 3908186, at *5 (M.D. Pa. Aug. 11, 2014) (citation omitted). And political considerations, rather than the law, may be driving the Government's recent actions. *See Wineries*, 41 F.4th at 776 ("The adequacy of representation can change during a lawsuit depending on the representative party's underlying incentives for litigating the case.").

It changes nothing that the inadequate party is the Government as opposed to a private litigant. The Third Circuit has recognized that federal and state governments' views are sometimes "colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler*, 157 F.3d at 972. Here, the Community Groups seek full relief against the construction of the proposed injection cites, "full stop." *Berger*, 142 S. Ct. at 2204. "[M]eanwhile," the government must also "bear in mind broader public-policy implications." *Id.* (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538–39 (1972)); *accord Meek v. Metropolitan Dade Cnty.*, 985 F.2d 1471, 1488 (11th Cir. 1993) (noting that government parties must consider "the social and political divisiveness" of litigation).

## II.    Alternatively, The Community Groups Assert Rights That Share Common Legal And Factual Questions, Making Permissive Intervention Appropriate.

Even if intervention were not available under Rule 24(a)(2), this Court should grant relief under Rule 24(b)(1)(B), which permits intervention by any party that "has a claim or defense that shares with the main action a common question of law or fact."  Courts first "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  *United States v. Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014).  Once the district court has weighed those interests, it has broad discretion in deciding the motion.  *Brody*, 957 F.2d at 1115.

The Community Groups qualify for permissive intervention.  Should the Government settle or lose this case, the Community Groups and their members will have claims sharing common questions of law or fact with this case.  The Community Groups' members live, work, and own property throughout the Philadelphia area.  Safehouse's dangerous drug consumption sites will endanger members' families, imperil their livelihoods, and slash the value of their properties.  Each harm that the members suffer will relate back to, and share common questions with, the action that loosed this devastation upon Philadelphia.  Among other things, the Community Groups will have claims under Pennsylvania's nuisance law.  *See* 42 Pa. Cons. Stat. § 8382; *supra* Part I.B.1.

Intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  *Virgin Islands*, 748 F.3d at 524.  The Third Circuit has already held that Safehouse's planned behavior will violate federal criminal law.  *Safehouse*, 985 F.3d at 243.  That decision remains intact.  All that is missing is a plaintiff or plaintiffs willing to enforce it and defend against Safehouse's counterclaims.  The Community Groups can do both, immediately.  And neither existing party is prejudiced.  Safehouse has no legal right to violate federal criminal law.  Nor does it have a right to a settlement in which the Government simply agrees to ignore blatant criminal

11

activity.  As to the Government itself, until recently, it was litigating this case and vigorously opposing Safehouse's baseless counterclaim.  It cannot now argue that it would suffer prejudice simply because the Community Groups picked up the cause it so recently abandoned.

## III.     There Is Good Cause For Expedited Consideration.

The Community Groups' interests are in imminent danger because the Government is in active settlement discussions with Safehouse.  The Government might imminently seek to capitulate to Safehouse's RFRA counterclaim and endorse the illegal, harmful operation of drug-injection sites in the Groups' communities.  This Court should therefore grant this motion before the settlement conference scheduled to take place on Thursday April 13, 2023.  *See* Fed. R. Civ. P. 6(c)(1)(C); *Fulton v. City of Philadelphia*, 2018 WL 11306952 (E.D. Pa. Aug. 13, 2018) (granting expedited motion to intervene).

Alternatively, the Groups respectfully request that any settlement discussions among the parties be postponed until the Court can resolve this motion.

## CONCLUSION

The motion to intervene should be granted before the next settlement conference.  At a minimum, the Community Groups should be permitted to intervene before the Government seeks to enter into any settlement.

Dated:      April 11, 2023               By: */s/ Michael H. McGinley*

Steven B. Feirson (PA # 21357)
Michael H. McGinley (PA # 325545)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104
Telephone:  (215) 994-4000
Facsimile:   (215) 994-2222

Eric D. Hageman*
M. Scott Proctor*
Justin W. Aimonetti*
DECHERT LLP
1900 K Street Northwest
Washington, DC 20006
* *Motions to appear* pro hac vice *pending*

*Attorneys for Proposed Intervenor-Plaintiffs*

13