IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *Plaintiff*, | : |
| v. | : Civil Action No. 2:19-cv-00519 |
| SAFEHOUSE, *et al.*, | : |
| *Defendants*. | : |

### BRIEF OF *AMICUS CURIAE* STATE SENATORS CHRISTINE M. TARTAGLIONE, SHARIF STREET, ANTHONY H. WILLIAMS AND JIMMY DILLON

State Senators Christine M. Tartaglione, Sharif Street, Anthony H. Williams and Jimmy Dillon of the Democratic Caucus of the Senate of Pennsylvania respectfully submit this *amicus* brief for consideration.

### INTRODUCTION AND INTERESTS OF *AMICI CURIAE*

*Amici Curiae* are state senators representing the 2nd, 3rd, 5th and 8th Senate Districts including parts of Philadelphia and Delaware Counties and whose constituencies live and work in City of Philadelphia, where Safehouse proposes to operate one or more drug consumption sites at issue in this case.

State Senator Christine M. Tartaglione is a duly elected member of the Senate of Pennsylvania representing the 2nd Senate District, that includes part of the City of Philadelphia. Senator Tartaglione was elected by members of the Senate Democratic Caucus to serve as the Democratic Whip for the 2023-2024 Legislative Sessions.

State Senator Anthony H. Williams is a duly elected member of the Senate of Pennsylvania representing the 8th Senate District, that includes portions of the City of Philadelphia and Delaware County.

State Senator Sharif Street is a duly elected member of the Senate of Pennsylvania representing the 3rd Senate District that includes part of the City of Philadelphia.

State Senator Jimmy Dillon is a duly elected member of the Senate of Pennsylvania representing the 5th Senate District that includes part of the City of Philadelphia.

*Amici Curiae* have a special interest and unique perspective as members of the General Assembly representing the City of Philadelphia regarding the impact of the parties' mediation and Court's approval of any potential settlement agreement resulting in one or more drug consumption sites in the City. The four members petitioning this court as *Amici Curiae* represent neighborhoods and business communities that would be immediately affected by Safehouse's proposed drug consumption site or sites in Philadelphia including the epicenter of the City's opioid crisis Kensington that is squarely in Senator Tartaglione's 2nd Senate District.

The Pennsylvania Constitution vests the General Assembly with "[t]he legislative power of this Commonwealth." Pa. Const. art. II, § 1. This matter impacts *Amici Curiae*'s consideration of legislation pending in the General Assembly, introduced by *Amicus Curiae* Senator Tartaglione, undermines current federal and state law, and puts *Amici Curiae*'s constituencies at risk. Additionally, neither Safehouse nor the United States represent these special interests. Furthermore, neither party consist of any state legislative officials elected to represent residents in the City where these sites would operate.

*Amici Curiae* anticipated that the parties in this matter would engage with local elected officials and state lawmakers in order to move forward with any approved drug consumption sites. At the very least, doing so would avoid further litigation related to state law violations and mitigating constituent harm and anxiety over any proposed site.

*Amici Curiae* believe that Safehouse would be prohibited from operating a drug consumption site as such an entity would be prohibited by federal and state controlled substance laws. Further, *Amici Curiae* believe that if any exception were to be made to such statutory prohibitions, those must be considered by the legislative branch. In any case, such an exception would require the entity to comply with all municipal approvals including public forums where Safehouse would be responsible for providing sufficient assurances to the community that protects the health, safety and welfare of the citizens living in proximity to such a site.

## ARGUMENT

I. **DRUG CONSUMPTION SITES REMAIN ILLEGAL UNDER FEDERAL LAW REGARDLESS OF WHETHER THE PARTIES AGREE TO ALLOW SAFEHOUSE TO OPERATE THEM IN THE CITY OF PHILADELPHIA.**

As the Third Circuit Court ruled, "Safehouse will offer visitors a space to inject themselves with drugs…[T]hat is enough to violate the [Controlled Substances Act]." *United States v. Safehouse*, 985 F.3d 225, 238 (3d Cir. 2021).

