**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil Action No. 2:19-cv-00519 |
| | : | |
| SAFEHOUSE, *et al.*, | : | |
| | : | |
| *Defendants.* | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2023, upon consideration of the Motion for Leave to File Amicus Curiae Brief of State Senators Christine M. Tartaglione, Sharif Street, Anthony H. Williams, and Jimmy Dillon, it is hereby ORDERED that the Motion is GRANTED.

BY THE COURT:

_____
Gerald A. McHugh, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil Action No. 2:19-cv-00519 |
| | : | |
| SAFEHOUSE, *et al.*, | : | |
| | : | |
| *Defendants.* | : | |

**MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF OF STATE SENATORS
CHRISTINE M. TARTAGLIONE, SHARIF STREET, ANTHONY H. WILLIAMS AND
JIMMY DILLON**

State Senators Christine M. Tartaglione, Sharif Street, Anthony H. Williams and Jimmy

Dillon of the Democratic Caucus of the Senate of Pennsylvania ("Proposed *Amici Curiae*"),

respectfully move the Court for leave to file the attached Brief of *Amici Curiae*, attached as

Exhibit A hereto, for consideration.[1]

Proposed *Amici Curiae* are state senators representing the 2nd, 3rd, 5th and 8th Senate

Districts including parts of Philadelphia and Delaware Counties and whose constituencies live

and work in City of Philadelphia, where Safehouse proposes to operate one or more drug

consumption sites at issue in this case. Given their districts cover neighborhoods and business

communities stretching from Safehouse's originally proposed drug consumption site[2] in South

Philadelphia (Senator Williams, 8th Senate District) to the renowned epicenter of the City's

opioid crisis Kensington (Senator Tartaglione, 2nd Senate District), Proposed *Amici Curiae*

---

[1] The attached Brief of Proposed *Amici Curiae* is a copy of the brief filed separately (ECF 200).
[2] Michael Tanenbaum, *Safehouse's plan to open overdose prevention site in South Philly sparks contentious reaction*, PhillyVoice (Feb. 26, 2020), https://www.phillyvoice.com/safehouse-south-philly-supervised-injection-site-heroin-overdose-prevention-community-protest/.

always anticipated that the parties in this matter would have to engage with state lawmakers in order to move forward with any approved drug consumption sites, particularly with those duly elected to represent the areas in which such sites would be located. At the very least, doing so is in the interest of avoiding further litigation related to state law violations and mitigating constituent harm and anxiety over the proposed site. Instead, the United States Department of Justice recently reversed its position by ignoring the Third Circuit Court of Appeals' decision that such consumption sites are prohibited under the federal Controlled Substances Act and by reportedly moving forward with mediation to open one or more sites in the City of Philadelphia.[3] Moreover, not only has the United States changed its stance on the legality and safety of these sites, but elected officials including Proposed *Amici Curiae* were banned from attending the U.S. Department of Justice's recent meeting to engage with local stakeholders (many of which are *amicus* parties) relating to these negotiations.[4]

Although it is within the Court's discretion whether to grant leave to file an *amicus* brief, district courts will generally consider four factors: Whether "(1) the petitioner has a 'special interest' in the particular case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case." *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 Supp. 2d 206, 209 (E.D. Pa. 2005) (citing *Sciotto v. Marple Newtown School Dist.*, 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999)).

---

[3] Michael Balsamo and Jennifer Peltz, *Justice Dept. signals it may allow safe injection sites*, AP News (Feb. 8, 2022), https://apnews.com/article/business-health-new-york-c4e6d999583d7b7abce2189fba095011. Article attached as Exhibit B.

[4] Carlos Nogueras, *At the cusp of a settlement over safe injection sites, the U.S. appears to be shutting local officials out*, Al Día News (Mar. 22, 2023), https://aldianews.com/en/politics/policy/safe-injection-sites. Article attached as Exhibit C.

As to the first factor, Proposed *Amici Curiae* have a special interest and unique perspective as members of the General Assembly representing the City of Philadelphia regarding the impact of the parties' mediation and Court's approval of any potential settlement resulting in one or more drug consumption sites in the City. The Pennsylvania Constitution vests the General Assembly with "[t]he legislative power of this Commonwealth." Pa. Const. art. II, § 1. This matter impacts Proposed *Amici Curiae*'s consideration of legislation pending in the General Assembly, introduced by Proposed *Amici Curiae* Senator Tartaglione, undermines current federal and state law, and puts Proposed *Amici Curiae*'s constituencies at risk.

This matter directly impacts Proposed *Amici Curiae* in their constitutional role as lawmakers. Senate Bill 165, sponsored by Proposed *Amici Curiae* Senator Tartaglione, would explicitly prohibit the operation of sites that provide drug paraphernalia and space for any person to inject, ingest, inhale or otherwise introduce controlled substances into the person's body in violation of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P. S. §§ 780-101 - 780-144. Attached as Exhibit D. In fact, the drafting of the original bill in 2019 was informed by the issues pending in this litigation at the time. Specifically, the language was drafted to avoid phrases in the federal statute that were at issue in this case, including the phrase "for the purpose of." 21 U.S.C. § 856(a)(2). As a result, the outcome of settlement discussions in this matter will not only affect their consideration of such legislation pending before the General Assembly, but it will also inform Proposed *Amici Curiae*'s legislative drafting moving forward.

Furthermore, Proposed *Amici Curiae* represent families and businesses that personally witness the consequences of the illegal drug crisis in the city every day. They witness shootings and endure increased crime in their neighborhoods due to illegal drug deals gone bad, cope with persons with severe substance use disorders stealing their property only to obtain more drugs to

relieve their suffering, and live in fear as their children walk to school while observing incapacitated persons sprawled across the sidewalks and keeping an eye out for drug paraphernalia laced with heroin and fentanyl. This is not a dramatization for sake of argument. It has been widely reported as a reality for the residents of Proposed *Amici Curiae*'s districts.[5,6]

Proposed *Amici Curiae* understand the noble purpose of drug consumption sites to curb overdoses, but people suffering from such dangerous substance use disorders need more treatment resources that do not simultaneously contribute to increased crime in their communities. We cannot accept the fact that our children commonly observe persons passed out on their playgrounds and on their neighborhood streets. These residents rely on Proposed *Amici Curiae* to fulfill their constitutional obligations to consider and vote on state legislation and to represent their interests in matters affecting their health and safety, including responding to their potential exposure to illegal activity. *See generally* Pa. Const. art. III (setting forth the process by which the General Assembly must write and vote on legislation on behalf of the Commonwealth and its residents). Accordingly, Proposed *Amici Curiae* have a special interest in this particular case both as legislators and representatives of these districts.

