IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAFEHOUSE, a Pennsylvania nonprofit corporation, | : | |
| | : | |
| *Counterclaim Plaintiff,* | : | |
| | : | |
| v. | : | Civil Action No. 19-0519 |
| | : | |
| United States of America, | : | |
| | : | |
| *Counterclaim Defendant,* | : | |
| | : | |
| U.S. DEPARTMENT OF JUSTICE; PAMELA BONDI, U.S. Attorney General; DAVID METCALF, U.S. Attorney for the Eastern District of Pennsylvania, | : | |
| | : | |
| *Third-Party Defendants.* | : | |

**RESPONSE OF COUNTERCLAIM DEFENDANT AND THIRD-PARTY DEFENDANTS IN PARTIAL OPPOSITION TO COUNTERCLAIM PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COUNTERCLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF**

After seven years of litigation—including multiple amended pleadings, several rounds of dispositive motions, and two appeals—Safehouse now seeks leave to amend its counterclaims and third-party claims for a third time to add as a counterclaim plaintiff its President and Treasurer, Jose Benitez.[1] While Safehouse frames its motion as timely in light of the Third Circuit's determination that Benitez lacked standing to appeal, the appellate court made this determination because Benitez was not named as a counterclaim plaintiff originally and therefore

---

[1] For ease of exposition, Safehouse's counterclaims and third-party claims are hereinafter referred to as "counterclaims."

could not join the appeal. Thus, far from clarifying an uncertain issue of standing, the Third Circuit identified a procedural choice that Safehouse and Benitez made in 2019 when they filed their answer to the United States' amended complaint and listed only Safehouse as a counterclaim plaintiff. (*See* ECF No. 45).

With two subsequent amendments to its counterclaims—on September 17, 2021, to add Free Exercise claims (ECF No. 160), and again on June 26, 2023, to set forth the views of its new board members (ECF No. 207)—Safehouse continued to make the same procedural and strategic choice. It never sought to add Benitez as a counterclaim plaintiff, even when presented with the government's direct challenge to Safehouse's standing to assert RFRA and Free Exercise claims. (ECF Nos. 211 (motion to dismiss), 215 (response in opposition)).

Despite its claim to the contrary, there is ample suggestion that what has caused Safehouse to reconsider its counterclaim strategy at this late stage has less to do with the Third Circuit's decision (indeed, Safehouse prevailed on that appeal) and more to do with attempting to position itself to make a new substantive argument (about an individual's rights as compared to that of a corporation). At this late hour, Safehouse attempts to gain a litigation advantage by adding a litigant whom it could have added at the outset of the case, or at least after the initial remand in 2021.

This Court should not permit it to do so. "Denial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to

the opposing party; and futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). Several of those grounds are presented here: Safehouse unduly delayed seeking leave to amend to add Benitez; it repeatedly failed to add him as a counterclaim plaintiff in prior amendments; its proposed third amended pleading would be futile; and allowing the amendment would result in substantial prejudice to the United States. Accordingly, insofar as Safehouse seeks to add Benitez as a counterclaim plaintiff, its motion should be denied.[2]

## **BACKGROUND**

In 2018, Safehouse—then a newly formed Pennsylvania nonprofit corporation—publicly stated its intention "to establish and operate one or more sites in Philadelphia where . . . intravenous drug users [would] be permitted to use illegal controlled substances (primarily, heroin and fentanyl) in 'consumption rooms' under medical supervision[.]" (ECF No. 1 ¶ 6). By a letter to Safehouse dated November 9, 2018, the U.S. Attorney's Office advised that this conduct would violate federal law—specifically, 21 U.S.C. § 856, which makes it a felony for "[a]ny person" to "manage or control any place" that they "knowingly and intentionally . . . make available . . . for the purpose of unlawfully . . . using a controlled substance." 21 U.S.C. § 856 ("Section 856"). (ECF No. 1-3). The government asked Safehouse to ensure that its "organization, board members, and employees comply" with this

---

[2] As Safehouse correctly asserts in its motion papers (ECF No. 242-1 at 3), the government's opposition is limited to the addition of Benitez as a counterclaim and third-party plaintiff. It does not oppose an amended pleading that would include proposed factual amendments, though it reserves the right to dispute them.

statute, and cautioned that it would "pursue appropriate legal remedies" if it did not. (*Id.*). In responding, Safehouse disputed that Section 856 applied and requested that the government "exercise prosecutorial discretion" with respect to a subsequent enforcement action. (ECF No. 1-4).