If the statutory language is "plain . . . the sole function of the courts is to enforce it according to its terms." *Id.* (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). "At least when the text is clear, [courts] will not look to beyond it to lawmakers' statements, because 'legislative history is not the law.' . . . The words on the page, not the intent of any legislator, go through bicameralism and presentment and become law." *Id.* at 239.

Here, the Controlled Substances Act ("CSA") makes it illegal to operate a "drug-involved premises." 21 U.S.C. §856(a). Specifically, Section 856(a)(2) of the CSA states it is "unlawful to . . . manage or control any place, . . . knowingly and intentionally . . . make available for use . . . the place for the purpose of unlawfully manufacturing, storing, distributing or using a controlled substance." *Id.* § 856(a)(2). The Third Circuit found that the plain language of the

statute requires only that "the third party, not the defendant, have the purpose of drug activity" and the defendant must "knowingly and willingly let others use his property for drug activity." *Safehouse*, 985 F.3d at 237. Additionally, "for the purpose of" means the actor must have a "significant purpose" of drug use, even if the actor also has another purpose for visiting the consumption room. *Id*.

Safehouse's proposed drug consumption site would satisfy the plain language of Section 856(a)(2). It would "manage" and "control" a place "intentionally" made available for visitors' use of controlled substances, and "'intentionally . . . make' its consumption room "available for [visitors'] use' knowing that they will use drugs there." *Id*. And as designed, both Safehouse and its visitors have the *significant purpose* of illegal drug use at the consumption site. Visitors will come for the significant purpose of injecting controlled substances, and Safehouse – as the Third Circuit found – would have the significant purpose of offering a space for visitors to inject controlled substances. *Id*. at 238.

Operating a drug consumption site with the significant purpose of offering a place at which visitors may inject themselves with controlled substances violates the plain language of the CSA. Moreover, regardless of whether the parties agree to a settlement to open one or more drug consumption sites or even provide additional "safety protocols" not originally included in Safehouse's plans, that does not change the decision of the Third Circuit that such a site in the Commonwealth will still violate federal law. As such, any agreement between the parties to authorize such illegal activity by neglecting to enforce the law will not magically vacate the Third Circuit's ruling or make the site legal.

## II. DRUG CONSUMPTION SITES ARE ILLEGAL UNDER STATE LAW.

Drug consumption sites are illegal under Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P. S. §§ 780-101 - 780-144. Although the Commonwealth does not have specific language in the statute referencing the operation of a drug-involved premises like the CSA, it similarly provides a statutory scheme regulating the market for and use of illegal drugs.

The statute prohibits, among other activities: (1) "Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act . . ."; and (2) "The use of, or possession with intent to use, drug paraphernalia for the purpose of . . . injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act." 35 P.S. § 780-113. When construing state statutes, Pennsylvania courts give effect to the legislature's intent and give effect to all of the statute's provisions. 1 Pa.C.S. § 1921(a). "The plain language of the statute is the best indication of the legislature's intent. To discern the plain meaning of a statute, [courts] consider the operative statutory language in context and give words and phrases their common and approved usage. Courts must give effect to a clear and unambiguous statute and cannot disregard the statute's plain meaning to implement its objectives. 'Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent.'" *In re B.W.*, 250 A.3d 1163, 1170–71 (Pa. 2021) (citing *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n,* 234 A.3d 665, 674 (Pa. 2020); quoting *Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 291 (Pa. 2018)).

Safehouse plans to operate one or more drug consumption sites with the substantial purpose of permitting visitors to illegally inject themselves with controlled substances and provide clean syringes. The visitors, "not registered under the [Controlled Substance, Drug, Device and Cosmetic Act]", will attend "knowingly or intentionally possessing a controlled substance" and

for the specific purpose of obtaining the drug paraphernalia and space *from Safehouse* necessary to "inject" or "ingest" illegal substances into their bodies. Safehouse is openly inviting this illegal activity and contributing to it by paying for and offering the space and tools to make it possible.