Second, neither Safehouse nor the United States represent these special interests. As described above, both parties are now considering opening one or more drug consumption sites in the City. See Exhibits B and C. Furthermore, neither party consist of state legislative officials elected to represent residents in the City where these sites would operate.

---

[5] David Swanson, *The other victims of Kensington's opioid crisis: Children bearing witness*, The Philadelphia Inquirer (Nov. 23, 2018),
https://www.inquirer.com/philly/health/addiction/kensington-opioid-crisis-children-schools-20181123.html#loaded. Attached as Exhibit E.
[6] Joel Wolfram, *Going to school in Kensington amid drug crisis: 'We need to be beacons of hope'*, WHYY (Oct. 22, 2019), https://whyy.org/articles/going-to-school-in-kensington-amid-drug-crisis-we-need-to-be-beacons-of-hope/. Attached as Exhibit F.

Third, this Motion is timely, because it is being filed soon after Proposed *Amici Curiae* learned that elected officials were refused entry into the Department of Justice's meeting with community organizations on March 22, 2023, regarding the settlement negotiations between the parties and before the next settlement conference scheduled for April 13, 2023. See Exhibit C. Prior to the March 22 community meeting, Proposed *Amici Curiae* were unaware that elected officials would be banned from participating or witnessing any of these meetings. As such, the attached *amicus* brief will be useful to the Court and parties as they move forward with settlement discussions, in order to understand the position of state elected officials representing the City where they propose to operate these drug consumptions sites.

Finally, as to the impartiality of an *amicus* party, this factor is not dispositive; rather, it is a "factor to consider." *Sciotto*, 70 F. Supp.2d. at 555-56 (internal citations omitted). Proposed *Amici Curiae* take the position that drug consumption sites are illegal under federal and state law and would be harmful to the health and safety of their constituents. However, according to recent reports, given that both parties now appear to be considering the operation of these sites in the City, Proposed *Amici Curiae* are not partial to either party's position.[7]

If permitted to submit the attached *amicus* brief, Proposed *Amici Curiae* will explain that Safehouse is prohibited from operating a drug consumption site as prohibited by federal and state controlled substance laws. Further, Proposed *Amici Curiae* believe that if any exception were to be made to such statutory prohibitions, those must be considered by the legislative branch. In any

---

[7] Pursuant to this Court's Stipulating Scheduling Order dated May 28, 2019 (ECF No. 33),  the parties have not consented to the filing of this *amicus* brief. The brief was drafted by counsel for the Senate Democratic Caucus of the Senate of Pennsylvania. No counsel for any party to this litigation has authored the attached *amicus* brief, in whole or in part, or contributed money to fund preparing or submitting it. Finally, no other person or entity other than the Proposed *Amici Curiae* has contributed money intended to fund preparing or submitting the brief.

case, such an exception would require the entity to comply with all municipal approvals including public forums where Safehouse would be responsible for providing sufficient assurances to the community that protects the health, safety and welfare of the citizens living in proximity to such a site.

WHEREFORE, for the reasons stated above and in the accompanying brief, Proposed *Amici Curiae* respectfully request that this Court grant our motion for leave to file the attached *amicus* brief for the Court's and parties' consideration related to proposed drug consumption sites in the City of Philadelphia.

Respectfully submitted,

/s/  *Shannon A. Sollenberger*
Shannon A. Sollenberger, Esq.
PA ID # 308878
Senate Democratic Caucus Members
Senate of Pennsylvania
Room 535 Main Capitol Building
Harrisburg, PA 17120
(717) 787-3736
shannon.sollenberger@pasenate.com

*Attorney for Amici Curiae*

Dated: April 12, 2023

## CERTIFICATE OF SERVICE

I certify that on April 12, 2023, a copy of the forgoing Motion for Leave to File *Amicus Curiae* Brief of State Senators Christine M. Tartaglione, Sharif Street, Anthony H. Williams and Jimmy Dillon was served on all counsel of record.

/s/  *Shannon A. Sollenberger*
Shannon A. Sollenberger, Esq.
PA ID # 308878
Senate Democratic Caucus Members
Senate of Pennsylvania
Room 535 Main Capitol Building
Harrisburg, PA 17120
(717) 787-3736
shannon.sollenberger@pasenate.com

*Attorney for Amici Curiae*

Dated: April 12, 2023

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,          :
                                   :
        *Plaintiff,*               :
                                   :
    v.                             :    Civil Action No. 2:19-cv-00519
                                   :
SAFEHOUSE, *et al.*,               :
                                   :
        *Defendants.*              :

## BRIEF OF *AMICUS CURIAE* STATE SENATORS CHRISTINE M. TARTAGLIONE, SHARIF STREET, ANTHONY H. WILLIAMS AND JIMMY DILLON

State Senators Christine M. Tartaglione, Sharif Street, Anthony H. Williams and Jimmy Dillon of the Democratic Caucus of the Senate of Pennsylvania respectfully submit this *amicus* brief for consideration.

### INTRODUCTION AND INTERESTS OF *AMICI CURIAE*

*Amici Curiae* are state senators representing the 2nd, 3rd, 5th and 8th Senate Districts including parts of Philadelphia and Delaware Counties and whose constituencies live and work in City of Philadelphia, where Safehouse proposes to operate one or more drug consumption sites at issue in this case.

State Senator Christine M. Tartaglione is a duly elected member of the Senate of Pennsylvania representing the 2nd Senate District, that includes part of the City of Philadelphia. Senator Tartaglione was elected by members of the Senate Democratic Caucus to serve as the Democratic Whip for the 2023-2024 Legislative Sessions.

State Senator Anthony H. Williams is a duly elected member of the Senate of Pennsylvania representing the 8th Senate District, that includes portions of the City of Philadelphia and Delaware County.

State Senator Sharif Street is a duly elected member of the Senate of Pennsylvania representing the 3rd Senate District that includes part of the City of Philadelphia.

State Senator Jimmy Dillon is a duly elected member of the Senate of Pennsylvania representing the 5th Senate District that includes part of the City of Philadelphia.