The United States then commenced this civil action against Safehouse and its then-Executive Director Jeanette Bowles on February 5, 2019, seeking a declaratory judgment that its imminent plan to open "consumption rooms" in Philadelphia would violate Section 856. (ECF No. 1). Safehouse and Bowles responded on April 3, 2019, by answering the complaint and asserting affirmative defenses, including that "[t]he application of Section 856 to Safehouse is barred by [the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*.]." (ECF No. 3). In the same pleading, Safehouse—by itself—alleged counterclaims and third-party claims against the government for a declaratory judgment that Section 856 did not apply to its conduct (Count I) and enjoining enforcement of Section 856 against Safehouse as a violation of the corporation's "right to free religious exercise guaranteed by RFRA" (Count II). (*Id.* ¶ 148).

When Bowles resigned a short time later, the Court granted the United States' unopposed motion for leave to amend its complaint to substitute Benitez, Safehouse's President and Treasurer, as an individual defendant. (ECF No. 34). Safehouse and Benitez answered, reasserting identical affirmative defenses, and Safehouse incorporated by reference its prior counterclaims. (*See* ECF No. 45 at 7-8).

Case 2:19-cv-00519-GAM    Document 243    Filed 02/27/26    Page 5 of 23

This Court granted summary judgment in favor of Safehouse and dismissed without prejudice Safehouse's counterclaims. (ECF No. 142). The United States appealed (ECF No. 143), and on January 12, 2021, the Third Circuit reversed, remanding "for the District Court to consider the RFRA counterclaim." *See United States v. Safehouse*, 985 F.3d 225, 243 (3d Cir. 2021) ("*Safehouse I*").

Safehouse then amended its counterclaim to add a Free Exercise claim based on the Supreme Court's 2021 decision in *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021). (ECF No. 160). In so doing, Safehouse reasserted by reference its prior affirmative defenses—but Benitez did not—adding as an affirmative defense that "prosecution of Safehouse would violate [its] rights under the First Amendment to the U.S. Constitution." (*Id.* at 41).

Safehouse later filed an unopposed motion for leave to amend its counterclaims a second time—asserting that another amendment was necessary insofar as "Safehouse's board of directors ha[d] changed" and "the religious beliefs of certain [of] Safehouse's board members [we]re material to [its] counterclaims" (ECF No. 207 ¶ 6)—which the Court subsequently granted (ECF No. 208). In its second amended counterclaims, Safehouse (but not Benitez) again purported to incorporate by reference its previously asserted affirmative defenses. (ECF No. 209 at 41).[3]

---

[3] Safehouse's repeated efforts to preserve affirmative defenses after the first appellate mandate are perplexing. Once the Third Circuit decides a case, "[w]hatever was before the court, and is disposed of, is considered as finally settled." *United States v. Kennedy*, 682 F.3d 244, 252 (3d Cir. 2012) (quoting *Ex parte Sibbald v. United States*, 37 U.S. 488, 492 (1838)). On remand, a district court "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error

5

On July 21, 2023, the United States moved to dismiss. (ECF No. 211). The government contended, in relevant part, that Safehouse could not assert RFRA or Free Exercise claims because it was not a religious organization and could not assert the religious rights of its board members. In the briefing and argument that followed, Safehouse did not raise the possibility of amending its counterclaims to add an individual board member as a party that could assert his or her own religious rights.

On April 23, 2024, this Court granted the government's motion. (ECF Nos. 236, 237). Both Safehouse and Benitez—who, after *Safehouse I*, was no longer a party—filed a notice of appeal. (ECF No. 238).

In a footnote in its opening appellate brief, Safehouse explained its addition of Benitez as an appellant as follows:

> Safehouse's board members subscribe to different faiths or denominations. But their shared religious beliefs entitle Safehouse to invoke the protections of RFRA. [*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717-19 (2014)] (rejecting the government's argument that closely held corporations cannot hold religious beliefs because of possible disagreement between its owners as to certain religious issues). **And Board President Benitez, who is a party to this appeal with a live RFRA affirmative defense to DOJ's declaratory judgment action, seeks to live out his personal Catholic commitments.**

apparent[.]" *Id.* (quoting *Sibbald*, 37 U.S. at 492). In other words, a district court "has no power or authority to deviate from the mandate issued by an appellate court." *Id.*

In *Safehouse I*, the Third Circuit's mandate was clear—the case was remanded "for the District Court to consider the RFRA counterclaim." 985 F.3d at 243. The government's complaint, and any affirmative defenses asserted in response, were irrelevant after that.