Operation of a drug consumption site in Pennsylvania violates the Controlled Substance, Drug, Device and Cosmetic Act. No settlement to explicitly permit this illegal activity will make it legal.

### III. ANY EXCEPTIONS TO STATUTORY PROHIBITIONS MUST BE CONSIDERED BY THE LEGISLATIVE BRANCH.

When urged by the parties to read the CSA in a way that better comports with the government's attempts to curb overdose deaths in recent years, the Third Circuit recognized that "[t]he public-policy debate is important, but it is not one for courts." *Safehouse*, 985 F.3d at 238. It stated, "If that ban [on safe injection sites] undermines Congress's current efforts to fight opioids, Congress must fix it; we cannot." *Id.* at 239.

As discussed above, federal and Pennsylvania courts are reluctant to disregard the plain language of a statute in order to achieve its own objectives. *In re B.W.*, 250 A.3d at 1170–71 (Pa. 2021). *See Safehouse*, 985 F.3d at 238. The plain language of the federal and state statutes is unambiguous in their prohibitions on drug consumption sites. There is no reason or authority to go beyond the clear prohibitions in statute.

Furthermore, the Pennsylvania Constitution vests the General Assembly with "[t]he legislative power of this Commonwealth." Pa. Const. art. II, § 1. Any exception to a statute must undergo the legislative process. *See* Pa. Const. art. III (setting forth the legislative process for passage of bills). In fact, there is legislation pending in the General Assembly to further clarify any policy debate on the issue, including *Amicus Curiae* Senator Tartaglione's Senate Bill 165.

Senate Bill 165 would explicitly prohibit the operation of sites that provide drug paraphernalia and space for any person to inject, ingest, inhale or otherwise introduce controlled substances into the person's body in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

Any attempt to circumvent the legislative process undermines the exclusive legislative authority vested in the legislative branch. Specifically, if the settlement discussions in this matter result in an agreement for Safehouse to operate one or more illegal drug consumption sites outside of the law, this effectively carves out a statutory exception or amendment to the law without legislative enactment. As the Third Circuit stated, if the statutory bans appear to undermine the legislative branch's other actions or policy choices to reduce overdose deaths, then "*Congress must fix it; we cannot.*" *Safehouse*, 985 F.3d at 238 (emphasis added).

## CONCLUSION

Based on the foregoing reasons, we urge the Court to reject any settlement resulting in the operation of a drug consumption site in the City of Philadelphia.

Respectfully submitted,

/s/ *[signature]*
George Gossett, Jr.
PA ID #
Senate Democratic Caucus Members
The Law Office of George Gossett
4840 Old York Road
First Floor
Philadelphia, PA 19141
(267) 978-1879


/s/ *Shannon A. Sollenberger*
*Shannon A. Sollenberger, Esq.
PA ID # 308878
Senate Democratic Caucus Members
Senate of Pennsylvania
Room 535 Main Capitol Building
Harrisburg, PA 17120
(717) 787-3736
shannon.sollenberger@pasenate.com
*Pro Hac Vice application filed concurrently*

Dated: April 12, 2023

## CERTIFICATE OF SERVICE

I certify that on April 12, 2023, a copy of the forgoing *Amicus Curiae* Brief of State Senators Christine M. Tartaglione, Sharif Street, Anthony H. Williams and Jimmy Dillon was served on all counsel of record.

/s/ *George Gossett, Jr.*

George Gossett, Jr.
PA ID #
Senate Democratic Caucus Members
The Law Office of George Gossett
4840 Old York Road
First Floor
Philadelphia, PA 19141

*Attorney for Amici Curiae*

Dated: April 12, 2023