*Amici Curiae* have a special interest and unique perspective as members of the General Assembly representing the City of Philadelphia regarding the impact of the parties' mediation and Court's approval of any potential settlement agreement resulting in one or more drug consumption sites in the City. The four members petitioning this court as *Amici Curiae* represent neighborhoods and business communities that would be immediately affected by Safehouse's proposed drug consumption site or sites in Philadelphia including the epicenter of the City's opioid crisis Kensington that is squarely in Senator Tartaglione' s 2nd Senate District.

The Pennsylvania Constitution vests the General Assembly with "[t]he legislative power of this Commonwealth." Pa. Const. art. II, § 1. This matter impacts *Amici Curiae*'s consideration of legislation pending in the General Assembly, introduced by *Amicus Curiae* Senator Tartaglione, undermines current federal and state law, and puts *Amici Curiae*'s constituencies at risk. Additionally, neither Safehouse nor the United States represent these special interests. Furthermore, neither party consist of any state legislative officials elected to represent residents in the City where these sites would operate.

*Amici Curiae* anticipated that the parties in this matter would engage with local elected officials and state lawmakers in order to move forward with any approved drug consumption sites. At the very least, doing so would avoid further litigation related to state law violations and mitigating constituent harm and anxiety over any proposed site.

2

*Amici Curiae* believe that Safehouse would be prohibited from operating a drug consumption site as such an entity would be prohibited by federal and state controlled substance laws. Further, *Amici Curiae* believe that if any exception were to be made to such statutory prohibitions, those must be considered by the legislative branch. In any case, such an exception would require the entity to comply with all municipal approvals including public forums where Safehouse would be responsible for providing sufficient assurances to the community that protects the health, safety and welfare of the citizens living in proximity to such a site.

## ARGUMENT

I. **DRUG CONSUMPTION SITES REMAIN ILLEGAL UNDER FEDERAL LAW REGARDLESS OF WHETHER THE PARTIES AGREE TO ALLOW SAFEHOUSE TO OPERATE THEM IN THE CITY OF PHILADELPHIA.**

As the Third Circuit Court ruled, "Safehouse will offer visitors a space to inject themselves with drugs…[T]hat is enough to violate the [Controlled Substances Act]." *United States v. Safehouse*, 985 F.3d 225, 238 (3d Cir. 2021).

If the statutory language is "plain . . . the sole function of the courts is to enforce it according to its terms." *Id.* (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). "At least when the text is clear, [courts] will not look to beyond it to lawmakers' statements, because 'legislative history is not the law.' . . . The words on the page, not the intent of any legislator, go through bicameralism and presentment and become law." *Id.* at 239.

Here, the Controlled Substances Act ("CSA") makes it illegal to operate a "drug-involved premises." 21 U.S.C. §856(a). Specifically, Section 856(a)(2) of the CSA states it is "unlawful to . . . manage or control any place, . . . knowingly and intentionally . . . make available for use . . . the place for the purpose of unlawfully manufacturing, storing, distributing or using a controlled substance." *Id.* § 856(a)(2). The Third Circuit found that the plain language of the

statute requires only that "the third party, not the defendant, have the purpose of drug activity" and the defendant must "knowingly and willingly let others use his property for drug activity." *Safehouse*, 985 F.3d at 237. Additionally, "for the purpose of" means the actor must have a "significant purpose" of drug use, even if the actor also has another purpose for visiting the consumption room. *Id*.

Safehouse's proposed drug consumption site would satisfy the plain language of Section 856(a)(2). It would "manage" and "control" a place "intentionally" made available for visitors' use of controlled substances, and "'intentionally . . . make' its consumption room "available for [visitors'] use' knowing that they will use drugs there." *Id*. And as designed, both Safehouse and its visitors have the *significant purpose* of illegal drug use at the consumption site. Visitors will come for the significant purpose of injecting controlled substances, and Safehouse – as the Third Circuit found – would have the significant purpose of offering a space for visitors to inject controlled substances. *Id*. at 238.

Operating a drug consumption site with the significant purpose of offering a place at which visitors may inject themselves with controlled substances violates the plain language of the CSA. Moreover, regardless of whether the parties agree to a settlement to open one or more drug consumption sites or even provide additional "safety protocols" not originally included in Safehouse's plans, that does not change the decision of the Third Circuit that such a site in the Commonwealth will still violate federal law. As such, any agreement between the parties to authorize such illegal activity by neglecting to enforce the law will not magically vacate the Third Circuit's ruling or make the site legal.

## II.   DRUG CONSUMPTION SITES ARE ILLEGAL UNDER STATE LAW.

Drug consumption sites are illegal under Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P. S. §§ 780-101 - 780-144. Although the Commonwealth does not have specific language in the statute referencing the operation of a drug-involved premises like the CSA, it similarly provides a statutory scheme regulating the market for and use of illegal drugs.

The statute prohibits, among other activities: (1) "Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act . . ."; and (2) "The use of, or possession with intent to use, drug paraphernalia for the purpose of . . . injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act." 35 P.S. § 780-113. When construing state statutes, Pennsylvania courts give effect to the legislature's intent and give effect to all of the statute's provisions. 1 Pa.C.S. § 1921(a). "The plain language of the statute is the best indication of the legislature's intent. To discern the plain meaning of a statute, [courts] consider the operative statutory language in context and give words and phrases their common and approved usage.  Courts must give effect to a clear and unambiguous statute and cannot disregard the statute's plain meaning to implement its objectives. 'Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent.'" *In re B.W.*, 250 A.3d 1163, 1170–71 (Pa. 2021) (citing *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020); quoting *Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 291 (Pa. 2018)).

Safehouse plans to operate one or more drug consumption sites with the substantial purpose of permitting visitors to illegally inject themselves with controlled substances and provide clean syringes. The visitors, "not registered under the [Controlled Substance, Drug, Device and Cosmetic Act]", will attend "knowingly or intentionally possessing a controlled substance" and

5

for the specific purpose of obtaining the drug paraphernalia and space *from Safehouse* necessary to "inject" or "ingest" illegal substances into their bodies. Safehouse is openly inviting this illegal activity and contributing to it by paying for and offering the space and tools to make it possible.

Operation of a drug consumption site in Pennsylvania violates the Controlled Substance, Drug, Device and Cosmetic Act. No settlement to explicitly permit this illegal activity will make it legal.