(*See United States v. Safehouse*, No. 24-2027, ECF No. 20, at 26 n. 10 (3d Cir. Sept. 4, 2024) (emphasis added)). The United States opposed the addition of Benitez as an appellant, contending he lacked standing to appeal because he was not aggrieved by this Court's dismissal of Safehouse's second amended counterclaims. (*United States v. Safehouse*, No. 24-2027, ECF No. 29 at 24 (3d Cir. Nov. 4, 2024)).

The Third Circuit again reversed and remanded. *See United States v. Safehouse*, 146 F.4th 315 (3d Cir. 2025) ("*Safehouse II*"). While the Court ruled in favor of Safehouse on the issue of whether it was a "person" covered under RFRA, it determined that Benitez "was not aggrieved by the District Court's order and lacked standing to appeal the District Court's dismissal." *Id*. at 321. And the Third Circuit expressly remanded the case for this Court "to consider whether Safehouse has plausibly pleaded RFRA and Free Exercise counterclaims." *Id*.

Following issuance of the appellate mandate (ECF No. 240), the Court held a status conference on December 5, 2025. There, Safehouse advocated for expedited briefing and stated that it did not plan to seek leave to file an amended complaint—indeed, it insisted it was not obligated to do so under Rule 15. Soon thereafter, however, Safehouse reversed course and filed the pending motion for leave to file third amended counterclaims for the purpose of adding additional factual averments, as well as adding Benitez as a counterclaim plaintiff. (ECF No. 242).

**LEGAL STANDARD**

Where, as here, a response to an initial pleading has been served, Federal Rule of Civil Procedure 15(a)(2) governs whether a party may file an amended

complaint. That rule provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although "the court should freely give leave when justice so requires," *id.*, it also has discretion to deny leave in the interests of justice, *see Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("Leave to amend must generally be granted unless equitable considerations render it unjust").

The Supreme Court has enumerated several circumstances in which leave to amend may be denied. These include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors "are not exhaustive, allowing a court to ground its decision, within reason, on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause the plaintiff." *Mullin*, 875 F.3d at 149-50. But "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Arthur*, 434 F.3d at 204 (internal marks and citation omitted). "Given the liberal standard of Rule 15(a), the party opposing amendment bears the burden of showing undue delay, bad faith, prejudice or futility." *Edmonds v. SEPTA*, No. 20-cv-658, 2023 WL 3513307, at *3 (E.D. Pa. May 16, 2023) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).

## ARGUMENT

The government opposes Safehouse's motion for leave to amend on four grounds. First, under the specific circumstances of this case, the requested addition of Benitez as a new counterclaim plaintiff at this late stage constitutes undue delay. Second, Safehouse has repeatedly failed to cure the alleged deficiency in its pleading in two prior amendments. Third, its attempt to do so now would be futile. And finally, permitting the proposed amendment would result in substantial prejudice to the government. For these reasons, Safehouse's motion should be denied in relevant part.

## I.   Safehouse Unduly Delayed Seeking Leave to Amend.

"The 'undue delay' factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend." *Mullin*, 875 F.3d at 151. "Delay alone is not sufficient to justify denial of leave to amend." *Arthur*, 434 F.3d at 204 (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). But "at some point, . . . delay will become 'undue,' placing an unwarranted burden on the court . . . [and] an unfair burden on the opposing party." *Id.* (quoting *Adams*, 739 F.2d at 868); *see also Cureton*, 252 F.3d at 273.

At base, an "undue" delay is one that is "protracted and unjustified," and "can indicate a lack of diligence sufficient to justify a discretionary denial of leave." *Mullin*, 875 F.3d at 151 (citing *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008); *Cureton*, 252 F.3d at 273). Because there is "no presumptive period

9

in which . . . delay becomes 'undue,' the question of undue delay requires that [courts] focus on the movant's reasons for not amending sooner while bearing in mind the liberal pleading philosophy of the federal rules." *Id.* (internal marks and citations omitted). And when the moving party offers "no cogent reason for the delay in seeking the amendment," the Third Circuit has "refused to overturn denials of motions for leave to amend[.]" *Id.* (quoting *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013) (internal marks omitted)).