## III.   ANY EXCEPTIONS TO STATUTORY PROHIBITIONS MUST BE CONSIDERED BY THE LEGISLATIVE BRANCH.

When urged by the parties to read the CSA in a way that better comports with the government's attempts to curb overdose deaths in recent years, the Third Circuit recognized that "[t]he public-policy debate is important, but it is not one for courts." *Safehouse*, 985 F.3d at 238. It stated, "If that ban [on safe injection sites] undermines Congress's current efforts to fight opioids, Congress must fix it; we cannot." *Id*. at 239.

As discussed above, federal and Pennsylvania courts are reluctant to disregard the plain language of a statute in order to achieve its own objectives. *In re B.W.*, 250 A.3d at 1170–71 (Pa. 2021). *See Safehouse*, 985 F.3d at 238. The plain language of the federal and state statutes is unambiguous in their prohibitions on drug consumption sites. There is no reason or authority to go beyond the clear prohibitions in statute.

Furthermore, the Pennsylvania Constitution vests the General Assembly with "[t]he legislative power of this Commonwealth." Pa. Const. art. II, § 1. Any exception to a statute must undergo the legislative process. *See* Pa. Const. art. III (setting forth the legislative process for passage of bills). In fact, there is legislation pending in the General Assembly to further clarify any policy debate on the issue, including *Amicus Curiae* Senator Tartaglione' s Senate Bill 165.

6

Senate Bill 165 would explicitly prohibit the operation of sites that provide drug paraphernalia and space for any person to inject, ingest, inhale or otherwise introduce controlled substances into the person's body in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

Any attempt to circumvent the legislative process undermines the exclusive legislative authority vested in the legislative branch. Specifically, if the settlement discussions in this matter result in an agreement for Safehouse to operate one or more illegal drug consumption sites outside of the law, this effectively carves out a statutory exception or amendment to the law without legislative enactment. As the Third Circuit stated, if the statutory bans appear to undermine the legislative branch's other actions or policy choices to reduce overdose deaths, then "*Congress must fix it; we cannot.*" *Safehouse*, 985 F.3d at 238 (emphasis added).

## CONCLUSION

Based on the foregoing reasons, we urge the Court to reject any settlement resulting in the operation of a drug consumption site in the City of Philadelphia.

Respectfully submitted,

7

/s/ _George Gossett_
George Gossett, Jr.
PA ID #
Senate Democratic Caucus Members
The Law Office of George Gossett
4840 Old York Road
First Floor
Philadelphia, PA 19141
(267) 978-1879


/s/  *Shannon A. Sollenberger*
*Shannon A. Sollenberger, Esq.
PA ID # 308878
Senate Democratic Caucus Members
Senate of Pennsylvania
Room 535 Main Capitol Building
Harrisburg, PA 17120
(717) 787-3736
shannon.sollenberger@pasenate.com
*Pro Hac Vice application filed concurrently*

Dated: April 12, 2023

## CERTIFICATE OF SERVICE

I certify that on April 12, 2023, a copy of the forgoing *Amicus Curiae* Brief of State Senators Christine M. Tartaglione, Sharif Street, Anthony H. Williams and Jimmy Dillon was served on all counsel of record.

/s/

George Gossett, Jr.
PA ID #
Senate Democratic Caucus Members
The Law Office of George Gossett
4840 Old York Road
First Floor
Philadelphia, PA 19141

*Attorney for Amici Curiae*

Dated: April 12, 2023

# EXHIBIT B

Tennessee lawmakers expelled     Abortion pill ruling     LGBTQ+ legislation     Latest on Russia-Ukraine war     More news

U.S. News     World New




Click to copy

ADVERTISEMENT

**RELATED TOPICS**

Health

Business

NYC State Wire

New York

Philadelphia

# Justice Dept. signals it may allow safe injection sites

By JENNIFER PELTZ and MICHAEL BALSAMO     February 8, 2022

ADVERTISEMENT



You May Like                    Promoted

**Cancelled TV Shows Announced: Effective Immediately**
Promoted: moneywise.ca

**Amazon Hates When You Do This, But They Can't Stop You**
Promoted: Online Shopping Tools

**A.I. Turned Simpsons Characters Into Humans**
Promoted: Yeah Motor     Click Here

**This "Botox Alternative Sold Out At Target (in Just 2 Days)**
Promoted: Vibriance     Learn More

**The great exodus. Residents are now moving.**
Promoted: Forbes

**She Was Beautiful, Now It's Hard To Look At Her**
Promoted: Weight Loss Groove

by Taboola

ADVERTISEMENT

NEW YORK (AP) — A year after winning a major court battle against the opening of so-called safe injection sites -- safe havens for people to use heroin and other narcotics with protections against fatal overdoses — the Justice Department is signaling it might be open to allowing them.

In response to questions from The Associated Press, the Justice Department said it is "evaluating" such facilities and talking to regulators about "appropriate guardrails."

The position is a drastic change from its stance in the Trump administration, when prosecutors fought vigorously against a plan to open a safe consumption site in Philadelphia. The Justice Department won a lawsuit last year, when a federal appeals court in Pennsylvania ruled that opening such a facility would violate a 1980s-era drug law, aimed at "crackhouses," which bans operating a place for taking illegal drugs. The Supreme Court declined in October to take the case.

## TOP HEADLINES

**Louisville bank employee livestreamed attack that killed 5**

**Leaked documents may have origin in chatroom for gamers**

**Black lawmaker who was expelled reinstated to Tennessee seat**

**India residents try to save a river, officials deny problems**

Report: Florida officials cut key data from vaccine study

_____

About six weeks later, the first officially authorized safe injection sites opened in New York City in November. The two facilities — which the city calls "overdose prevention centers" — provide a monitored place for drug users to partake, with staffers and supplies on hand to reverse overdoses. New York City is in a different appeals court jurisdiction that has not ruled on the centers.

Such sites exist in Canada, Australia and Europe and have been discussed for years in New York and some other U.S. cities and states. A few unofficial facilities have operated for some time.

Advocates have hailed them as a way to curb the scourge of overdose deaths. Drawing from the latest available death certificate data, the Centers for Disease Control and Prevention estimated that more than 100,000 Americans died of drug overdoses from May 2020 to April 2021.

Critics, however, argue that safe injection sites encourage illegal drug use and burden neighborhoods.

For months after President Joe Biden took office last year, the Justice Department — under Attorney General Merrick Garland — had refused to take a public stance on safe consumption sites. Officials now say they are weighing their use.