Here, Safehouse initially asserted its counterclaims—naming only itself as a counterclaim plaintiff—on April 3, 2019. (ECF No. 3). It certainly could have named Benitez as an additional counterclaim plaintiff then but declined to do so. Benitez's omission may have been motivated by the view that Safehouse's counterclaim was sufficient to protect his rights. *See, e.g.*, *Safehouse II*, 146 F.4th at 321 ("After all, the purpose of extending rights to corporate persons is to protect the rights of natural persons acting through the corporate form").

Since then, the parties have amended the pleadings on several occasions, each of which provided an opportunity for Safehouse to reassess its counterclaim strategy. And while Safehouse twice amended its counterclaims, it never added Benitez as co-plaintiff. Even when faced with the government's direct challenge to Safehouse's ability as a corporation to assert RFRA and Free Exercise claims on behalf of itself and its board members—which squarely teed up the point that a board member would have to assert his or her own rights—Safehouse remained firm in its original pleading strategy.

10

It was only after this Court granted the government's motion to dismiss—on the basis that Safehouse, as a non-religious entity, cannot seek RFRA protection for the religious motivation of its founders (ECF No. 236 at 6)— that Safehouse began to hedge its bet by filing a notice of appeal on behalf itself *as well as* Benitez, who, at that point, was no longer a party. In its opening appellate brief, Safehouse asserted in a footnote that Benitez was "a party to this appeal" by virtue of "a live RFRA affirmative defense[.]" (*See Safehouse*, No. 24-2027, ECF No. 20 at 26 n.10 (3d Cir.)). But that was wrong. Benitez was a defendant named in the government's first amended complaint, which sought a declaration under Section 856. (ECF No. 35). Along with Safehouse, he answered the amended complaint and asserted affirmative defenses, including under RFRA, but did not assert a counterclaim; only Safehouse did. (ECF No. 45).

The case then proceeded to cross-motions for summary judgment, where Safehouse purported to "reserve[ ] the right to press" its affirmative defenses at a later date, if necessary, but advanced no related argument, and did not mention or purport to preserve Benitez's affirmative defenses. (ECF No. 137 at 7 n. 5; *see also* ECF No. 140 at 7-8 (reserving on counterclaims)). *See DLJ Mortg. Cap., Inc. v. Stevens*, ___ F.4th ___, 2026 WL 456994, at *2 (3d Cir. Feb. 18, 2026) ("a party's failure to raise a defense in opposition to summary judgment forfeits that defense, even if the party raised it in an answer earlier in the litigation"); *Taha v. Bucks Co., PA*, 367 F. Supp. 3d 320, 325-26 (E.D. Pa. 2019) ("Generally, the failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an

abandonment of the defense") (quoting *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993) (internal marks omitted).

The Third Circuit conclusively resolved all issues regarding the application of Section 856 in *Safehouse I*, reversing the denial of the government's motion for summary judgment and the Court's grant of a declaratory judgment to Safehouse. In doing so, it remanded "for the District Court to consider [Safehouse's] RFRA counterclaim." *Safehouse I*, 985 F.3d at 243; *see Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985) ("It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal").

Promptly after the mandate issued, Safehouse adjusted its pleading strategy, filing amended counterclaims to add a Free Exercise claim in the wake of the Supreme Court's decision in *Fulton*. (ECF No. 160). Although its first amended pleading purported to reassert Safehouse's prior affirmative defenses (*see id.* at 41), Benitez did not do the same—nor did he assert any counterclaim.

Thus, Benitez has not been a party to this case since on or about April 1, 2021, when the Third Circuit issued its mandate after *Safehouse I* (ECF No. 158)— nearly five years ago. This did not go unnoticed. After Safehouse and Benitez filed their notice of appeal following the dismissal of Safehouse's second amended counterclaims, the government devoted a section of its brief to Benitez's lack of

12

appellate standing, and the Third Circuit wasted little time dispensing of the issue. *See Safehouse II*, 146 F.4th at 321.