"Although we cannot comment on pending litigation, the Department is evaluating supervised consumption sites, including discussions with state and local regulators about appropriate guardrails for such sites, as part of an overall approach to harm reduction and public safety," the agency said in a statement Friday to the AP.

The New York City sites so far have intervened in more than 125 overdoses among more than 640 users, many of whom have made multiple visits, according to OnPoint NYC, the organization running them.

Executive Director Sam Rivera said he was excited and relieved by the Justice Department's statement. The group is eager to tell the agency about its work, he said.

"I believe they're going to land in the right place here and we'll be able to, together, really expand on this health initiative that's saving lives every day," he said.

Former Mayor Bill de Blasio, a Democrat whose administration allowed the centers to open, said the city's attorneys believed that the federal statute is "aimed at drug trafficking, not at medical facilities," as he characterized the consumption sites.

But U.S. Rep. Nicole Malliotakis, a New York City Republican, has urged Garland to work to shut them down, citing the appeals court ruling against the Philadelphia proposal last year. She told Garland in November that it is "imperative that you enforce this legal precedent," and she wasn't pleased to hear about the new Justice Department statement.

"Instead of stopping the deadly drugs streaming over our border, putting drug dealers behind bars and helping people receive the long-term treatment they need to overcome addiction, Democrat leadership is enabling illegal drug use," Malliotakis said in a statement.

The Philadelphia project, called Safehouse, is still fighting for court approval to open. Safehouse lawyers Ronda Goldfein and Ilana Eisenstein said they hoped the Justice Department's new statement "signals the prospect of a positive resolution, not just for Philadelphia but for any place in America that seeks to provide overdose prevention services."

Some other arms of the federal government also have signaled some willingness at least to explore safe injection facilities, if not yet embrace them. Asked about the New York sites, White House drug czar Dr. Rahul Gupta told CNN in December he was "interested in looking at the science and data behind all of the emerging harm reduction practices."

Later that month, the National Institutes of Health issued a call for harm reduction research that mentioned safe consumption sites, among other approaches.

Report: Florida officials cut key data from vaccine study

Tennessee lawmakers expelled    Abortion pill ruling    LGBTQ+ legislation    Latest on Russia-Ukraine war    More news

U.S. News    World New

## Ad Content

Dan Kitchener x Wynwood Walls - Tech - Tokyo Rain / L

$16.50

Etsto US

Buy now

Amazon Left Scrambling As Prime Users Find Out About Secret Deals

Online Shopping Tools

This "Botox In A Bottle" Leaves Women Over 50 Speechless

Vibriance

Virginia Gov Will Cover The Cost To Install Solar If You Own A Home In These Zip Codes

EnergyBillCruncher

If you have a mouse, this game will keep you up all night.

Combat Siege

Play Now

Norah O'Donnell Has Been Married To Him All Along

B Trending

## Ad Content

He Used To Be Handsome In 80's Now It's Hard To Look At Him

Promoted: Reporter Center

34 Of Donald Trump Cartoons

Promoted: Forbes

25 Celebrities Who Underwent Gender Transition And You Probably Didn't Know

Promoted: Oceandraw

Illustrated Anne Frank book removed...

A high school along Florida's Atlantic
Coast has removed a graphic novel based ...

yesterday

Report: Florida officials cut key data from vaccine study

Click to copy



Tennessee lawmakers expelled    Abortion pill ruling    LGBTQ+ legislation    Latest on Russia-Ukraine war    More news

U.S. News    World New

Accessibility Statement

Cookie Settings

DOWNLOAD AP NEWS
Connect with the definitive source for global and local news

MORE FROM AP
ap.org
AP Insights
AP Definitive Source Blog
AP Images Spotlight
AP Explore
AP Books
AP Stylebook
FOLLOW AP

THE ASSOCIATED PRESS
About    Contact    Customer Support    Careers    Terms & Conditions    Privacy

All contents © copyright 2023 The Associated Press. All rights reserved.



Report: Florida officials cut key data from vaccine study

# EXHIBIT C



THE BEST OF THE AMERICAN MULTICULTURAL EXPERIENCE

ENG ESP

Home    Politics    Policy    **Safe injection sites**



Left: District 7 Councilmember Quetcy Lozada. Right: U.S Attorney Jacqueline Romero

# At the cusp of a settlement over safe injection sites, the U.S.

00:00 / 00:00



ENG ESP

THE BEST OF THE AMERICAN **MULTICULTURAL** EXPERIENCE

# appears to be shutting local officials out

**A group of elected officials representing Northeast Philly convened to protest a private meeting between the feds and residents.**



By **Carlos Nogueras**

March 22, 2023

**SHARE THIS CONTENT:**

Editor's note: An earlier version of this story said the meeting was between the Depart... Safehouse, the City Solicitor, and community leaders. The meeting was between the DOJ ... groups. This has been corrected.

Safehouse, a nonprofit advocating for safe injection sites in Philly, has met with the U.S. Attorney's Office over the last few months, in continuing talks over an incoming settlement that could finish years of legal wrangling with the federal government.

But meetings did not initially include community stakeholders until neighborhood leaders pressured federal officials into allowing residents and local officials to witness discussions, but elected leaders were shut out of those conversations on Wednesday, March 22.

"The City Solicitor has participated in ongoing mediation discussions with the DOJ on behalf of the Administration. Separate from the mediation discussions, she has previously been a part of community meetings with City officials and Kensington residents regarding quality of life issues, during which Safehouse has been discussed," a spokesperson for the City Solicitor said in a statement.

Safehouse was not aware the meeting had taken place, a spokesperson told AL DÍA.

Shannon Farrell-Pakstis, President of the Harrowgate Civic Association and persistent opponent of the proposed injection sites, said that federal officials did not say much "other than it sounds like they're negotiating to settle…they want to try and negotiate and mediate with them."

"From what we understand, there was a commitment that through the mediation process, the community would be kept informed," Councilmember Quetcy Lozada said.

"What that actually means, we're not really sure," Lozada added.

About two months ago, community leaders urged the DOJ to open discussions between residents in some of the neighborhoods with open-air drug markets as settlement discussions between the U.S. Attorney and Safehouse continue.

Harrowgate, Farrell-Pakstis continued, sent a letter with a list of constituents and local elected officials in Philly who would attend the meeting, but when the group reached the [U.S.] Attorney's Office, elected officials weren't allowed in the room due to clearance is[sues].

The DOJ, Farrel-Pakstis said, also appeared to be concerned over the implications [and] potential conflicts of interest of meeting with elected officials without pre-authoriz[ed] clearance.