Safehouse now contends that the Third Circuit's holding on Benitez's status triggered its current motion for leave to amend. (*See* ECF No. 242 at 4 (amending to add Benitez "is a normal and proper use of Rule 15 following an appellate decision illuminating a pleading defect")). Contrary to its recent assertion that Benitez has a "live RFRA affirmative defense," Safehouse now contends it would be unfair not to add Benitez as a counterclaim plaintiff because otherwise he "would remain uniquely subject to the adverse declaratory judgment[.]" (*Id.* at 5). But the Third Circuit specifically rejected that position, holding that because "Benitez asserted RFRA as an affirmative defense, but not as a counterclaim," he "was not aggrieved by the District Court's order and lacked standing to appeal the District Court's dismissal." *Safehouse II*, 146 F.4th at 321.

Accordingly, Safehouse has not offered a cogent reason for the delay in seeking leave to file its third amended counterclaims. Indeed, Safehouse has offered no reason why it did not seek to amend in April 2021 or thereafter. And "where the moving party offer[s] no cogent reason for the delay in seeking amendment," district courts are well within their discretion to deny motions for leave to amend. *CMR D.N. Corp.*, 703 F.3d at 629 (citing *Estate of Olivia v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) (no cogent explanation for five-year delay); *Bjorgung*, 550 F.3d at 266 (no cogent explanation for three-year delay); *Cureton*, 252 F.3d at 273-74 (no cogent explanation for two-and-one-half year delay)). In fact, "a significant, unjustified, or

'undue' delay in seeking amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend." *CMR D.N. Corp.*, 703 F.3d at 629.

Even assuming the Third Circuit decision was the triggering event, as Safehouse now suggests, that was simply the point when Safehouse realized there was a potential flaw in its pleading strategy. But the relevant datapoint is not when an advocate sees a need to change strategic course; rather, it is "when an amendment becomes possible[.]" *Mullin*, 875 F.3d at 151. And it appears that Safehouse knew all facts relevant to the proposed amendment in early 2019. *See Purcell v. Gilead Sciences, Inc.*, No. 17-cv-3523, 2020 WL 12762913, at *1 n.1 (E.D. Pa. Aug. 24, 2020) (finding plaintiffs "knew the facts since 2017. This is not a situation where delay is understandable given facts just learned in discovery"). And insofar as Safehouse now seeks to reverse its long-held strategic decision to bring counterclaims only in Safehouse's name, this Court should deny leave to amend. *See, e.g.*, *Langbord v. U.S. Dep't of the Treasury*, 749 F. Supp. 2d 268, 275 (E.D. Pa. 2010) ("strategy does not excuse a four-year delay").

The Third Circuit addressed roughly analogous facts in *Cureton*. Despite suggestions that the plaintiffs should have amended their complaint to allege intentional discrimination, they elected not to do so. 252 F.3d at 271. Instead, they proceeded to summary judgment and prevailed in the district court, but that decision was subsequently reversed and remanded on appeal. *Id.* at 272. Only then, approximately three years after filing the original complaint, did the plaintiffs move

14

for leave to amend their complaint to allege intentional discrimination—a motion the district court denied based in part on undue delay. *Id*.

On appeal, the Third Circuit affirmed. Reciting the relevant findings of the district court—that "the motion was filed three years after the complaint"; "factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to amend"; "the interest in finality of the proceedings would be compromised by amendment"; "the only reason advanced by plaintiffs for the substantial lapse in time was plaintiffs' misplaced confidence in their original disparate impact theory"; and that "the [defendant] would be prejudiced" by the late amendment—the court found no abuse of discretion. *Id*. at 273-74.

So too here. Safehouse filed the pending motion for leave to amend nearly seven years after its initial counterclaim complaint. But Safehouse knew all the facts necessary to add Benitez as a co-plaintiff when it filed its initial counterclaim and did not do so. Over the ensuing years, it twice amended that pleading without adding Benitez. Safehouse does not offer a cogent reason for the delay. The interest in the efficient disposition of this litigation would be compromised by allowing an amendment at this late stage. And, as explained in more detail below, the government would be substantially prejudiced by granting the motion.

Under these circumstances, Safehouse's delay is "undue." Its motion should be denied.

15

## II.    Safehouse Repeatedly Failed to Cure Deficiencies in its Counterclaims in Prior Amendments.

Safehouse also "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed[.]" *Foman*, 371 U.S. at 182. After initially filing its counterclaims, Safehouse reasserted them on three different occasions—(1) in response to the government's amendment necessitated by Bowles' resignation (ECF No. 45); (2) in order to plead a new theory of liability (ECF No. 160); and (3) to amend to plead new facts beneficial to its case (ECF No. 207). Safehouse failed to take advantage of these opportunities to amend its pleading to add Benitez, despite possessing all facts necessary to make that decision at the outset of the litigation. This factor strongly militates in favor of denying Safehouse's motion.