"We sent them a list of our officials, and they wouldn't let them in," Sonja Bingham, who is president of Friends of Harrowgate Park, a community group, told AL DÍA News.

Bingham and Farrel-Pakstis requested an additional meeting from the DOJ to be held with elected officials representing Kensington, but U.S. Attorney Jacqueline Romero — a Joe Biden



THE BEST OF THE AMERICAN MULTICULTURAL EXPERIENCE

originally by Romero's predecessor William McSwain, a Donald Trump appointee who personally argued against safe injection sites in court, and won.

Safehouse, however, returned to court on appeal and is now vying for a settlement under a new presidential administration and a DOJ that is open to safe drug consumption with "appropriate guardrails."

Farrell-Pakstis said that while the DOJ declined to share a timeline with residents at the meeting, Romero allegedly said the department is undergoing a court-ordered procedure, "so there is a timeline. They're just not telling us."

"They're going to be allowed to open up safe injection sites," said Farrell-Pakstis, "and we're supposed to trust that they're going to put in the proper safeguards without having to ever really talk to us or walking the neighborhoods with us."

The U.S. Attorney, according to Bingham and Farrell-Pakstis, heard the concerns raised by the community in the meeting and responded, "I hear ya."

## RELATED CONTENT

### Getting to know City Councilman David Oh: An AL DÍA Talks Segment

February 7th, 2019

### Misunderstandings Mangle Meaningful New Approaches To Drug Addiction Problem

April 3rd, 2018

### Attorney General Josh Shapiro: A Year in His Eyes

January 25th, 2018

00:00 / 00:00

AL DÍA has reached out to the U.S. Attorney's Office for comment and is awaiting a response.

## Elected officials are unanimously opposed



THE BEST OF THE AMERICAN MULTICULTURAL EXPERIENCE

Many ran campaigns on promises to curb the opioid epidemic, and should Safehouse succeed, it throws a wrench in campaign promises.

State Representative José Giral, who succeeded Ángel Cruz in 2022, said that shutting officials out "disenfranchised" the voices of voters who rely on their officials to oppose Safehouse's plans for North Philly.

"They disenfranchised thousands of people we represent. I think the Department of Justice owes us an apology," Giral, who ran on tackling the drug crisis in Kensington, said.

Councilmember Jim Harrity, who was recently sworn to council to replace one of his resigned colleagues, called the recent developments "outrageous."

"The community is not for it. I'm in the neighborhood, I live in Kensington, and I'm there every day. My neighbors are not for this," he said.

Senator Christine Tartaglione, an incumbent who represents much of the region that brought attention to safe injection sites, said that "a safe injection site is not going to save these individuals."

"I represent 265,000 people. I represent ground zero at Kensington and Allegheny. We need programs and treatments that work," Sen. Tartaglione affirmed and said she secured funding for new programs to curb addiction.

"We can't fix this with bandaids and bullets," the State Senator, who has not met with Romero, told AL DÍA.

Lozada said she is prepared to flex her muscles in city council to explore options to prevent sites from opening in her district, including invoking councilmanic prerogative, which grants her the ability to green-light projects.

"I believe it is my responsibility to stand with the people who elected me to be the

**TAGS**

safe injection sites

00:00 / 00:00

**LEAVE A COMMENT:**

# EXHIBIT D

PRINTER'S NO. 156

**THE GENERAL ASSEMBLY OF PENNSYLVANIA**

# SENATE BILL

## No. 165 Session of 2023

INTRODUCED BY TARTAGLIONE, FONTANA, BREWSTER, PENNYCUICK, LAUGHLIN AND STEFANO, JANUARY 30, 2023

REFERRED TO JUDICIARY, JANUARY 30, 2023

AN ACT

1  Amending the act of April 14, 1972 (P.L.233, No.64), entitled
2    "An act relating to the manufacture, sale and possession of
3    controlled substances, other drugs, devices and cosmetics;
4    conferring powers on the courts and the secretary and
5    Department of Health, and a newly created Pennsylvania Drug,
6    Device and Cosmetic Board; establishing schedules of
7    controlled substances; providing penalties; requiring
8    registration of persons engaged in the drug trade and for the
9    revocation or suspension of certain licenses and
10    registrations; and repealing an act," further providing for
11    prohibited acts and penalties.

12  The General Assembly of the Commonwealth of Pennsylvania

13  hereby enacts as follows:

14    Section 1.  Section 13(a) of the act of April 14, 1972

15  (P.L.233, No.64), known as The Controlled Substance, Drug,

16  Device and Cosmetic Act, is amended by adding a clause and the

17  section is amended by adding a subsection to read:

18    Section 13.  Prohibited Acts; Penalties.--(a)  The following

19  acts and the causing thereof within the Commonwealth are hereby

20  prohibited:

21    * * *

22    (41)  The operation of a clinic or establishment that

1  provides drug paraphernalia and space for any person to inject,

2  ingest, inhale or otherwise introduce into the person's body a

3  controlled substance in violation of this act.

4      * * *

5      (g)  Any person who violates subsection (a)(41):

6      (1)  Is guilty of a felony and upon conviction thereof shall

7  be sentenced to a term of imprisonment of not more than twenty

8  years or a fine of not more than five hundred thousand dollars

9  ($500,000), or both, or a fine of two million dollars

10  ($2,000,000) for a person other than an individual.

11      (2)  Shall be subject to a civil penalty of not more than two

12  hundred fifty thousand dollars ($250,000).

13      Section 2.  This act shall take effect in 60 days.

# EXHIBIT E

*The Philadelphia Inquirer*

**THE OPIOID CRISIS**

# The other victims of Kensington's opioid crisis: Children bearing witness

Philadelphia's opioid crisis has forced teachers and principals to step to the front lines of an epidemic that is deadlier here than in every other major American city.



An adult and child walk home on East Westmoreland Street near Rosehill at the end of the school day Tuesday November 21, 2018. DAVID SWANSON / Staff Photographer

David Swanson

by Aubrey Whelan
Published Nov 23, 2018

On Election Day, with their students at home, Kensington High School teachers gathered in principal Jose Lebron's office with an easel and poster paper, and made a list titled, "How Students Feel."

"Hopeless. There is no escape," the teachers wrote, trying to capture their students' feelings.

"Upset." "Depressed." "Nothing."