Indeed, a delay in seeking amendment is particularly "undue" when "a movant has had previous opportunities to amend a complaint." *See Cureton*, 252 F.3d at 273 (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (finding a three-year lapse between filing of complaint and proposed amendment was "unreasonable" where the plaintiff had "numerous opportunities" to amend); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654 (3d Cir. 1998) (rejecting proposed second amended complaint where "the plaintiffs' proposed Second Amended Complaint primarily seeks to replead facts and arguments that could have been pled much earlier in the proceedings")); *see also Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (affirming denial of leave where plaintiff was "not seeking to add claims it inadvertently omitted from its prior complaints or which it did not know about earlier," but instead to "modify[ ] the allegations in

16

hopes of remedying factual deficiencies in its prior pleadings, even to the point of contradicting its prior pleadings").

Over the nearly seven-year period between the filing of Safehouse's initial counterclaims and the current proposed amendment, Safehouse has had multiple opportunities for amendments. On each of those occasions, the facts relevant to the amendment it now proposes were known to Safehouse. But Safehouse declined to pursue the amendment. Its belated attempt to do so now is thus particularly "unreasonable." *Lorenz*, 1 F.3d at 1414 (affirming denial of motion for leave to amend even where "the district court did not make any findings of prejudice").

## III.    Safehouse's Proposed Amendment Would Be Futile.

Because the Court would lack subject-matter jurisdiction over Benitez's counterclaims, granting leave to amend would also be futile. This is so for at least two reasons: (1) Safehouse's counterclaims, if successful, would extend to Benitez, and (2) Benitez's claims would be barred under Federal Rule of Civil Procedure 13(a).

### A.    Safehouse's Religious Freedom Claims, if Successful, Cover Benitez and Adding Benitez is Futile.

Insofar as Safehouse seeks to add Benitez as a counterclaim plaintiff, it is far from clear how his interest in operating a "consumption room" in Philadelphia diverge from those of Safehouse as a non-profit entity—or, for that matter, why this particular Safehouse board member has an interest distinct from any other Safehouse board member, officer, or employee. "After all," as the Third Circuit observed, "the purpose of extending rights to corporate persons [*i.e.*, Safehouse] is to

17

protect the rights of natural persons acting through the corporate form [*i.e.*, Benitez].” *Safehouse II*, 146 F.4th at 321. Thus, at least as the case now stands, the interests of Benitez, and any other individual affiliated with Safehouse, would seem to be protected under Safehouse's current operative pleading should Safehouse ultimately prevail.

Moreover, this litigation is about Safehouse's proposed supervised injection plans, not the plans of an affiliated individual who would carry out those plans through the corporate form. The proposed third amended complaint contains no averments that Benitez has plans distinct from the corporation of which he serves as an officer.[4]

Accordingly, granting leave to amend to add him as a counterclaim plaintiff would be futile.

### B.    Benitez's Counterclaims Are Barred by Federal Rule of Civil Procedure 13(a).

Pursuant to Federal Rule of Civil Procedure 13(a), “[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.” A party's failure to

---

[4] If Benitez were to seek recognition of an individual religious right to operate a supervised injection facility separate and apart from Safehouse, that would be another case entirely. But the proposed third amended complaint makes no such averment—rather, Benitez simply seeks recognition of his rights to participate in Safehouse.

18

raise compulsory counterclaims bars that party from commencing a second action in which an unraised compulsory counterclaim is the basis of the complaint. *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) ("A counterclaim which is compulsory but is not brought is thereafter barred"). The underlying policy is "judicial economy," *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002), and the purpose of Rule 13(a) is to "prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters," *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962); *see also Publicis Comms. v. Truth North Comms. Inc.*, 132 F.3d 363, 365 (7th Cir. 1997) ("The definition of a compulsory counterclaim—a claim that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim—mirrors the condition that triggers a defense of claim preclusion (res judicata) if a claim was left out of a prior suit") (internal marks and citations omitted).