Weeks before, the City of Philadelphia declared a disaster in the neighborhood over the opioid crisis, and Lebron wanted to know what his teachers had been hearing from their students, most of whom have grown up in this historically neglected, drug-plagued community.

ADVERTISEMENT

Educators in Kensington have long been helping students deal with trauma. Just since August, Lebron's school has lost three students to shootings. But the opioid crisis is unlike anything seen before, principals and school officials said in recent interviews, forcing teachers and principals to join residents, city officials, and advocates on the front lines of an epidemic in which Philadelphia outpaces every other

major American city for its deadliness. It has compelled a conversation about how the city cares both for those in addiction and for residents who live and learn in Kensington.

Children routinely watch drug users inject themselves — and they also see paramedics race to reverse overdoses. Every morning, school janitors scour the playgrounds for discarded needles and other evidence of a homeless population in addiction that has doubled in a year.

Some students deal with addiction within their own families, and are further traumatized by seeing people openly inject heroin and fentanyl as they walk to school. Some go far out of their way to avoid the drug encampments in the neighborhood, and are late to class. Many worry about "becoming a part of what they see," a teacher wrote on her poster-paper list.

At least the students at Kensington High are old enough to articulate some of their feelings. Lewis Elkin Elementary is a few blocks from McPherson Square, better known to local kids as "Needle Park." Children so young, said principal Charlotte Maddox, don't have the words to describe what they see and feel. They do know that the people they see are in pain, but the situation has become almost normal for many.

She walked one of her third-graders to the library in McPherson Square a few weeks back. "It was the scariest walk I had," she said, not just because they stepped over needles and past people injecting drugs, but because "the child I was walking with didn't think anything of it."

A few dozen children transferred out of Elkin this year, which is about normal, Maddox said. She said, though, that more parents had told her they were moving from the neighborhood because of the visibility of the opioid crisis.

Heroin users used to be more hidden from neighborhood children, since they tended to flock to a railroad gulch off Gurney Street. But last year, when the city and Conrail cleared out the gulch, Lebron began to worry about what his students would encounter on their walks to school.

By fall last year, encampments began to sprawl along Lehigh Avenue.

"This issue was not on our sidewalks," said Evelyn Nunez, the assistant superintendent who oversees Kensington's public schools and grew up in the neighborhood. "Prior to the railroads being cleaned, it was an adult problem. Children rarely had to see it."

Numerous people in addiction have told reporters and researchers that they wish children didn't have to see them, either. Some try to hide their needles when children pass, but intense cravings and withdrawal

pain can make that impossible. It's a frequently mentioned reason for opening a medically supervised injection site, where drugs can be used off the streets.

In the meantime, "safe corridor routes" to area schools, with parents and store owners standing watch, are expected to begin after the Thanksgiving break around Elkin and nearby Francis E. Willard Elementary School. Parents from Russell Conwell Middle School, the magnet school across the street from Willard, will also pitch in.

"This is like all hands on deck," Willard principal Diana Garcia told parents who met a few weeks ago to discuss the routes. "We're going to show our children that we can keep them safe."

Outside Willard last week, parents walking their children home spoke of the unique challenges of growing up in Kensington.

Jamar Mears walks his 6-year-old, Jamir, back and forth to Willard every day. "The drug activity — I've seen it a lot throughout my lifetime, but not as bad as down Kensington, down here," he said. Like his classmates, Jamir knows not to pick up needles, a lesson that is a routine aspect of parenting in Kensington.

Richard Beauford's 5-year-old, Ajvonna, a Willard kindergartner, knows to cross the street to avoid a person injecting heroin. "We tell them, 'You don't do that. It's not good for you,' " Beauford  said. "A safe route to the school would help a lot."

Some of the kids at Kensington High have told their teachers they laugh at the people living rough. The teachers think that's a coping mechanism. Other students say they slip spare pretzels to people in the encampments, and some even volunteer with a church group to hand out food on weekends. These are encouraging signs that students are maintaining the compassion they're taught by parents and teachers, Maddox and Lebron said.

When her students see a person struggling with addiction, Maddox said, "they see a human being who is hurt. They can't name the hurt. But we teach them to fix hurt, and that compassion they have in the midst of that confusion should be highlighted."

Published Nov. 23, 2018

 Aubrey Whelan ✉ 🐦 📷
I write about addiction, the overdose crisis, and how social inequality affects people's health outcomes.

ADVERTISEMENT

**ABOUT US**

About The Inquirer

Diversity & Inclusion

Advertise

Contact Us

Licensing & Permissions

**NEWS & INFO**

News

Sports

Sports Betting

Entertainment

Business

Photo Reprints

Newspapers in Education

Jobs & Internships

Inquirer Events

Acel Moore Workshops

Newsroom Staff

Health

Food

Life

Opinion

Archives

Special Reports

**MARKETPLACE**

Subscribe

Inquirer Store

Job Listings

All Classifieds

Death Notices

Legal Notices

Gift Subscriptions

**E-EDITIONS**

The Inquirer

The Daily News

**MOBILE APPS**

Apple iOS

Google Android

© 2023 The Philadelphia Inquirer, LLC

Terms of Use  /  Privacy Policy  /  Cancellation Policy  /  California Notice
California residents do not sell my data request

  

# EXHIBIT F



▶   Listen Live • 1A

♥ **Donate**



♥ | **Challenge Alert**
Lock in $10,000 with your donation now

Donate

| EDUCATION | ADDICTION | K-12 | PHILADELPHIA |

**MODERN KIDS**

## Going to school in Kensington amid drug crisis: 'We need to be beacons of hope'

Schools in Kensington strive to be safe havens from violence and drug use, while also helping kids deal with the emotional trauma they carry inside.

By  Joel Wolfram · October 22, 2019





📷  Students at Memphis Street Academy raise their hands during a student wellness meeting. (Emma Lee/WHYY)

*How do we help children thrive and stay healthy in today's world? Check out our* Modern Kids *series for more stories.*

In a conference room at Lewis Elkin Elementary School, principal Charlotte Maddox stood at a laptop, flipping through photos that she projected on a screen in front of her — pictures of things not typically associated with grade school.

Used syringes collected in a jar. A man sprawled unconscious on the playground. The shattered window of a teacher's car, which had been hit by a stray bullet.  Slide after slide collected images of a school under siege by the opioid crisis.

Beginning at 6 a.m. each school day, Maddox explained, custodial staff and a school police officer scour the school grounds, dispersing homeless people who spend the night there, picking up discarded syringes, and sometimes cleaning up human feces.