To determine whether Rule 13(a) applies, courts analyze whether the claim in question is one that "the pleader has against an opposing party" when the pleading is served, and whether the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). With respect to the latter requirement, "a claim need only bear a logical relationship to the subject matter of the complaint" to be part of the same "transaction or occurrence." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836 n.9 (3d Cir. 2011) (internal marks and citations omitted). A "logical relationship exists where separate trials on each of the claims would involve a substantial duplication

19

of effort and time by the parties and the courts." *Id*. Such duplication occurs when, for example, "claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica*, 292 F.3d at 389-90.

Here, Benitez's proposed counterclaims are barred under Rule 13(a). The United States filed an amended complaint naming Safehouse and Benitez as defendants on May 28, 2019. (ECF No. 35). Approximately three weeks later, Safehouse and Benitez answered, and Safehouse alone asserted a RFRA counterclaim. (ECF No. 45). Under Rule 13(a), it was incumbent upon Benitez to assert the RFRA counterclaim then. But he did not do so. Nor did he file a RFRA counterclaim at any time before this Court ruled on cross-motions for summary judgment, the United States appealed, and the Third Circuit reversed and remanded in *Safehouse I*. As of the date of the appellate mandate in 2021, Benitez was no longer a party to this case, which concluded in a holding adverse to his interests.

Now—five years later—Benitez proposes to be added as a counterclaim plaintiff for the purpose of asserting RFRA and Free Exercise claims that he could have asserted prior to the ruling against him, which was effectively a prior action. Benitez's proposed RFRA and Free Exercise claims against the United States were ones he had at the outset of this litigation, and those claims arose out of the transaction or occurrence that was the subject matter of the government's complaint. Consequently, they were compulsory counterclaims under Rule 13(a)

20

that must have been brought, if at all, prior to *Safehouse I*. Because Benitez failed to do so then, he is precluded from doing so now.

## IV.    Granting Safehouse's Motion Would Result in Undue Prejudice to the United States.

Undue prejudice to the non-moving party is, by itself, "a sufficient ground for denial of leave to amend." *In re SoClean, Inc., Marketing, Sales, Pracs. and Prods. Liab. Litig.*, No. 22-cv-152, 2024 WL 4753978, at *2 (W.D. Pa. Nov. 12, 2024) (quoting *Cureton*, 252 F.3d at 273) (internal marks omitted). "To evaluate hardship if the amendment were permitted, the court considers 'whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.'" *Id.* (quoting *Cureton*, 252 F.3d at 273); *see also Purcell*, 2020 WL 12762913, at *1 n.1. Where an unduly delayed amendment would result in "[t]he expansion of the parties and legal theories" it "would place an unfair burden" on the non-moving party; "result in additional discovery, cost, and preparation to defendant against new facts or new theories"; and cause the non-moving party and the court "to invest additional time and energy in briefing and resolving motions to dismiss the amended counterclaims[.]" *Id.* In short, amendments in such circumstances result in substantial prejudice.

Here, the United States has defended against Safehouse's counterclaims for nearly seven years. As discussed at the most recent status conference, the government plans to renew a dispositive motion that, if granted, could bring an end to this litigation. But if Safehouse were permitted to amend its counterclaim to add Benitez, the United States and the Court would surely "invest additional time and

21

energy" in litigating claims that should have been brought years earlier. *Id*.

Substantial prejudice to the government would thus result. This factor strongly

favors denial of Safehouse's motion, particularly given its undue delay.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the

Court deny Safehouse's motion for leave to amend to add Jose Benitez as a

counterclaim plaintiff.

> Respectfully submitted,
>
> DAVID METCALF
> United States Attorney
>
> */s/ Gregory B. David*
> GREGORY B. DAVID
> Assistant United States Attorney
> Chief, Civil Division
>
> */s/ Bryan C. Hughes*
> BRYAN C. HUGHES
> ERIN LINDGREN
> GREGORY B. IN DEN BERKEN
> Assistant United States Attorneys
> 615 Chestnut St., Ste. 1250
> Philadelphia, PA 19106
> (215) 861-8433/8564/8505
> Bryan.Hughes@usdoj.gov
> Erin.Lindgren@usdoj.gov
> Gregory.indenBerken@usdoj.gov

Dated: February 27, 2026

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I filed the foregoing Response in Opposition to Motion for Leave to File Third Amended Counterclaims via the Court's Case Management/Electronic Case Filing system, thereby making said filing available for viewing and download by all counsel of record.

*/s/ Bryan C. Hughes*
BRYAN C. HUGHES
Assistant United States Attorney

Dated: February 27, 2026