WHYY thanks our sponsors — become a WHYY sponsor



Lewis Elkin Elementary School in Kensington. (Bastiaan Slabbers for WHYY)

Elkin Elementary is in Philadelphia's Kensington neighborhood, where children step over discarded needles and see people injecting drugs on a daily basis. Schools at the epicenter of the city's opioid crisis struggle to insulate themselves from the problems outside their walls, while also working to help kids cope with the emotional trauma they carry inside.

"With all of this that's happening on the outside of the building, we need to be beacons of hope on the inside of the building," Maddox said.



Charlotte Maddox, principal of Lewis Elkin Elementary School. (Bastiaan Slabbers for WHYY)

She strives to make the school a refuge for neighborhood kids.

Still, some parents whose children attend Elkin have concerns about conditions around the school.

"What worries us is we don't see much security, like police officers or people from the school or the school district helping us in terms of security," Cristina Garay, whose 9-year-old daughter is a student there, said in Spanish.



In addition to the morning cleanup crew, Maddox said, the school police officer and another staff member patrol Elkin's grounds during recess. But she acknowledged that the school could use more resources to keep the block clean and safe. The campus is only partially gated, she noted,

Four-foot-tall fencing surrounds parts of the campus of Lewis Elkin Elementary School. (Bastiaan Slabbers for WHYY)                    In 201

The conditions in the neighborhood are causing some families to move away, contributing to a decline in enrollment at Elkin. Overall enrollment there is down by nearly 100 this year, Maddox said. Some of those students transferred to charter schools.

Maddox couldn't say how much of the decline was due to concerns about safety and quality of life in the area, but she said she had spoken with a number of families who were moving away for those reasons.

"It's not about the school," she said. "It's about what's happening in the neighborhood."

WHYY thanks our sponsors — become a WHYY sponsor

When classes let out for the day, students are again surrounded by the fallout of addiction. Once they get home, some are under orders from their parents to remain indoors. Others, like Christia Leiva, a fourth grader at Elkin, are afraid to go outside.

"I tell him to go out to play on the street with the other kids, and he says, 'No, too much drugs, Mom,'" said Maria Cardona, Christia's mother, speaking in Spanish. "'I don't like it here' he says. 'Let's leave.' That's a theme with him, *'Vámanos.'*"

He also asks questions she's not always sure how to answer.

"Sometimes," Cardona said, "when he sees people injecting themselves, he says, 'Mom, what is that they're putting in themselves?'"

Elkin teachers such as Chelsea Trainor work to address children's fears about the violence and drug use they witness outside. Each classroom begins the day with a morning meeting, where the teacher invites students to share anything that's bothering them.



Chelsea Trainor, a third-grade teacher at Lewis Elkin Elementary School. (Bastiaan Slabbers for WHYY)

"They're kind of focused on that in their minds," Trainor said. "So when it comes time to read, it's hard for them to look at the words on the page and read because they're more worried about what happened at home last night, what happened outside their house, what happened on the way to school that morning."

The meetings also help her learn about serious problems at home she can refer to a school social worker.

A middle school serving children from Kensington uses a similar approach with older students whose understanding of the trauma they experience is growing.

On a recent afternoon at Memphis Street Academy, a charter school for grades five through eight, a dozen students sat in a circle. School counselor Zita Collins led them in a discussion.

"Can I hear a 'yea' from anyone who's been impacted by drugs in this community?" Collins asked.

A staggered chorus of voices chimed in.

"Everyone's a 'yea,'" Collins noted.

Daily classroom talks like this are part of a learning effort that supports social and emotional development. The idea is to provide a space where students can share what's weighing on their minds.

Eighth-grader Benjamin Holt talked about a man who overdosed across the street from his home. He watched as paramedics loaded the dead man's body onto a stretcher.

"It's hard to explain the way they just picked him up and threw him on," Benjamin said. "Personally, I don't want to see that ever again."

"That would be hard for even any adult to see," Collins said.



Eighth-grader Laquan Harrison (left) talks about his experiences during a group meeting with counselor Zita Collins. (Emma Lee/WHYY)

## Seeing something, and saying something about it

Collins listened sympathetically as students described other experiences: family members dying of overdoses; screams outside at night that made it impossible to sleep; drug dealers soliciting them on the street; and accidentally stumbling into someone who was injecting drugs in public.

Traumatic experiences like these can lead to behavior problems and depression in students, school counselors said.

"At the root of all of that is not knowing how to cope with emotions and having to deal with pretty big emotions at a pretty young age," said Brittany Buchanan, a fifth-grade counselor at Memphis Street Academy.

Buchanan said she spends a lot of her time teaching students how to communicate feelings and techniques like deep breathing and yoga to calm them down.

During the classroom discussion, school CEO Na'imah Holliday-Wimberly encouraged students to join a sports team or a club to extend their stay at school each day. The library would also stay open until 5:30 p.m. to give them a quiet place to get help with their homework, she said.

"We want this place to be a safe haven for you, a place where you can come and just escape all the worries of the world, all the worries of Kensington, all the worries of your neighborhood," Holliday-Wimberly said.

Memphis Street Academy and Elkin Elementary School are among a couple dozen schools in Kensington grappling with the impact of the opioid crisis. The School District of Philadelphia created a task force last year that meets weekly to support 18 of the most-affected schools.

Currently, the district is working with the city to put taller fencing around Elkin School. Neither the school district nor the city could say when the extended, 8-foot fence would be installed.

"The Managing Director's Office is in the process of procuring a temporary structure" in the interim, said city spokeswoman Deana Gamble.

Maddox, the principal, said Elkin would welcome all the extra help and resources it could get to beat back the collateral effects of opioid addiction that wash onto school property like a tide each morning.

"It's not over," she said of the neighborhood's drug crisis. "I want to make that clear to everyone, that it's not over."

Share this   

*WHYY is your source for fact-based, in-depth journalism and information. As a nonprofit organization, we rely on financial support from readers like you. Please* **give today.**

**Part of the series**

**Modern Kids**

View the series

**You may also like**

EDUCATION

Chalkbeat Philadelphia

**For many of her students, this year is their first school experience**

*1 year ago*

🎧 THE WHY   EDUCATION

**Hold the phone: Why some Philly students are stashing their phones at corner stores**

*Air Date: December 20, 2018*

▶ Listen   13:30